# EXHIBIT  A

**JURISDICTION: FEDERAL**
**TITLE: KHUU v. TILTON**
**CASE NO: TO BE SUPPLY BY THE CLERK**
**DESCRIPTION: Superior Court Denial Of the Petition**
**NUMBER OF PAGES: 3**

(ENDORSED)
FILED
SAN MATEO COUNTY

NOV 27 2006

Clerk of the Superior Court
By GRACE LACEY
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

In re:

HOA TRUNG KHUU

On Habeas Corpus.

Case No. SC-56446 A
HC-1825

**ORDER OF DENIAL**

The Court has received and reviewed the petition for writ of habeas corpus of Petitioner, Hoa Trung Khuu, filed October 16, 2006. The petition is hereby denied.

**FACTS AND ALLEGATIONS**

In 2004, Petitioner was convicted by a jury of two counts of first degree burglary (PC § 460(a)), one count of attempted first degree burglary (PC § 664/460(a)), and two counts of receiving stolen property (PC § 496(a)) in the above mentioned case. The court found true allegations of a prior strike (PC § 1170.12(c )(1)) and a prior serious felony (PC § 667(a)), each of which was based on an allegation that Petitioner suffered a federal robbery conviction (18 USC § 1951) in 1994.

Petitioner complains that the federal robbery conviction could not be used to enhance his sentence because the plea

agreement resulting in that conviction[1] did not mention any future use of the prior, and it had been stipulated that, in return for the guilty plea in that case, the conviction could not be used as a prior in the future. He requests that the court release him or permit him to withdraw his plea.

**THE USE OF THE PRIOR WAS PROPER**

Petitioner cites Santobello v. New York (1971) 404 U.S. 257 and its progeny for the proposition that he is entitled to the enforcement of the terms of his 1994 plea agreement. However, these cases do not require that the judgment in the instant case be disturbed. The contract specifically indicated that the state was not bound to its terms (See Plea Agreement at 10:5-8); however, in any case, nothing in the plain language of the plea agreement states that the robbery conviction could not be used as a prior conviction to enhance a sentence in any subsequent case. Indeed, the agreement applied only to the indictment at issue in that case (Id. at 1-5). The plea agreement is not ambiguous on this point. In sum, because the 1994 plea agreement did not forbid the state of California from using the conviction to enhance a subsequent sentence, the use of the federal robbery conviction to enhance Petitioner's sentence in the instant case was not unlawful.

///

///

[1] A copy of the plea agreement at issue is attached to the petition.

**CONCLUSION**

When a petition for writ of habeas corpus fails to reveal sufficient facts which, if true, would establish a prima facie case for relief, summary denial is appropriate. (In re Clark (1993) 5 Cal.4th 750, 769.) For the foregoing reasons, the petition for writ of habeas corpus is denied.

DATED: NOV 21 2006

Craig L. Parsons
Presiding Judge, Criminal

# EXHIBIT B

**JURISDICTION: FEDERAL**
**TITLE: KHUU v. TILTON**
**CASE NO: TO BE SUPPLY BY THE CLERK**
**DESCRIPTION: California Supreme Court Denial**
**NUMBER OF PAGES: 1**

**S149466**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re HOA KHUU on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

SEP 25 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

# EXHIBIT  C

**JURISDICTION: FEDERAL**
**TITLE: KHUU v. TILTON**
**CASE NO: TO BE SUPPLY BY THE CLERK**
**DESCRIPTION: Reporter's Transcrip**
**NUMBER OF PAGES: 6**

burglaries.

THE COURT: Okay.

MR. BELL: The attempted burglary for which he was also convicted was not on the list, was not on the list of houses.

THE COURT: Okay. And then when we get to credits for time served, I don't understand the credits for time served here.

MR. GRANDSAERT: The pre-sentence credits would be 20 percent -- excuse me, would be one-third good time as well, and that's what is reflected, is it not, in the probation report?

THE COURT: When we get there, let's look at it. I don't think it's one-third. But math was never my strong suit.

Okay. Let me hear from the People on the Romero motion.

MR. GRANDSAERT: With regard to Romero, Your Honor, and with regard to a list, the Court is correct, there are two addresses on that list of which the defendant was convicted. There was also property in the vehicle that corresponded to property from those two addresses. With regard to Romero also, Your Honor, counsel mentioned the one strike. That is, of course, true. What is also true is the defendant was sent to CYA in 1993 for another offense.

What is also true, and is that a lot of the cases that

counsel cites in his briefs are inapposite because they deal with cases involving, quote, unquote, minor felonies as the third or triggering strike. Here we're not dealing with minor felonies. We're dealing with three convictions for either residential burglary or attempted residential burglary and then a list of other potential victim homes.

The People would submit that in this case, clearly this case falls within the spirit of the three strikes law, and there is no true justification for striking the strike in this particular case.

THE COURT: Okay. Is that matter submitted?

MR. BELL: Submitted, Your Honor.

MR. GRANDSAERT: Submitted.

THE COURT: I find that dismissing the defendant's prior would not be in the interest of justice. I find that this case does fall within the spirit of three strikes legislation, and therefore, deny the motion.

Now, moving on to sentencing. You waive arraignment for judgment and sentence?

MR. BELL: Yes, Your Honor.

THE COURT: Any legal cause?

MR. BELL: No legal cause.

THE COURT: The Court has read and considered the probation report and the People's sentencing statement.

Mr. Bell, do you have any additional argument?

MR. BELL: Well, now that the Court has declined

to grant the Romero I would ask the Court to give him the minimum two-strike sentence, which would be 13 years, which would be a low term level, plus a double one year, four months subordinate term for the residential burglaries, plus another for the other -- the attempted residential burglary and then five years for the 667(a) prior, which would -- I'm referring to page 3, of course, of the People's sentencing memorandum. That would be a 13-year sentence, and he would serve, obviously, a substantial period of that 13 years.

THE COURT: What would be the mitigating factor?

MR. BELL: Well, he -- hold on just a minute. I know I had prepared for that and now it's escaping me, so I need to -- there is evidence that the defendant has been suffering from drug dependence -- drug and alcohol dependence for a substantial period of time.

THE COURT: Okay. What was that evidence, now?

MR. BELL: Well, the evidence is only that presented in the probation report and from his discussion with the probation officer and his letter to Your Honor. And he is in fact in the Choices Program; and while it is true, technically, that they accept people without drug and alcohol dependence, they usually examine into the situation and make sure people in their program have in fact alcohol and drug dependence, and I think they have determined that he is a dependent individual.

I believe that he played a minor role in the strike

offense, which the Court has determined to be a strike. There is no evidence here in the trial as to other than a minor role that he played here. No one actually identified him as being a person who tried to pry open the door. He was a passenger in the vehicle.

THE COURT: Well, let me go back to that for a second. The one who came downstairs, who was actually at home working downstairs --

MR. BELL: Correct.

THE COURT: -- didn't he identify the defendant as one of the two people outside? Whether he was actually prying the door or not, I don't know.

MR. BELL: My recollection is that he did not physically identify the defendant. He identified the person as wearing clothes similar to those persons.

THE COURT: Did he see two people outside?

MR. BELL: He says he believed he saw two people, correct.

THE COURT: Okay.

MR. BELL: And I submit that there is sufficient mitigation in the record to justify the minimal term, especially given the fact that it's going to be doubled as a strike offense and that he will serve a substantial period of time.

THE COURT: Mr. Grandsaert, anything further on that?

MR. GRANDSAERT: Yes. For some of the same reasons submitted earlier, I would submit this is not a mitigated-term case; and in the absence of mitigation, this should be at least a midterm, which would be 17 years. I point out to the Court, as I'm sure the Court has already read, page 9 all of the factors in mitigation which do not apply to the defendant in Ms. Allhiser's briefing. He was not a minor player in this. There were two people involved. He was one of the two; and as I understand it, his consciousness of guilt reached astronomic proportions in what he did after the fact in terms of running from the police.

His CYA Commitment, his Federal offense, the fact these are residential burglaries, I would submit there is just simply no basis for mitigation here, and that the midterm of 17 or the aggravated term based on the prior record of 21 should be imposed.

THE COURT: All right. Matter submitted then --

MR. BELL: Yes, Your Honor.

MR. GRANDSAERT: Yes, Your Honor.

THE COURT: -- on the argument?

The defendant is statutorily ineligible for probation pursuant to the three-strikes legislation. With regard to concurrent and consecutive, the Court has considered the criteria set forth in 4.425(a) and concludes that the crimes and their objectives were predominantly independent of each

other and were committed at different times and in separate places, and therefore, the Court will sentence consecutively.

On Count 1, violation of Penal Code Section 460(a), the Court imposes the mid term of four years, doubled, for a total of eight years in State Prison.

On Count 2, second count of Penal Code Section 460(a), the Court imposes one-third the midterm, one year, four months, doubled, for a total of two years, eight months in State Prison, consecutive.

On Count 3, the attempted burglary, the Court imposes one-third the midterm, eight months, doubled, for a total of 16 months in State Prison, consecutive.

On Count 4, Penal Code Section 496, the Court imposes the mid -- one-third the midterm of eight months, doubled, for a total of 16 months in State Prison, consecutive; however, that count is stayed pursuant to provisions of Penal Code Section 654.

On Count 5, the second count of Penal Code Section 496, similarly the Court imposes one-third the midterm of eight months, doubled, for a total of 16 months in State Prison, consecutive; however, that count is also stayed pursuant to provisions of Penal Code Section 654.

Under Penal Code Section 667(a) allegation, the Court imposes five years in State Prison, consecutive.

The aggregate sentence is, therefore, 17 years in

# EXHIBIT D

**JURISDICTION: FEDERAL**
**TITLE: KHUU v. TILTON**
**CASE NO: TO BE SUPPLY BY THE CLERK**
**DESCRIPTION: People's Sentencing Statement("PSS)**
**NUMBER OF PAGES: 11**

JAMES P. FOX, DISTRICT ATTORNEY
County of San Mateo, State of California
State Bar No. 45169
400 County Center, 3rd Floor
Redwood City, California 94063
By: Mary Allhiser, Deputy
Telephone: (650) 363-4636
Attorney for Plaintiff

FILED
SAN MATEO COUNTY
NOV 12 2004
Clerk of the Superior Court
By DEPUTY CLERK

CMS

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

THE PEOPLE OF THE STATE OF CALIFORNIA

Plaintiff,

v.

HOA KHUU,

Defendant.

No. SC-56446A

PEOPLE'S SENTENCING STATEMENT AND OPPOSITION TO ROMERO CONSIDERATION

Dept: 18
Date: 11/18/04
Time: 9 a.m.

## I. STATEMENT OF THE CASE

On 9/8/04, defendant Khuu was convicted by a jury of two counts of residential burglary, one count of attempted residential burglary, and two related counts of receiving stolen property. A court trial is scheduled at the same time as the sentencing hearing on special allegations: one prior "strike" under Penal Code section 1170.12(c)(1) and one "serious felony prior" under P.C. 667(a).

Defendant's date of birth is 12/4/74.

The maximum and minimum "no strike" and "second strike" sentence exposures are outlined below, for the court's information. The assumption is that the P.C. 1170.12(c)(1) and 667(a) special allegations are true.

///

II. **P.C. 1170.1 ("No Strike") SENTENCE RANGE**

If defendant were not sentenced under the "strikes" law, the determinate sentence range under P.C. 1170.1 would be:

| | |
|---|---|
| P.C. 460(a) | 2 – 4 – 6 years |
| P.C. 460(a) | + 1 year, 4 months consecutive (1/3 mid term) |
| P.C. 664/460(a) (1-2-3) | + 8 months consecutive (1/3 mid term) |
| P.C. 496 (16-2-3) | (P.C. 654 stay) |
| P.C. 496 | (P.C. 654 stay) |
| P.C. 667(a) | + 5 years consecutive |

The court has discretion to strike the "strike" allegation on authority conferred by P.C. 1385(a) (People v. Superior Court (Romero) (1996) 13 Cal.4th 497). The court may not strike the P.C. 667(a) five-year enhancement, P.C. 1385(b).

The defendant's maximum "no strikes" determinate sentence would be 13 years (upper term of 6 years for one count of residential burglary, plus one-year-four-month subordinate term for the second residential burglary, plus eight-month subordinate term for the P.C. 664/460(a), plus five years for the "serious felony" P.C. 667(a) enhancement; with the terms for the two P.C. 496 counts stayed under P.C. 654).

If the court finds the special allegations of prior convictions to be true, the court can select the upper term of six years as the principal term for one count of residential burglary. No additional jury findings are required. The United States Supreme Court ruled on 6/24/04, as a matter of constitutional law, that any factor used to aggravate a sentence, *other than prior convictions*, must be admitted by the defendant or found true by a jury (Blakely v. Washington (2004) ___U.S. ___, 124 S. Ct. 2531; 159 L. Ed. 2d 403). The People concede that this rule applies to defendant's case although the offenses were committed on 3/10/04, before the Blakely decision was filed (People v. Sykes (2004) 120 Cal. App. 4th 1331).

///

There is a statutory presumption of ineligibility for probation, P.C. 462. If the court were to deny probation, but find mitigating circumstances, defendant's minimum sentence would be 7 years (two-year low term for one count of residential burglary, the terms for the second residential burglary and attempted burglary run concurrently, plus five years for the P.C. 667(a) enhancement; with the terms for the two counts of receiving stolen property stayed pursuant to P.C. 654).

Pre-commitment and post-commitment, defendant would receive the usual felony credits: "serve four days, get credit for six days" in jail; "serve one day, get credit for two days (once in a work program)" in prison.

## III. "SECOND STRIKE" SENTENCING RANGE

Defendant's maximum sentence exposure as a "second striker" would be 21 years (doubled upper term of 6 years for one of the residential burglaries (i.e., 12 years), plus doubled one-year-four-month subordinate term for the other residential burglary (i.e., 2 years, 8 months); plus doubled eight-month subordinate term for P.C. 664/460(a) (i.e., 1 year, 4 months); plus 5 years for the "serious felony prior"; with doubled eight-month subordinate terms (i.e., 1 year, 4 months) for the two counts of receiving stolen property stayed pursuant to P.C. 654).

Defendant's minimum "second strike" sentence would be 13 years (doubled low term of 2 years for one of the residential burglaries (i.e., 4 years), plus doubled one-year-four-month subordinate term for the other residential burglary (i.e., 2 years, 8 months); plus doubled eight-month subordinate term for P.C. 664/460(a) (i.e., 1 year, 4 months); plus 5 years for the P.C. 667(a) enhancement; with doubled eight-month subordinate terms (i.e., 1 year, 4 months) for the two counts of P.C. 496 stayed pursuant to P.C. 654), P.C. 1170.12(a)(6).

Pursuant to P.C. 1170.12(a)(6), the terms for the crimes committed against the three victim-residences must be imposed consecutively (People v. Lawrence (2000) 24 Cal. 4th 219, People v. Durant (1999) 68 Cal.App.4th 1393). In Durant, defendant was convicted of one residential burglary and two attempted residential burglaries. All three crimes were committed in the same condominium

complex, in close succession, without any intervening events. The court explained that the "strike" terms for the three counts must be consecutive under 1170.12(a)(6) (at 1406).

> *** (W)here the elements of the original crime have been satisfied, any crime subsequently committed will not arise from the same set of operative facts underlying the completed crime; rather such crime is necessarily committed at a different time. For instance, with the crime of burglary, where the offense is complete when there is an entry into a structure with felonious intent, "regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed" (*People v. Montoya* (1994) 7 Cal. 4th 1027, 1041-1042 [31 Cal. Rptr. 2d 128, 874 P.2d 903]), the commission after the first burglary of a crime or burglary of another structure necessarily will arise out of different operative facts than those underlying the original offense.

On a "second strike" sentence, defendant would be entitled to the normal pre-sentence jail credits ("serve four days, get credit for six days"). In prison, his "work time" credits would be limited to 20% of actual custody time.

IV. **PRESENT OFFENSES**

On 3/10/04, at around noon, Tommy Hui, the resident at 57 Williams Lane, Foster City, ignored the fact that someone was ringing his front doorbell. Minutes later, while he was upstairs, he heard noises at another door. From the upstairs, looking down through a window covering on the door, he saw one man trying to pry open his sliding door and another man standing right behind him. Mr. Hui called the Foster City Police Department (FCPD). Mr. Hui told the police that the two males fled in black Range Rover.

Blocks away, FCPD Officer Bill Sandri saw a black Range Rover and started to follow it. The Rover drove away at high speed in the parking lot of the Edgewater Plaza in Foster City. As Officer Sandri followed, the Rover stopped and the two men bailed out. Officer Sandri, with the help of other police officers and sheriff's deputies, tried to locate them.

The two men left behind in the Range Rover: a prybar under the right front floor mat, large sums of currency (U.S. and foreign) and stolen property (laptop, jewelry, watches, and other valuable items) from two unreported residential burglaries (361 Beach Park Boulevard, Foster City and 1295 Beach Park Boulevard, Foster City).

A witness saw the two men running from the police and picked up a cell phone that one had dropped. The witness gave the cell phone to the police.

The police found defendant Khuu hiding under a boat cover in a nearby yard. Khuu then jumped into the lagoon. When the FCPD officer ordered him to stop, Khuu said: "go ahead and shoot!" Khuu was later found hiding in a garbage can. Khuu gave the police a false name (his brother's). Khuu claimed ownership of the cell phone that the witness had given to the police.

The police found the alleged accomplice Ryan Bui in a nearby yard. In the path of his flight from police, Bui had left behind his temporary driver's license and what appeared to be a "hit list" of more than thirty residences. The residences at <u>361</u> and <u>1295 Beach Park Boulevard</u> were lined out.

Property seized from the Range Rover was identified as having been stolen from George and Pamela Hung (361 Beach Park Boulevard) and Yao and Sharon Chi (1295 Beach Park Boulevard).

## V. <u>JUVENILE DELINQUENCY, AND ADULT CRIMINAL, PROBATION, AND INCARCERATION HISTORY</u>

Defendant's date of birth is 12/4/74. He was committed to the California Youth Authority (CYA) as a juvenile, based on a sustained petition for burglary-second degree. He paroled from CYA on 6/3/93.

As an adult, he was convicted in the United States District Court – Northern District of California of "aiding and abetting conspiracy to obstruct" ("Hobbs Act" conspiracy to rob, 18 USC section 1951) and "conspiracy to use a firearm to commit a felony" (18 USC 371). This is alleged in the Information as a "strike" (P.C. 1170.12(c)(1)) and as a five-year P.C. 667(a) prior conviction. On 11/12/96, defendant was sentenced to fifty-three months in federal prison, to be followed by three years supervised release. On 3/10/04, there was a no-bail federal warrant outstanding against him for violation of supervised release.

The federal case is described in the People's Trial Motion #1. The facts were laid out in the plea agreement, as follows.

The defendant conspired with Tung Pham, George Gatan, Billy Vang, Howson Nguyen, and others with the specific intent to rob computer chips from a truck occupied by employee(s) of Intel Corporation. The "overt acts" in furtherance of the conspiracy included: defendant stole a Honda to use as a second car in the Intel robbery; defendant met with co-conspirators and undercover federal agents the same day to discuss the details of the Intel truck robbery; in that discussion, defendant affirmed that he had tape to restrain the truck driver; in that discussion, co-conspirator Pham affirmed that he had brought two guns to use in the robbery; and in that discussion, co-conspirators and federal undercover agents reviewed a diagram of the planned robbery location and discussed how to deal with the Intel truck driver (holding a gun to his head).

As described in the plea agreement, this was a "sting" operation. Defendant and co-conspirators were arrested after the meeting. From one of the cars driven by co-conspirators to the meeting, federal agents seized two loaded firearms, tape, six pair of surgical gloves, rope, and a dart gun.

## VI. ARGUMENT RE: FURTHERANCE OF JUSTICE

The guiding principle announced in People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 530, is that a sentencing court's consideration of striking a "strike" must be in strict compliance with the provisions of P.C. 1385(a). Exercise of 1385(a) discretion is reviewable for abuse of statutory power, Id., at 530. The appropriate limits on the court's discretion were later amplified in People v. Williams (1998) 17 Cal.4th 148.

Under 1385(a), a court may dismiss a charge or strike a special allegation "in furtherance of justice," but must state the reasons for this action "in an order entered upon the minutes." Failure to do so is an abuse of discretion, (People v. Smith (1996) 50 Cal.App.4th 1194); and renders a dismissal/striking under 1385(a) invalid. (Williams, supra; People v. Orin (1975) 13 Cal.3d 937, 943-945; In Re Juan C. (1993) 20 Cal.App.4th 748, 753).

The statement of reasons is essential for appellate review of the trial court's action. (People v. Bracey (1994) 21 Cal.App.4th 1532, 1540-1541). The main purpose of this requirement is "to restrain judicial discretion and curb arbitrary action for undisclosed reasons and motives (citations omitted)." (People v. Ritchie (1971) 17 Cal.App.3d 1098, 1105).

"While a trial court has broad discretion to dismiss under section 1385, the power is not absolute. It is limited by the amorphous concept that the dismissal be 'in furtherance of justice' which requires consideration both of the constitutional rights of the defendant and the interests of society represented by the People. (People v. Orin (1975) 13 Cal.3d 937, 945-947.) A dismissal not in furtherance of justice is an abuse of discretion requiring a reversal. (People v. Ferguson (1990) 218 Cal.App.3d 1173, 1180-1183.)" (Bracey, supra, 1540-1541). In Bracey, without a factual basis for so doing, the trial court had dismissed a drug sale charge for "vindictive prosecution," citing P.C. 1385(a). The dismissal was reversed as an abuse of discretion.

When reviewing a ruling on a defendant's request for P.C. 1385 consideration, the appellate court carefully considers the length and frequency of the crime-free periods during which the defendant was neither in custody, nor on probation or parole. (See People v. Askey (1996) 49 Cal.App.4th 381). The sentencing court should seriously consider whether the new offenses were committed while defendant was under supervision. (People v. Gillespie (1997) 60 Cal.App.4th 429, recent release on parole militates against striking a "strike").

People v. Williams (1998) 17 Cal.4th 148 lays out in great detail when it is an abuse of a trial court's discretion to strike a "strike." In Williams, the Court outlined the defendant's juvenile delinquency and adult criminal record, the nature of the current offense (1995 felony "driving under the influence" of PCP, V.C. 23175), the defendant's repeated failures on probation and parole, and his personal history (substance abuse since age nine and present desire to seek treatment). Williams' prior serious felony convictions were for attempted robbery and rape in 1982. He had three prior prison terms within the meaning of Penal Code 667.5(b).

The trial court in Williams apparently reasoned that the 1982 "strike" convictions were remote and that defendant's current offense was not a crime of violence. The trial court struck one of the "strikes," but did not set forth its reasons in an order entered on the minutes, as required by Penal Code section 1385. The defendant was sentenced as a "second striker" to 9 years in prison.

In Williams, the Supreme Court decided that the trial court had abused its discretion under Penal Code section 1385. The Court held that in ruling on a defendant's request that a "strike" allegation be stricken, a trial court:

352

... must consider whether, in light of the nature and circumstances of this present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the ("three strikes" sentencing) scheme's spirit, in whole or in part, and hence should be treated as though he had presently not committed one or more felonies and/or had not previously been convicted of one or more serious and/or violent felonies. Id., at p. 161.

The Court concluded that:

(i)n light of the nature and circumstances of his present felony of driving under the influence, which he committed in 1995, and his prior conviction for the serious felony of attempted robbery and his prior conviction for the serious and violent felony of rape, both of which he suffered in 1982, and also in light of the particulars of his background, character, and prospects, which were not positive, Williams cannot be deemed outside the spirit of the Three Strikes law in any part, and hence may not be treated *as though he had presently not committed that felony or had not previously been convicted of those serious and/or violent felonies.* (emphasis added) Id., at 162-163.

The Court first looked at the nature of Williams' current and prior felony convictions. It concluded that there was nothing mitigating about the present or the past felonies. The Court noted that the 1995 "drunk driving" conviction had followed three previous convictions of "drunk driving." This indicated to the Court that " '... (he) had been taught, through the application of formal sanction, that (such) criminal conduct was unacceptable - but had failed or refused to learn his lesson.'" Id., at 163, quoting from People v. Gallego (1990) 52 Cal.3d 115, 209, fn.1.

The Court then found that:

... there is little favorable about Williams' background, character, or prospects. We do not ignore the fact that he apparently had had a stable living arrangement with a woman, had expressed a desire to help care for their disabled child, and was still loved, and supported, by his family. But neither can we ignore the fact that he was unemployed and did not follow through in efforts to bring his substance abuse problem under control. Id., at 163.

The Court noted that in the thirteen years between his prior serious felonies in 1982 and his present felony in 1995, Williams had committed many other criminal offenses: two convictions for possession of a firearm by a felon, three convictions for "drunk driving," one conviction for driving without a license, and misdemeanor convictions for possession of a controlled substance and for spousal battery. Williams was often in jail or in prison during that thirteen-year period for probation or parole violations. The Court disagreed with the trial court that had determined that none of the crimes

between 1982 and 1995 was a crime of violence. It found that misdemeanor spousal battery was clearly such a crime.

The Supreme Court in Williams concluded that "(i)n view of the foregoing, the superior court's order fell outside the bounds of reason under the applicable law and relevant facts." Id., at 164.

It is useful to analyze Penal Code section 1385 "in furtherance of justice" issue in light of the criteria in Rule of Court 4.423 to determine whether there are any mitigating circumstances in the defendant's crimes or in his history (People v. McGlothin (1998) 67 Cal.App.4th 468).

Under Rule 4.423, the relevant circumstances in mitigation which do not apply to defendant include:

(a)(1) defendant was only a passive participant or played a minor role in the crimes;

(a)(2) the victims initiated, provoked, or were willing participants in the crimes;

(a)(3) the crimes were committed because of an unusual circumstance, such as great provocation, which is unlikely to recur;

(a)(4) defendant participated in the crimes under circumstances of coercion or duress, or the criminal conduct was partially excusable for some other reason not amounting to a defense;

(a)(5) defendant was induced by others to commit the crimes;

(a)(6) the amount of valuable property taken was deliberately small;

(a)(7) defendant had a claim of right to the property;

(a)(8) defendant was motivated by a desire to provide necessities for his family or self;

(b)(1) defendant had no prior record or an insignificant record;

(b)(2) defendant was suffering from a mental or physical condition that significantly reduced his culpability;

(b)(3) defendant voluntarily acknowledged wrongdoing prior to arrest or at any early stage in the criminal process;

(b)(4) defendant is presumptively ineligible for probation (P.C. 462) and but for that ineligibility would have been granted probation;

(b)(5) defendant made restitution to the victims;

(b)(6) defendant's prior performance under federal supervision was satisfactory.

In People v. Whitten (1994) 22 CA4th 1761, 1767-1768, the court discussed the significance of a defendant's prior history under supervision on probation or parole.

> The court's examination of aggravating and mitigating factors necessarily involves subjective determinations based upon objectively demonstrated facts. A proper focus of inquiry is whether any lesson was learned from previous grants of probation or parole. (Cf. People v. Regalado (1980) 108 Cal.App.3d 531, 540 [166 Cal.Rptr. 614].) ***
>
> Similarly, in assessing defendant's culpability, it is reasonable to consider service of a prior prison term and conclude that not even such severe punishment has deterred defendant from reoffending. Just as the court may aggravate on the basis of prior grants of leniency, so too may the court reasonably consider defendant's implacable attitude toward the law.

Defendant is only twenty-nine years old. His "implacable attitude toward the law" was demonstrated when he challenged the FCPD officer who pursued him to: "go ahead and fucking shoot me!" Yet, this defendant, through counsel, may still ask this court for "another chance"; i.e. for a "no strike" sentence. The People predict that this defendant will be asking for "chances" for the rest of his life. In the face of the repeated "'application(s) of formal sanction,'" defendant fails to "'learn his lesson'" (People v. Williams (1998) 17 Cal.4th 148, at 163).

Defendant's 1996 federal "strike" is not remote. He was supposed to be complying with federal supervision when the new crimes were committed. It would not be within the spirit of the "strikes" law to treat the 1996 conviction *as if it had never happened* by striking it (Williams, at 163).

Some of the general objectives of sentencing, Rule of Court 4.410, are to protect society, to punish defendant, and to prevent defendant from committing new crimes by isolating him for the period of incarceration. Justice would be served, given the particular facts of this case and this defendant's history, by the imposition of a "second strike" sentence on him. Striking the "strike" under P.C. 1385(a) would not be "in furtherance of justice."

VII. **CONCLUSION**

The People respectfully urge the court to sentence defendant to a "second strike" prison term.

Dated: 11/10/04

Respectfully submitted,
JAMES P. FOX, DISTRICT ATTORNEY
By______________________
Mary Allhiser, Deputy

PROOF OF SERVICE BY MAIL

Case No. **SC-56446A**

My name is **Elena Albaniel.** My main business address is:

| | | | |
|---|---|---|---|
| X | Office of the District Attorney<br>400 County Center, 3rd Floor<br>Redwood City, CA 94063 | ☐ | Office of the District Attorney<br>400 County Center, 4th Floor<br>Redwood City, CA 94063 |
| ☐ | Office of the District Attorney<br>1050 Mission Road<br>South San Francisco, CA 94080 | ☐ | Office of the District Attorney<br>21 Tower Road<br>San Mateo, CA 94402 |

I am over the age of eighteen (18) years and not a party to the cause.

On **November 12, 2004,** I served the attached:

**PEOPLE'S SENTENCING STATEMENT AND OPPOSITION TO ROMERO CONSIDERATION**

on the hereinafter named, by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid and depositing it in the United States mail at Redwood City, addressed as follows:

Frank Bell
Attorney at Law
303 Bradford Street, Suite C
Redwood City, CA 94063-5129

Executed at Redwood City, California.

I declare under penalty of perjury that the foregoing is true and correct.

Elena Albaniel

**Elena Albaniel**
**Legal Secretary**

# EXHIBIT E

**JURISDICTION: FEDERAL**
**TITLE: KHUU v. TILTON**
**CASE NO: TO BE SUPPLY BY THE CLERK**
**DESCRIPTION: probation Report & Recommendation (PR&R)**
**NUMBER OF PAGES: 7**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

FILED
SAN MATEO COUNTY
NOV 1 9 2004
Clerk of the Superior Court
By ______ DEPUTY CLERK

The People of the State of California, Plaintiff,

vs.

CMS

HOA TRUNG KHUU
AKA: Chey Rubin; Cheyenne Rubin; James Rowe; Trunh Hoa Khuu
DOB: December 4, 1974 (Age: 29)

Defendant.

Court Number SC056446A
Department 18
November 18, 2004 – 9:00 a.m.

PROBATION OFFICER'S REPORT AND RECOMMENDATION
TO THE ABOVE-ENTITLED HONORABLE COURT

ATTORNEY FOR THE PEOPLE: Mary Allhiser

ATTORNEY FOR THE DEFENSE: Frank Bell (appointed)

OFFENSE:
Count 1: Violation of Section 460(a) of the Penal Code (Felony – Burglary, First Degree);
Count 2: Violation of Section 664/460(a) of the Penal Code (Felony – Attempted Burglary, First Degree);
Count 3: Violation of Section 460(a) of the Penal Code (Felony – Burglary, First Degree);
Count 4: Violation of Section 496(a) of the Penal Code (Felony – Receiving Stolen Property);
Count 5: Violation of Section 496(a) of the Penal Code (Felony – Receiving Stolen Property)

DATE: March 10, 2004 (all counts)

ARRESTED: March 10, 2004

CUSTODY: In custody since arrest (254 days, plus 38 [handwritten: ? 127] days good time/work time; TOTAL ~~292 days)~~ [handwritten: 381.]

GUILTY BY: Jury verdict on September 8, 2004

☑ Court ☐ Def.Atty. ☐ D.A. ☐ S.O./Commitment ☐ File ☐ Prob.Sup.Crt.Ofcr.

HOA TRUNG KHUU
AKA: Chey Rubin; Cheyenne Rubin; et. al.

Court Number SC056446A

## R E C O M M E N D A T I O N

It is respectfully recommended that the defendant's motion for probation be denied and he be committed to the Department of Corrections.

Pay a $200.00 restitution fine, plus a 10% collection fee, pursuant to Section 1202.4 of the Penal Code, payable through the Department of Corrections.

Pay a $200.00 fine pursuant to Section 1202.45 of the Penal Code, stayed pending successful completion of parole.

Pay a Court Security Fee of $20.00, payable through the Department of Corrections.

Submit to genetic marking pursuant to Section 296 of the Penal Code.

### BASE TERM RANGE

| | |
|---|---|
| 460(a) PC | 2 – 4 – 6 years |
| 664/460(a) PC | 1 – 2 – 3 years |
| 496(a) PC | 16 months – 2 – 3 years 654 |

### ENHANCEMENTS (CHARGED AND PROVED)

None 667(a) + 5 years.

### CHARGE AND PLEA STATUS

| | |
|---|---|
| Original charges: | Counts 1 & 3: 460(a) PC;<br>Count 2: 664/460(a) PC;<br>Count 4: 496(a) PC;<br>Count 5: 496(a) PC with special allegations per 1203(k) PC, 1170.12(c)(1) PC and 667(a) PC |
| Pled/Convicted: | Counts 1, 2 3, 4 & 5 |
| Dismissed/Under submission: | Special allegations set for court trial on November 18, 2004 |
| Plea limitations: | Not applicable |

EVALUATION

Hoa Khuu is appearing for sentencing having been found guilty of several counts of burglary and of receiving stolen property. He is currently in violation of federal supervised release following a conviction of conspiracy to obstruct and conspiracy to use a firearm to commit a felony in 1996. He had absconded from this supervision since 1998.

Mr. Khuu is 29 years old. He is unmarried and has not worked in several years. He has some high school education. Mr. Khuu has a history of problematic alcohol use and has abused cocaine, methamphetamine and ecstasy. He has never been in residential treatment. For the last couple of months, the defendant has been participating in Choices. He has applied and been accepted to the Delancey Street Foundation.

In the present matter, the defendant and a second individual targeted homes in Foster City. They had created a list of houses and were slowly making their way through the list. When they reached one home, the victim was present and subsequently notified the police. After attempting to run from officers, the defendant was eventually taken into custody. During a search of the car, a significant amount of stolen property was found.

During his interview with this officer, the defendant had been strictly instructed not to discuss the present matter or his past offenses. He revealed he was to discuss his motivation to change his life and his past controlled substance involvement. Given this, it was difficult to discern the defendant's remorse or true motivations.

The defendant does not appear to be a suitable candidate for supervised probation at this time. The defendant was an active participant in the crime and the manner in which it was conducted reveals sophistication and professionalism. The defendant's prior record reveals a pattern of serious behavior and his past performance on supervision was unsatisfactory. Further, he expressed no remorse for his actions. (Rules of Court 4.414)

Pursuant to Rules of Court 4.421, circumstances in aggravation include the sophistication and professionalism of the crime, the attempted taking of property which has great monetary value. The defendant has engaged in conduct which is a serious danger to society, he has served a prior prison term, was on supervision at the time he committed the present matter and is in violation of that grant of supervision.

Pursuant to Rules of Court 4.423, there do not appear to be any mitigating factors.

- - - - - - - - - - - - - - - - - - - -

HOA TRUNG KHUU
AKA: Chey Rubin; Cheyenne Rubin; et. al.

Court Number SC056446A

SOCIAL FACTORS

(Source: Defendant's Statement, Police Reports)

FAMILY BACKGROUND

Hoa Trung Khuu was born on December 4, 1974, in Saigon, Vietnam. He is the second of five boys born to My Khuu Sung and K. Thai Phat. His parents have little education and are employed delivering newspapers and as a school cook. The family moved to the United States when the defendant was 11 years old. The defendant revealed a significant amount of physical abuse from his father and uncles. He stated this was largely due to cultural norms. He recalled instances in Vietnam in which he was tied to the top of an anthill or hit with bamboo sticks. When the family moved to the United States, the abuse lessened. The defendant said at one point, he began to fight back.

The defendant's family lived in San Francisco before they moved to Oakland for a short period of time. The family was unhappy there however, and quickly returned to San Francisco. When the defendant reached high school age, he began to get involved with older peers and his criminality began.

EDUCATION

The defendant attended public schools in Oakland partway through the tenth grade before he dropped out. He stated he attained poor grades and had unsatisfactory attendance. He is currently working on completing his GED.

EMPLOYMENT

The defendant has a minimal employment history. He first worked in 1998 delivering mail for a shipping company. He earned approximately $150.00 a week. He stayed at this job for one year. In 1999, he went to work for an auto body center where he worked for one year. At this position, he was earning $750.00 a week. He has not been employed since the year 2000, but admitted he would sometimes work for friends who would pay him in cash.

MARITAL

The defendant is unmarried and has not fathered any children.

HEALTH

The defendant appeared to be in good health. He reported that he has never suffered from any diseases nor taken any medication.

SUBSTANCE ABUSE/TREATMENT HISTORY

The defendant has been participating in the Choices Program for the past two months. He has been accepted to the Delancey Street Foundation and is desirous of attending. He has not been in a residential treatment program in the past.

The defendant first consumed alcohol when he was 13 years old. He stated that he would drink approximately once a week, and frequently experienced periods of blacking out from intoxication. At 14 years old, he began to smoke marijuana. He maintained that he does not like it and only uses it once every few months. When he was around 15, he tried cocaine for the first time. He was soon smoking it every day, but this use only continued for about two years. In more recent years, the defendant has been using what he believes is methamphetamine. He has been inhaling the drug in addition to taking ecstasy almost every day.

MILITARY

The defendant has not served in any branch of the armed forces.

PRIOR OFFENSES

CII records reveal the following:

| Date | Location | Charge | Disposition |
|---|---|---|---|
| 7/7/94 | FBI | Ct.1 – Consp.to Obstr.; Ct.2 – Consp.to Use Firearm to Commit Felony | 11/12/96: Crt.#CR940350; 53 mos.prison, foll'd by 3 yrs. supv.rls. 5/11/98: Supv.rlsd.; no bail warrant; prob.viol. |

PRESENT OFFENSE

Records of the Foster City Police Department reveal the following:

On March 10, 2004, the victim called 911 after two individuals had attempted to break into the rear door of his house. The victim reported that his doorbell had rung repeatedly, which he ignored. Several minutes later, he heard the suspects breaking in. He yelled at them and called the police. The victim provided a description of the individuals to the police.

While responding to the address, an officer observed two individuals driving a Range Rover. They matched the description provided by the victim. The officer attempted to conduct a vehicle stop, however, they fled from the



area. At one point, the car came to a halt and the two individuals fled on foot. The defendant ultimately jumped into the Foster City lagoon and began to swim away. He later returned to shore, telling officers to go ahead and shoot him. He fled once again and was later detained as he tried to hide underneath a boat cover.

The defendant initially provided his brother's identification before correcting himself. He did not provide a post-Miranda statement. He was booked into the county jail without further incident. The second suspect was also arrested and booked into the county jail.

A search of the involved vehicle revealed an excess of stolen property from two prior burglaries and a large screwdriver.

DEFENDANT'S STATEMENT CONCERNING THE PRESENT OFFENSE

The defendant did not submit a statement concerning his conviction per the advice of his attorney.

VICTIM IMPACT STATEMENT/RESTITUTION

Each of the three victims in this matter were sent departmental restitution letters and contacted by telephone.

Victim Tommy Hui stated that there was some damage caused to the frame of the sliding glass door, but that his landlord had easily repaired it without charge. Mr. Hui stated that he was initially very angry about the incident and was very concerned about the safety of his community. He expressed the hope that the defendant has learned his lesson and has figured out other ways to contribute to the community.

Victims George and Pamela Hung stated that they received all items back and have no claim for restitution. It is their belief that the defendant deserves as much custody time as the law allows. They believe he is a serious threat to the community.

Victims Yao and Sharon Chi have no claim for restitution and did not submit a statement.

ABILITY TO PAY

The defendant is currently in custody with no source of income. He has been supported by his family and his girlfriend for the past four years. He has not had an independent source of income since 2000. It appears very unlikely that the defendant will have the ability to pay any restitution in this case.

INTERESTED PARTIES

The defendant has been accepted to the Delancey Street Foundation. His acceptance letter has been attached to this report.

HOA TRUNG KHUU
AKA: Chey Rubin; Cheyenne Rubin; et. al.

Court Number SC056446A

MISCELLANEOUS

1) Records of the California Department of Motor Vehicles reveal the defendant's driver's license, number B3071476 has expired. No outstanding failures to appear, departmental actions or convictions are noted.

2) The defendant has a no bail foreign warrant hold from the United States Marshals, reference number W840519765.

FINANCIAL

The defendant did not disclose any financial information.

PROBATION/PAROLE PERFORMANCE

The Adult Probation Department has not previously supervised the defendant. His adult record shows that he was placed on federal supervision following a conviction on November 12, 1996. A violation is noted on May 11, 1998. The defendant remains in violation and admitted that he absconded from this supervision.

Respectfully submitted,

By ____________________
ANNA K. MILLER
Deputy Probation Officer

Approved,

By ____________________
CINDY L. PERRY
Probation Services Manager I

AKM:nts
File #121627

# EXHIBIT F

**JURISDICTION: FEDERAL**
**TITLE: KHUU v. TILTON**
**CASE NO: TO BE SUPPLY BY THE CLERK**
**DESCRIPTION: Motion To Withdraw As Retained Counsel (MWRC)**
**NUMBER OF PAGES: 5**

339

Frank Bell, SBN 038955
Attorney at Law
303 Bradford Street, Suite C
Redwood City, CA 94063-1529
Tel: 650 365-8300
Fax: 650 366-8987

Attorney for Defendant
HOA TRUNG KHUU

FILED
SAN MATEO COUNTY
OCT 21 2004
Clerk of the Superior Court
By
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

THE PEOPLE OF THE STATE OF CALIFORNIA,

PLAINTIFF

v.

HOA TRUNG KHUU,

DEFENDANT

NO. SC56446

MOTION TO WITHDRAW AS RETAINED COUNSEL

Judge: Schwartz, Dept 18
Date: October 29, 2004
Time: 9:00 a.m.

Comes now FRANK BELL, retained counsel for defendant herein, and moves the court for an order permitting him to withdraw as counsel for defendant.

As a basis for this motion, Mr. Bell states the following:

On or about July 6, 2004, defendant signed an attorney fee agreement (hereafter "Agreement") retaining Mr. Bell as his attorney in the court of unlimited jurisdiction. The charges against the defendant were two counts of residential burglary, one count of attempted residential burglary and two counts of possession of stolen property. The Agreement provided that defendant would pay deposit with Mr. Bell the sum of $15,000.00 towards the attorney fees in the case. The hourly rate charged by Mr. Bell, as

provided in the Agreement was $300.00.

The Agreement provided for no maximum fee. It provided "In addition to the deposit mentioned in No. 3, above, other attorney fees are due and payable at the rate called for in the Rate Schedule after the initial retainer deposit is exhausted, to be paid by advance deposit in such sums as may be requested by Attorney or monthly in the discretion of Attorney." The Agreement also provided that in the event the defendant took the matter to trial, "...attorney fees of $3,000.00 per anticipated day of trial and $300.00 per hour for anticipated pretrial preparation..." were due and payable to Mr. Bell.

Mr. Khuu's family and friends did make the deposit payment in three payments. $9,000.00 was paid on July 2, 2004, and additional $4,000.00 was paid on July 26, 2004 and the final $2,000.00 was paid on August 19, 2004 for a total of $15,000.00. However, no additional payments have been made to counsel.

Mr. Khuu's jury trial commenced on August 30, 2004. The trial lasted six (6) days, with the jury returning guilty verdicts on all counts on September 8, 2004. As a result of the time spent by counsel in preparation for trial, trial and matters thereafter, Mr. Khuu has accumulated an outstanding balance over and above the deposit paid of $5,728.00 as of the end of September, 2004. Almost $900.00 of the outstanding amount owed was incurred for investigation. Moreover, counsel did not charge Mr. Khuu the $3,000.00 per day called for in the Agreement. In fact, the maximum daily charge for the trial was $2,100.00 on one day. The other days were billed as follows: $1,800.00, $1,650, $750.00, $1,050.00, $1,350.00 and $750.00.

Nevertheless, when Mr. Bell talked with Mr. Khuu about his outstanding balance on Monday, October 19,2004, Mr. Khuu indicated that he did not intend to pay Mr. Bell the money he owed him because, among other complains he had about the representation he received from Mr. Bell, "You did nothing for me in court." In addition, defendant indicated that even if he wanted to pay the additional fees owed to Mr. Bell, he was not financially able to do so because his family did not have any more money. In this

conversation the defendant exhibited a demeanor toward Mr. Bell that indicated to counsel that counsel could no longer work with the defendant and that the defendant did not intend to cooperate with counsel. In fact, it is counsel's opinion that the attorney-client relationship is irremediably damaged and that it has been severed and broken down beyond repair.

The defendant is now set for sentencing on November 19, 2004 before Your Honor. There is much to do to prepare for sentencing. First, there is a court trial on the allegations that he suffered a prior "strike" offense and that the same prior conviction is a Penal Code Section 667.5 five year prior. Second, should the court decide that the defendant suffered the conviction (an alleged prior felony conviction for a violation of the Hobbs Act in federal court in San Francisco) a Romero motion should be filed on defendant's behalf asking the court to strike the "strike" for the purposes of sentencing. Mr Khuu is facing a possible maximum sentence in excess of twenty (20) years on the matters of which he was convicted.

Mr. Khuu has previously waived time for sentencing and he has no objection to Mr. Bell's request to withdraw. He will continue to waive time to permit new counsel to prepare for the sentencing herein. I informed the district attorney of my intention to make this motion. She did not express any opposition to the motion.

Mr. Bell, respectfully requests that the court permit Mr. Bell to withdraw as counsel for Mr. Khuu and that the court appoint the Private Defender to represent Mr. Khuu at the sentencing herein.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this 21st day of October, 2004 at Redwood City, California.

Dated: October 21, 2004

Respectfully submitted,

FRANK BELL
Attorney for Defendant
HOA TRUNG KHUU

POINTS AND AUTHORITIES

The court has authority to relieve retained counsel if the client has not paid his fees. CCP Section 284(2). See also, People v. Castillo (1991) 233 Cal.App.3d 36, 55.

Where there is a request that retained counsel be replaced by appointed counsel because the client can no longer afford to pay retained counsel, the court should grant the request so long as there is no prejudice to the client. People v. Ortiz (1990) 51 Cal.3d 975 983.

PROOF OF SERVICE BY HAND

I, FRANK BELL, declare and say:

On the date indicated below, I served the following document(s):

MOTION TO WITHDRAW AS COUNSEL

by hand delivery by personal delivery of a true and correct copy thereof to the office of Attorney for Petitioner, to wit:

Office of District Attorney
400 County Center, 3rd Floor
Redwood City, CA 94063

I declare under penalty of perjury that the foregoing is ue and correct. Executed this 21st day of October 2004 at dwood City, California.

# EXHIBIT  G

**JURISDICTION: FEDERAL**
**TITLE: KHUU v. TILTON**
**CASE NO: TO BE SUPPLY BY THE CLERK**
**DESCRIPTION: Letter to Judge**
**NUMBER OF PAGES: 4**

To the Honorable Judge Schwartz;

Your honor, I humble myself before the court today in respect for your intelligence and fair judgement, as the court is already aware of my case before you. This letter is not an expose of excuse, but rather, a plea for help and guidance.

I came to the United States of America as an eleven year old Refugee along with five other siblings, and my mother and father from the oppressed, war-torn country of Viet Nam in 1985.

The challenges faced by my family upon arrival here in America where overwhelming. A strange culture with customs and traditions foreign to what I had know prior to coming here, did not make the transition any easier.

My parents had to struggle in a foreign land to find work and take care of six children. This was not easy considering the expense of raising a family in America without the formal America Education, and job skills that are necessary to succeed in this country. Both my parents had to work and rely on Government services such

(2)

as welfare to provide food and shelter for all of us, we were basically a low income family trying to survive in the land of the promised, America.

Besides economic difficulties afflicting my family, there were other dynamics adverse to our transition. adjusting to school and relating to other American kids proved to be troublesome. The English language was a big challange, everything in this country was an obstacle for my family and myself, because we didn't necessarily have the support network needed, to keep our family together.

Our family structure fell apart with the death of one of my brothers, both my parents spending time working and not being there to carry out the needed supervision of five rumbustious kids, because the economy made it necessary for them to work more so we could eat. There fore, we were pretty much allowed to run as we wished unfortunately.

Eventually, this led to poor decision such as falling into the wrong crowd, finding acceptance in a strange land any way we could, and finding ways to escape the pain of our struggle with drugs, alcohol and high risk behavior

I began experimenting with alcohol and drugs at the age of 13 years old. I hadn't liked the way life was going though, I didn't know this then. I picked the wrong people to hang around with, and found acceptance and relief the wrong way.

As the years passed on I was introduced to cocaine at the age of 16, and the next thing I knew, I was addicted to this drug.

During the course of my life, drug abuse had been prevalent and mostly the cause of aberrant behavior. My family meaning some of my brothers, also had their share of becoming addicted to drugs. Subsequently, family unity fell apart and disappeared, and members of my family all went their own seperate ways.

Since my coming to Choices, I have learned some of the reasons why my life got screwed up. Trouble is, that during my addiction, I was helpless in that I didn't know how to ask for help. I lacked the essential skills needed to become drug free, and to face issues long suppressed over the years because of my need to self medicate myself in order to cope with life.

While I've been here at choices, I've come to reason that I can change my life,

(4)

but that I need help in doing so. Denial has been a big obstacle because of drugs and because of the fact that I did'nt have the support to help me recover.

I have finally found a way to become a better person in life through choices and have finally found hope. I am desperate to change and be happy because living the life I have been, has only been an illusion. I wasn't happy, I was really miserable and didn't know this because I was high all the time.

I have been accepted to Delancy Street foundation and humbly ask for your help to get me there. without treatment, changing myself and my life is going to be even more difficult for me.

With heartfelt Sincerety,

[signature]

# PROOF OF SERVICE

## Declaration Of Service By Mail

**I, Hoa Trung Khuu, declare that I am over the age of eighteen (18) and that I am a party to this action. On November 26, 2007, I deposited a copy of the following document(s):**

**FEDERAL HABEAS CORPUS AND EXHIBITS;**
**SASE FOR COMFERMED COPY**

**In a sealed envelope with postage prepaid into the United States mail outlet via authorized Tallahatchie County Correctional employee at Tallahatchie County Correctional Institution 295 U.S. Highway 49 South, Tutwiler, Mississippi 38963, and addressed as follows:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**Federal Courthouse**
**450 Golden Gate Avenue**
**San Francisco, CA 94102-3483**

**I declare under penalty of perjury pursuant to 28 U.S.C. §1746, and State Laws, that the foregoing is true and correct and that this declaration was executed at Tallahatchie County Correctional Facility, 295 U.S. Highway 49 South, Tutwiler, Mississippi 38963**

**DATED: November26, 2007 Signature:__________________**

SUPERIOR COURT, STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>PLAINTIFF,<br>VS.<br>HOA TRUNG KHUU,<br>DEFENDANT. | NO. SC056446A<br>Reporter's Certificate |

STATE OF CALIFORNIA )
) SS.
COUNTY OF SAN MATEO )

I, Kathryn Lezchuk, Certified Shorthand Reporter and Official Reporter of the Superior Court of the State of California, County of San Mateo, do hereby certify that the foregoing, Volume 3, pages 397 through 620, comprise a full, true and correct computer-aided transcription of the proceedings held in the matter of the above-entitled cause.

Dated this 2nd day of January, 2005.

/S/

Kathryn M. Lezchuk, C.S.R. No. 2302
Official Reporter, Superior Court

STATE OF CALIFORNIA }
} SS.
COUNTY OF SAN MATEO }

I, PEGGY THOMPSON, Clerk of the Superior and Municipal Courts, For the County of San Mateo, State of California, do hereby certify that I have compared the papers and documents constituting the foregoing Clerk's Transcript with the original papers and documents in the files in my office in the certain action brought pending in said Superior Court, numbered **SC056446 A** said files, And that the same are full, true and correct copies of the originals on file in my office in said action including appellant's Notice of Appeal.

**WITNESS** my hand and seal of said Superior Court this day **10th of January, 2005**

**PEGGY THOMPSON,**
**CLERK OF THE SUPERIOR AND**
**MUNICIPAL COURTS**
**OF SAN MATEO COUNTY**

BY PRINSCELLA ALVAREZ
DEPUTY CLERK