1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  CHRISTOPHER J. WEI, State Bar No. 78958
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5867
    Fax: (415) 703-1234
8   Email: Christopher.Wei@doj.ca.gov

9  Attorneys for Respondent

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **HOA TRUNG KHUU,** | C 07-6351 SI (pr) |
| Petitioner, | **EXHIBITS 2 to 8** |
| v. | |
| **JOHN TILTON, CDCR Secretary,** | |
| Respondent. | |

Exhibit 2 to 8

Khuu v. Tilton
C 07-6351 SI (pr)

# EXHIBIT 2

*8/29/2005*

COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

THE PEOPLE OF THE STATE
OF CALIFORNIA,

      Plaintiff and Respondent,

      v.

HOA TRUNG KHUU,

      Defendant and Appellant.

A108442

Superior Court SC056446
(San Mateo)

*622 PSS*

**DOCKETED**
**SAN FRANCISCO**

AUG 3 0 2005

By _____ P. MONTOYA
No. SF 2005 DA 0077

*1/25/05*

<u>APPELLANT'S OPENING BRIEF</u>

Appeal From The Judgment of the Superior Court
Of The State of California, County of San Mateo

Honorable John G. Schwartz, Judge

---

CATHERINE WHITE
SBN 193690
19 Embarcadero Cove
Oakland, California 94606
(510) 534-7026

By appointment of the Court of Appeal through
the First District Appellate Project
(Independent)

Attorney for Appellant
Hoa Trung Khuu

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................... iii

STATEMENT OF APPEALABILITY ..................................... 1

STATEMENT OF THE CASE ......................................... 1

STATEMENT OF FACTS ........................................... 4

    The Trial Proceedings ......................................... 4

    Defense Counsel Seeks To Withdraw -- And Defendant Seeks New
        Counsel --When A Dispute Over Fees Render The Attorney-Client
        Relationship "Irremediably Damaged, "Severed," And "Broken
        Down Beyond Repair" ...................................... 8

    Represented By An Attorney Who No Longer Wanted To Work On His Case
        And Who He Wanted Fired, Mr. Khuu Is Sentenced To 17 Years In
        State Prison ........................................... 10

ARGUMENT ................................................... 11

I.    THE TRIAL COURT'S DENIAL OF MR KHUU'S REQUEST TO
    DISCHARGE HIS RETAINED ATTORNEY VIOLATED HIS STATE
    AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS
    AND THE ASSISTANCE OF COUNSEL ........................... 11

    A.    The Relevant Facts ...................................... 11

    B.    The Trial Court Violated Mr. Khuu's Right To Discharge Retained
        Counsel And Have A New Attorney Appointed For Him ............. 12

    C.    Because Mr. Khuu Was Forced To Proceed With A Retained Attorney
        Whom He Timely Sought To Discharge In Favor Of Court-Appointed
        Counsel, Reversal Is Automatic ............................. 17

i

II.   THE TRIAL COURT VIOLATED MR. KHUU'S SIXTH AMENDMENT
      RIGHT TO A JURY TRIAL BY IMPOSING CONSECUTIVE TERMS
      BASED ON FACTUAL FINDINGS RESOLVED NOT BY A JURY, BUT
      BY THE TRIAL COURT ALONE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      A.   The Trial Court Erred In Imposing Consecutive Terms Based on Facts
           Never Found True By The Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      B.   Because The Factors Relied Upon By The Trial Court To Impose
           Consecutive Sentences Were Invalid, The Sentence Must Be Vacated  . . 28

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

TABLE OF AUTHORITIES

FEDERAL CASES

Apprendi v. New Jersey (2000) 530 U.S. 466 ....................................... 23

Blakely v. Washington (2004) __ U.S. __, 124 S. Ct. 2531 ................ 25

Coleman v. Alabama (1970) 399 U.S. 1 ............................................. 13

Gideon v. Wainwright (1963) 372 U.S. 335 ....................................... 13

McMillan v. Pennsylvania (1986) 477 U.S. 79 ................................... 23

Morrissette v. United States (1952) 342 U.S. 246 ............................... 23

Mullaney v. Wilbur (1975) 421 U.S. 684 ............................................. 22

Sandstrom v. Montana (1979) 442 U.S. at p. 512-514 ........................ 22

Smith v. Murray (1986) 477 U.S. 527 ................................................. 28

United States v. Gouveia (1984) 467 U.S. 180 ................................... 13

United States v. Jones (1999) 526 U.S. 227 ........................................ 23

In re Winship (1970) 397 U.S. 358 ...................................................... 23

STATE CASES

People v. Bejarano (1981) 114 Cal. App. 3d 693 ................................ 29

People v. Black (2005) 35 Cal. 4th 1238 ............................................. 28

People v. Flores (1981) 115 Cal. App. 3d 924 ..................................... 29

People v. Garfield (1979) 92 Cal. App. 3d 475 ................................... 30

People v. Lara (2001) 86 Cal. App. 4th 139 ......................................... 13

iii

People v. Lau (1986) 177 Cal. App. 3d 473 .......................................... 16

People v. Lawson (1980) 107 Cal. App. 3d 748 .................................. 29

People v. Ortiz (1990) 51 Cal. 3d 975 .................................................. 13

People v. Piceno (1988) 195 Cal. App. 3d 1353 .................................. 29

People v. Smith (1980) 101 Cal. App. 3d 964 ....................................... 30

People v. Stevens (1984) 156 Cal. App. 3d 1119 ................................. 16

People v. Turner (1992) 7 Cal. App. 4th 913 ........................................ 16

STATEMENT OF APPEALABILITY

This appeal is from a judgment following trial that finally disposes of all issues between the parties and is authorized by Penal Code section 1237, subdivision (a).[1]

STATEMENT OF THE CASE

On June 9, 2004, the San Mateo County district attorney filed a five count information charging appellant Hoa Trung Khuu with (1) two counts residential burglary in violation of section 460, subdivision (a); (2) one count attempted residential burglary in violation of sections 460, subdivision (a), and 664; and (3) two counts of possession of stolen property in violation of section 496, subdivision (a). (CT 5-7.) The information added allegations of a prior strike for purposes of the three strikes law as well as the prior serious felony five-year enhancement provided by section 667(a). (CT 7-8.) Appellant pled not guilty and denied the allegations. (CT 123.)

Trial began on September 1, 2004. (CT 200.) Deliberations began on September

---

[1]    Citations to the Clerk's Transcript on Appeal are denoted "CT." Citations to the Reporter's Transcript on Appeal are denoted "RT."

All statutory references are to the Penal Code unless otherwise specified.

1

7, 2004.  (CT 217.)  On September 8, 2003, the jury found appellant guilty on all counts. (CT 326-330.)

On October 21, 2004, defense counsel filed a Motion to Withdraw as Retained Counsel.  (CT 339.)  Through counsel, Mr. Khuu requested that "the court permit [current counsel] to withdraw as counsel for [appellant] and that the court appoint the Private Defender to represent [appellant] at the sentencing herein."  (CT 341.)  According to counsel, "the attorney-client relationship is irremediably damaged and that it has been severed and broken down beyond repair."  (CT 341.)  The trial court denied the motion. (CT 344.)

On November 18, 2004, the trial court found true the prior strike and prison term allegations.  (CT 363.)  The court then sentenced appellant to (1) the mid-term of 4 years as to count one, (2) one-third the mid-term for a consecutive term of 8 months as to count two, and (3) one-third the mid-term for a consecutive term of 1 year, 4 months, as to count three.  (CT 364.)  The court then doubled the terms pursuant to section 1170.12, subdivision (c)(1).  (CT 364.)  Finally, the court added a five-year term for the prior serious felony allegation, and stayed sentence on all remaining counts.  (CT 364.)  The total term imposed was 17 years in state prison.  (CT 364.)

2

Appellant timely filed a Notice of Appeal.  (CT 380.)

## STATEMENT OF FACTS

**The Trial Proceedings.**

On June 9, 2004, the state charged appellant Hoa Trung Khuu with one count of attempted burglary, two counts of burglary and two counts of possession of stolen property. (CT 5-7.) Appellant retained counsel to represent him. (CT 339.)

Trial began on September 1, 2004. (CT 200.) State witness Tommy Hui testified that on March 10, 2004, he was home sick watching television. (RT 70.) When he heard someone walking outside and his doorbell ring, Hui peeked through the front door. (RT 72.) No one was at his door, but Hui saw a black Range Rover in front of the house. (RT 74.) There was a driver at the wheel. (RT 74.)

Hui went upstairs to work on his computer. (RT 75.) He heard noises at the side of the house, but believed it was the gardener. (RT 75.) When he heard metal scraping, Hui started downstairs and saw through his sliding glass door. (RT 76.) He could see a man holding a straight thin instrument and trying to pry open the door. (RT 77.) He saw another man behind him. (RT 78.) When Hui yelled, the men ran away. (RT 81.) He called police. (RT 84.)

4

Police officer William Sandri received the dispatch, learning of Hui's description

of a black Range Rover. (RT 108.) On his way to Hui's home, Officer Sandri saw a

black Range Rover. (RT 108.) He initiated a traffic stop. (RT 109.) The truck

accelerated before coming to a stop. (RT 114.) The two men inside the truck then fled on

foot. (RT 114.)

Officer Sandri pursued the two men, knowing other officers were en route. (RT

115.) Officer Mark Lee arrived and joined the chase. (RT 117, 166.)

The officers caught up with the two men to see them bending over, breathing

heavily. (RT 130.) The officers ordered them to the ground. (RT 130.) Both men

hopped over a fence. (RT 131.) The officers then lost the trail. (RT 131, 168.)[2]

Officer Lee believed that the nearby lagoon was the only place the men could have

---

[2]        Residents in the area saw the two men. At a nearby restaurant, Kevin
Taliaferro saw the men come around the corner, then saw the police officers in pursuit.
(RT 232-234.) One of the men dropped a telephone. (RT 236.) Mr. Taliaferro gave the
telephone to officers. (RT 237, 244.) The telephone belonged to Mr. Khuu's mother.
(RT 461.)

        Mary Elkington saw a man wearing khaki pants and a white t-shirt,
squatting behind bushes. (RT 120-121.) When she saw police, she yelled at the man to
get off her property. (RT 121.) The man ran away. (RT 122.) The next day, Mary's
husband found a driver's license and list of addresses under the bush. (RT 123-125.)

gone. (RT 168.)  As he approached a boat, Lee heard footsteps. (RT 168.)  Lee ordered

the person to come out with his hands up.  (RT 168.)  He saw a man -- later identified as

Mr. Khuu -- hiding behind a boat, refusing to come out.  (RT 169, 173.)  Mr. Khuu then

tried to swim across the lagoon.  (RT 169.)  When the officer ordered him to give up, Mr.

Khuu told the officer to shoot him.  (RT 169.)  Eventually Mr. Khuu came to shore.  (RT

169.)

Mr. Khuu then lay on the grass.  (RT 170.)  Officer Lee was about to handcuff

him, but Mr. Khuu got up and ran away.  (RT 171.)  The officer pursued Mr. Khuu until

eventually finding him crouched behind a fence in a garbage can.  (RT 172.)

Mr. Khuu was taken into custody.  (RT 174.)  The second man was also eventually

taken into custody.  (RT 132, 209.)  His name was Ryan Bui.  (RT 132.)[3]

Back at the Range Rover, officers found inside the truck a gift certificate, jewelry,

black gloves, assorted coins, a laptop computer, compact discs, a digital camera, a Rolex

watch, a black computer bag with computer accessories, a Game Boy game, a Louis

---

[3]      Mr. Hui was eventually asked by police to identify the men at his sliding
glass door. (RT 85-86.)  He could not positively identify either Mr. Khuu or Mr. Bui.
(RT 86, 88.)

Vuitton wallet and stacks of money, including foreign currency. (RT 189, 346-351.) Officers also found a screwdriver a 17 inch long screwdriver. (RT 187.)

Some of these items belonged to the Chi family. (RT 255.) On May 9, 2004, Sharon Chi left her home for a trip to Taiwan. (RT 248.) She left behind over $5,000 in a cabinet, a collection of $2 bills in a drawer, jewelry on the nightstand, and a Rolex watch in a bedroom. (RT 249, 252, 253-254.) Two days later, Sharon's husband Yao noticed that cabinet with cash had been forced open. (RT 271-272.) The cash and other items were missing from the home. (RT 254-255, 273.) His son Solomon called police. (RT 284-285.) He recalled that he had not locked the garage door before leaving that day. (RT 282.) He later noticed that a window screen had been pried open. (RT 286.)

Other items belonged to the Hung family. (RT 311, 319-322, 330-331, 334-337.) On March 10, 2005, George Hung left for work, locking the doors. (RT 301-302.) He received a call from police, asking him to return home. (RT 305.) Police had found his name on property inside the Range Rover. (RT 381.) When he arrived, Mr. Hung saw that a laptop computer, a camera, money, and jewelry were missing. (RT 305-307.) He also saw that the garage knob was broken. (RT 309-310.) His wife Pam came home to notice that the curtain in the living room was closed when she had left it open that morning. (RT 329.)

7

Deliberations began on September 7, 2004.  (CT 217.)  On September 8, 2003, the

jury found Mr. Khuu guilty on all counts.  (CT 326-330.)  Sentencing was scheduled for

November 19, 2004.  (RT 338.)


**Defense Counsel Seeks To Withdraw -- And Defendant Seeks New Counsel -- When A Dispute Over Fees Render The Attorney-Client Relationship "Irremediably Damaged, "Severed," And "Broken Down Beyond Repair."**


Yet on October 21, 2004, defense counsel filed a Motion to Withdraw as Retained

Counsel.  (CT 339.)  Here is why.


According to counsel's written motion, Mr. Khuu owed him for legal services,

accumulating an outstanding balance of over $5,000.  (CT 340.)  On October 19, 2004,

when counsel spoke with appellant about the balance, Mr. Khuu "indicated that he did not

intend to pay [counsel] the money he owed him because, among other complains [sic] he

had about the representation he received from [counsel], 'You did nothing for me in

court.'" (CT 340.)  Moreover, Mr. Khuu told counsel "even if he wanted to pay the

additional fees owed to [counsel], he was not financially able to do so because his family

did not have any more money."  (CT 340.)


As a result of this conversation, and because of defendant's demeanor towards

8

him, counsel concluded that "the defendant did not intend to cooperate with counsel." (CT 341.) In fact, "it [was] counsel's opinion that the attorney-client relationship [was] irremediably damaged and that it ha[d] been severed and broken down beyond repair." (CT 341.)

Unfortunately, Mr. Khuu still needed the assistance of an attorney. As counsel pointed out, there remained a trial court on the allegations that Mr. Khuu suffered an allegation of a prior strike (a conviction for a violation of the Hobbes Act in federal court) for purposes of the three strikes law as well as the prior serious felony five-year enhancement provided by section 667(a). (CT 341.) If the court were to decide that the defendant had indeed suffered a prior conviction, a <u>Romero</u> motion would be necessary. (CT 341.) Finally, Mr. Khuu still faced a potential sentence of over 20 years in state prison. (CT 341.)

In light of these pending serious matters, and because the attorney-client relationship had deteriorated beyond repair over money and representation, Mr. Khuu requested through counsel an order discharging current counsel from the case. (CT 341.) Mr. Khuu also requested that the court appoint him a new attorney. (CT 341.)

The trial court heard the matter on October 29, 2004. (CT 344.) The court denied

9

that motion because it "really did not want to experience the delay, in view of what's left

to do, that would be attendant upon relieving [defense counsel]." (CT 601, 602.)

**Represented By An Attorney Who No Longer Wanted To Work On His Case And Who He Wanted Fired, Mr. Khuu Is Sentenced To 17 Years In State Prison.**

Defense counsel continued representing Mr. Khuu.  At the court trial on the prior

allegations, counsel submitted the matter.  (RT 605.)  The trial court found true the prior

strike and prison term allegations.  (RT 606-610.)  Counsel then argued a <u>Romero</u> motion.

(RT 606-610.)  The trial court denied the motion.  (RT 610.)  Counsel then represented

Mr. Khuu at sentencing.  (RT 610-615.)  The trial court sentenced Mr. Khuu to 17 years

in state prison.  (RT 614-615.)

Defense counsel then again asked to be relieved as counsel.  (RT 616.)  According

to counsel, his fees had not yet been paid.  (RT 616.)  Counsel still no longer wanted to be

Mr. Khuu's attorney, asking that new counsel be appointed for the appeal.  (RT 616.)

The trial court assured defense counsel that he was off the hook, telling him that new

counsel would eventually be appointed.  (RT 616.)

ARGUMENT

I.    THE TRIAL COURT'S DENIAL OF MR KHUU'S REQUEST TO DISCHARGE
      HIS RETAINED ATTORNEY VIOLATED HIS STATE AND FEDERAL
      CONSTITUTIONAL RIGHTS TO DUE PROCESS AND THE ASSISTANCE
      OF COUNSEL.

      A.    The Relevant Facts.

      As explained above, after trial appellant Hoa Khuu and his retained counsel had a

dispute an outstanding balance for legal services. (CT 340.)  When counsel spoke with

appellant about the balance, Mr. Khuu "indicated that he did not intend to pay [counsel]

the money he owed him because, among other complains [sic] he had about the

representation he received from [counsel], 'You did nothing for me in court.'" (CT 340.)

Mr. Khuu also told counsel "even if he wanted to pay the additional fees owed to

[counsel], he was not financially able to do so because his family did not have any more

money." (CT 340.)

      As a result of this dispute, and because of defendant's demeanor towards him,

counsel concluded that "the defendant did not intend to cooperate with counsel." (CT

341.)  In fact, "it [was] counsel's opinion that the attorney-client relationship [was]

irremediably damaged and that it ha[d] been severed and broken down beyond repair."

11

(CT 341.)

Because the attorney-client relationship had so deteriorated, and because he knew that counsel no longer wished to represent him, Mr. Khuu sought an order allowing defense counsel to withdraw from the case. (CT 341.) Through counsel, Mr. Khuu also requested that the trial court appoint him a new attorney. (CT 341.)

The trial court heard the matter on October 29, 2004. (CT 344.) The court denied that motion because it "really did not want to experience the delay, in view of what's left to do, that would be attendant upon relieving [defense counsel]." (RT 601, 602.) The court then scheduled the case to continue on November 18, 2004. (RT 602.)

As more fully discussed below, the trial court erred in denying Mr. Khuu's motion to allow retained counsel to withdraw from the case and to appoint new counsel. Reversal is automatic.

B.      The Trial Court Violated Mr. Khuu's Right To Discharge Retained Counsel
        And Have A New Attorney Appointed For Him.

The Sixth Amendment to the United States Constitution provides that criminal defendants are entitled to the assistance of counsel at all critical stages of the proceedings

12

against them. (<u>United States v. Gouveia</u> (1984) 467 U.S. 180, 187; <u>Coleman v. Alabama</u>

(1970) 399 U.S. 1, 9-10; <u>Gideon v. Wainwright</u> (1963) 372 U.S. 335, 344-345.) The

California Constitution is in accord. (Cal. Const., art. I, § 15.) "The right of a criminal

defendant to counsel and to present a defense are among the most sacred and sensitive of

our constitutional rights." (<u>People v. Ortiz</u> (1990) 51 Cal.3d 975, 982, <u>citing</u> <u>Magee v.</u>

<u>Superior Court</u> (1973) 8 Cal.3d 949, 954.)

   A criminal defendant also has the Due Process right to appear and defend with

retained counsel of choice. (<u>People v. Ortiz, supra,</u> 51 Cal.3d at pp. 982-983; <u>People v.</u>

<u>Lara</u> (2001) 86 Cal.App.4th 139, 152.) "While we have recognized competing values of

substantial importance to trial courts, including the speeding determination of criminal

charges, the state should keep to a 'necessary minimum its interference with the

individual's desire to defend himself in whatever manner he deems best, using any

legitimate means with his resources.'" (<u>People v. Ortiz, supra,</u> 51 Cal.3d at p. 982

[citations omitted].) Indeed, "[a] criminal defendant's right to decide how to defend

himself should be respected unless it will result in 'significant prejudice' to the defendant

or in a 'disruption of the orderly processes of justice unreasonable under the

circumstances of the particular case.'" (<u>Ibid.</u>)

   While an indigent criminal defendant must prove inadequate representation in

13

order to obtain new appointed counsel, a defendant employing retained counsel may

discharge such counsel at any time with or without cause. (People v. Ortiz, supra, 51

Cal.3d at p. 983; People v. Lara, supra, 86 Cal.App.4th at p. 152.) The right to discharge

retained counsel is based on "'necessity in view both of the delicate and confidential

nature of the relations between [attorney and client], and of the evil engendered by

friction or distrust.'" (People v. Ortiz, supra, 51 Cal.3d at p. 983, quoting Todd v.

Superior Court (1919) 181 Cal. 406, 413.) "In order to ensure effective assistance of

counsel, a nonindigent defendant is accorded the right to discharge his retained attorney:

'the attorney client relationship . . . involves not just the casual assistance of a member of

the bar, but an intimate process of consultation and planning which culminates in a state

of trust and confidence between the client and his attorney.'" (People v. Ortiz, supra, 51

Cal.3d at p. 983, quoting Smith v. Superior Court (1968) 68 Cal.2d 547, 561.) In short,

"the right to counsel of choice reflects not only a defendant's choice of a particular

attorney, but also his decision to discharge an attorney whom he hired but no longer

wishes to retain." (People v. Ortiz, supra, 51 Cal.3d at p. 983. Accord People v. Lara,

supra, 86 Cal.App.4th at p. 152.)


Here, Mr. Khuu and his attorney had a dispute over counsel's representation at trial

and outstanding legal fees. (CT 340.) Because of the breakdown in the relationship, and

because Mr. Khuu could no longer pay for retained counsel, Mr. Khuu requested that his

current counsel be permitted to withdraw and new counsel be appointed. (CT 341.)

Because Mr. Khuu had a state and federal constitutional right to discharge his own

retained attorney, the trial court's refusal to grant the motion was error. (See People v.

Ortiz, supra, 51 Cal.3d at p. 983.

To be sure, a defendant's right to discharge his retained counsel is not absolute. A

trial court may deny such a motion if (1) the discharge would cause "significant

prejudice" to the defendant, i.e. by forcing him to proceed without adequate

representation or (2) the request was untimely and would result in a "disruption of the

orderly processes of justice unreasonable under the circumstances of the particular case."

(People v. Ortiz, supra, 51 Cal.3d at p. 982, quoting People v. Gzikowski (1982) 32

Cal.3d 580, 587.  Accord People v. Lara, 86 Cal.App.4th at p. 211-212.)  The court,

however, "must exercise its discretion reasonably: 'a myopic insistence upon

expeditiousness in the face of a justifiable request for delay can render the right to defend

with counsel an empty formality.'" (People v. Ortiz, supra, 51 Cal.3d at p. 984, quoting

People v. Crovedi (1966) 65 Cal.2d 199, 207.)

This was certainly not a case where the discharge would cause "significant

prejudice" to the defendant.  Mr. Khuu and his current counsel were no longer

cooperating. (CT 341.)  The attorney-client relationship was "irremediably damaged,"

15

"severed," and "broken down beyond repair." (CT 341.) Because he had no funds, Mr.

Khuu sought a court-appointed attorney. (CT 341.) To discharge current counsel -- who

would be forced to work on a pro bono basis with a disgruntled client who refused to pay

for past or future legal services -- and instead appoint new counsel hardly posed a

situation which might prejudice Mr. Khuu.

Nor was this a case of untimeliness. A request is generally untimely if made on

the eve of trial. (See, e.g., People v. Lau (1986) 177 Cal.App.3d 473, 479 [request made

as jury selection commenced untimely]; People v. Turner (1992) 7 Cal.App.4th 913, 919

[request made on first day of trial]. Cf. People v. Stevens (1984) 156 Cal.App.3d 1119,

1124 [request made two weeks before trial timely].)

Here, Mr. Khuu made his request within two days of learning that his counsel no

longer wished to be his attorney. (CT 339-343.) The next scheduled proceeding -- a

court trial on the prior allegations and sentencing -- was a month away. (CT 338.) Mr.

Khuu's request could not be more timely.

It is true that the trial court denied the motion because it "really did not want to

experience the delay, in view of what's left to do, that would be attendant upon relieving

[defense counsel]." The only delay attendant upon relieving counsel, of course, would be

16

appointment of new counsel.

Yet the trial court could not deny Mr. Khuu's request on this basis.  A court "must not consider whether a defendant is indigent and will require appointment of counsel in ruling on his timely motion to discharge retained counsel." (People v. Ortiz, supra, 51 Cal.3d at p. 987.)  "To conclude otherwise would be to ignore the value we place on allowing defendants to defendant themselves as they deem best, absent prejudice to themselves or unreasonable delay in the processes of justice." (Ibid.)  Indeed, "it may be even more important for an indigent defendant to be able to discharge retained counsel: if his motion is denied, he must choose between proceeding with no legal assistance or continuing with a retained attorney reluctantly serving on a pro bono basis." (Id. at p. 984-985.)

The fact remains that Mr. Khuu had a right to discharge his retained attorney.  His motion for withdrawal of current counsel and appointment of new counsel was timely and would not have caused prejudice to himself.  The trial court erred in denying the motion.  The only remaining question is prejudice.

     C.      Because Mr. Khuu Was Forced To Proceed With A Retained Attorney Whom He Timely Sought To Discharge In Favor Of Court-Appointed Counsel, Reversal Is Automatic.

Reversal is automatic when a defendant has been deprived of his right to defend with counsel of his choice. (People v. Ortiz, supra, 51 Cal.3d at p. 988.) "The right to counsel of choice, including the right to discharge retained counsel, furthers the dual goals of due process: (1) insuring the reliability of the guilt-determining process by reducing to a minimum the possibility that an innocent person will be punished; and (2) protecting the ideal of human individuality by affirming the state's duty to refrain from unreasonable interference with a defendant's desire to defend himself in whatever manner he deems best." (Ibid.)

Accordingly, "[w]e must not speculate as to the prejudicial effect of "'injecting an undesired attorney into the proceedings.'" (Ibid., quoting People v. Courts (1985) 37 Cal.3d 784, 796.) Instead, prejudice must be presumed "when an indigent criminal defendant is forced to proceed with a retained attorney whom he has consistently, and in a timely manner, sought to discharge in favor of the public defender or other court-appointed counsel." (Ibid.)

That is exactly what occurred here. Mr. Khuu sought discharge of his retained attorney. Instead of allowing defense counsel to withdraw, and affording court-appointed counsel, the trial court forced Mr. Khuu to proceed with a retained attorney for the

18

remainder of the proceedings against him.  Reversal is automatic.  (<u>People v. Ortiz</u>, <u>supra</u>, 51 Cal.3d at p. 988.)

Yet even if a harmless error analysis could apply to this type of error, reversal would still be required in this case.  The remainder of the proceedings against Mr. Khuu were very serious.  They involved a court trial on the prior allegations which exposed Mr. Khuu to the three strikes law and an additional five-year enhancement.  They involved a <u>Romero</u> motion should the court find the prior allegations true.  They involved a sentencing on counts which exposed Mr. Khuu to a term of over 20 years in state prison. In light of these pending serious matters, the assistance of an attorney was crucial.

Yet Mr. Khuu was forced to proceed with his retained counsel.  In other words, he was relying on the assistance of an attorney who (1) was reluctantly working on a pro-bono basis, (2) was owed over $5,000 for past legal services by Mr. Khuu, and (3) knew that Mr. Khuu and his family could not pay the outstanding debt.  Moreover, Mr. Khuu and his retained counsel shared an attorney-client relationship which was "irremediably damaged," "severed," and "broken down beyond repair."

This relationship never got better.  At the end of sentencing, defense counsel's first order of business was to get off the case, asking the trial court to appoint a new attorney

19

for the appeal. (RT 616.) Under these circumstances, reversal is required no matter what standard of prejudice is applied.[4]

---

[4]     Mr. Khuu did not request a discharge of his retained attorney until after the jury reached a verdict. (CT 339.) For this reason, this Court should remand for appointment of new counsel to handle appropriate matters subsequent to verdict, including a new court trial on the prior allegations, sentencing matters and all other matters new counsel deems appropriate under the circumstances of the case.

II.    THE TRIAL COURT VIOLATED MR. KHUU'S SIXTH AMENDMENT
       RIGHT TO A JURY TRIAL BY IMPOSING CONSECUTIVE TERMS BASED
       ON FACTUAL FINDINGS RESOLVED NOT BY A JURY, BUT BY THE
       TRIAL COURT ALONE.

Mr. Khuu was convicted of two counts residential burglary in violation of section

460, subdivision (a), one count attempted residential burglary in violation of sections 460,

subdivision (a), and 664, and two counts of possession of stolen property in violation of

section 496, subdivision (a). (CT 326-328.) At sentencing, the trial court considered

whether to sentence the terms on these counts concurrently or consecutively. (CT 613-

614.)

In this situation, the Legislature has determined that the imposition of concurrent

sentences is the presumptive sentence, absent additional factual findings supporting a

consecutive term. (See Penal Code § 669 ["Upon failure of the court to determine how

the terms of imprisonment on the second or subsequent judgment shall run, the term of

imprisonment on the second or subsequent judgment shall run concurrently."]; Penal

Code § 1170, subd. (c) [requiring trial court to state reasons for sentencing choice on the

record]; California Rules of Court, Rule 4.425, subd. (a), (b) [setting out factual findings

affecting decision to impose consecutive rather than concurrent terms].)

Here, there were several mitigating factors outlined in the probation report. These

21

factors included (1) Mr. Khuu's prior offense was remote in time, (2) Mr. Khuu was a

minor participant in the prior crime, (3) Mr. Khuu had a substance abuse problem and had

been accepted into the Delancy Street Program, (4) Mr. Khuu was young, and (5) the

present offenses were nonviolent, similarly motivated and occurring close in time. (CT

372-374.) Yet the trial court found that "the crimes and their objectives were

predominantly independent of each other and were committed at different times and in

separate places, and therefore, the Court will sentence consecutively." (CT 613-614.)

As more fully discussed below, based on recent authority from the United States

Supreme Court, the statutory scheme under which the trial court imposed consecutive

terms violates the Sixth Amendment. The trial court's imposition of the consecutive

terms cannot be sustained.

A.    The Trial Court Erred In Imposing Consecutive Terms Based on Facts
      Never Found True By The Jury.

The Fifth Amendment requires that in criminal cases, the state must prove every

fact necessary to establish its case beyond a reasonable doubt. (In re Winship (1970) 397

U.S. 358, 364.) In turn, the Sixth Amendment requires that criminal defendants are

entitled to a jury determination of the ingredients of the offense. (Mullaney v. Wilbur

(1975) 421 U.S. 684, 697-698; Sandstrom v. Montana (1979) 442 U.S. 510, 512-514;

22

Morrissette v. United States (1952) 342 U.S. 246, 274-275.)  Together, these rights

require a jury determination, based upon proof by the State beyond a reasonable doubt, of

every factual element of the crime charged.  (Sandstrom v. Montana, supra, 442 U.S. at p.

512-514; In re Winship, supra, 397 U.S. at pp. 363-364.)


When eligibility for a certain sentence turns on "a new finding of fact . . . that was

not an ingredient of the offense charged," that finding must be made in a fashion

consistent with due process.  (Specht v. Patterson, supra, 386 U.S. at p. 608.)  Where

proof of a particular fact exposes a defendant to greater punishment than that available in

the absence of such proof, the Fifth and Sixth Amendments require that the factual issue

must be proven beyond a reasonable doubt to a jury.  (Mullaney v. Wilbur, supra, 421

U.S. at p. 698; McMillan v. Pennsylvania (1986) 477 U.S. 79, 88.)  The Supreme Court

has recently reviewed this case law and re-affirmed that "under the Due Process Clause of

the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment,

any fact (other than prior conviction) that increases the maximum penalty for a crime

must be charged in an indictment, submitted to a jury, and proven beyond a reasonable

doubt." (United States v. Jones (1999) 526 U.S. 227, 243, n.6.  Accord Apprendi v. New

Jersey (2000) 530 U.S. 466, 490 ["any fact that increases the penalty for a crime beyond

the prescribed statutory maximum must be submitted to a jury, and proved beyond a

reasonable doubt."].)

23

The question becomes how this well-established case law intersects with the California's statutory determinate sentencing law scheme as applied in this case. Under that scheme, the jury's verdict exposed Mr. Khuu to presumed concurrent sentences for the two burglaries and attempted burglary. Pursuant to Penal Code sections 669 and 1170(c), the trial court could not impose any consecutive terms absent additional factual findings.

The Supreme Court case law discussed above establishes that this scheme is unconstitutional. None of the aggravating factors upon which the trial court relied in this case -- "the crimes and their objectives were predominately independent of each other and were committed at different times and in separate places" -- were presented to or found by the jury. Instead, these facts were found by the judge alone by a preponderance of the evidence. This violated the Fifth and Sixth Amendments; "any fact (other than prior conviction) that increases the maximum penalty for a crime must be . . . submitted to a jury, and proven beyond a reasonable doubt." (United States v. Jones, supra, 526 U.S. at p. 243, n.6.)

Just last year the Supreme Court reached this exact result in evaluating Washington's very similar sentencing scheme. (Blakely v. Washington (2004) ___ U.S. ___, 124 S.Ct. 2531.) In that case, defendant pled guilty to second degree kidnaping in

24

Washington. Under Washington law, this crime was a "class B felony," punishable by a

ten-year maximum. (Wash. Rev. Code section 9A.20.021(1)(b); <u>Blakely v. Washington</u>,

<u>supra</u>, 124 S.Ct. at p. 2535.) However, the "standard range" for second-degree kidnaping

with a firearm was much less than 10 years -- 49 to 53 months. (<u>Blakely v. Washington</u>,

<u>supra</u>, 124 S.Ct. at p. 2535.) Washington law provided that a court could impose a

sentence greater than the "standard range" (but still within the 10-year cap) only if it

found "substantial and compelling reasons justifying an exceptional sentence." (Wash.

Rev. Code section 9.94A.120(2); <u>Blakely v. Washington</u>, <u>supra</u>, 124 S.Ct. at p. 2535.)

The statute provided a list of "aggravating factors" which could justify such a "departure"

from the "standard range" and described the listed factors as "illustrative rather than

exhaustive." (<u>Blakely v. Washington</u>, <u>supra</u>, 124 S.Ct. at p. 2535.) The trial court

imposed an "exceptional sentence" of 90 months -- 37 months above the standard range

but well within the statutory range of 10 years -- based upon the judge's finding that

Blakely acted with "deliberate cruelty," one of the enumerated aggravating factors. (<u>Id</u>.)


On appeal, defendant argued that this procedure violated his Sixth Amendment

right to a jury trial. The Supreme Court agreed, holding that adding more than 37 months

to the presumed sentenced based on facts found true by the judge alone violated the Sixth

Amendment requirement that defendants receive a jury determination of any fact

exposing a defendant to greater punishment than the maximum otherwise allowable for

the underlying offense. (<u>Blakely v. Washington</u>, <u>supra</u>, 124 S.Ct. at p. 2536.)  The Court

rejected the state's assertion that the relevant "maximum" was the 10-year cap for a "class

B felony." Instead, the majority treated the top end of the "standard range" (53 months)

as the relevant "statutory maximum," because that was the greatest sentence Blakely

could receive based solely on the facts admitted by his plea:

> "Our precedents make clear, however, that the "statutory maximum" for
> *Apprendi* purposes is the maximum sentence a judge may impose *solely on*
> *the basis of the facts reflected in the jury verdict or admitted by the*
> *defendant.* [Citations.] In other words, the relevant "statutory maximum" is
> not the maximum sentence a judge may impose after finding additional
> facts, but the maximum he may impose *without* any additional findings.
> When a judge inflicts punishment that the jury's verdict alone does not
> allow, the jury has not found all the facts 'which the law makes essential to
> the punishment,'[citation], and the judge exceeds his proper authority."
> <u>Blakely v. Washington</u>, <u>supra</u>, 124 S.Ct. at p. 2537, citations omitted,
> emphasis in original.)

The Court noted that "had the judge imposed the 90-month sentence solely on the basis of

the plea, he would have been reversed." (<u>Blakely v. Washington</u>, <u>supra</u>, 124 S.Ct. at p.

2537.)

The scheme construed in <u>Blakely</u> is in all material respects identical to the scheme

involved in this case.  In California, the presumptive sentence is a concurrent term.  As

discussed above, statutes and rules unequivocally provide that, **unless there is an**

26

**additional factual finding, a court cannot impose a consecutive term.** (Pen. Code §§ 669; 1170, subd. (c); Cal. Rules of Court, rule 4.425(a) & (b).)

Moreover, like the Washington statutes construed in <u>Blakely</u>, the California rules provide a list of enumerated aggravating circumstances (rule 4.421), but the list is "not exclusive" and a court may rely upon an non-enumerated circumstance "reasonably related" to the sentencing decision. (<u>Compare</u> Rule 4.408, subdivision (a) ["the enumeration of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made."] <u>with</u> Blakely v. Washington, <u>supra</u>, 124 S.Ct. at p. 2535 [listed aggravating factors "illustrative rather than exhaustive"].) As with the Washington scheme, the court must make explicit factual findings. (<u>Compare</u> Penal Code section 1170, subdivision (c) and Rule 4.420, subdivision (e) ["a concise statement of the ultimate facts deemed to constitute circumstances in aggravation"] <u>with</u> Blakely v. Washington, <u>supra</u>, 124 S.Ct. at p. 2535 [Washington judge "must set forth findings of facts and conclusions of law supporting" an "exceptional sentence"].) Like the sentence imposed in <u>Blakely</u>, if the trial court here had imposed a four-year upper term based solely on the jury's manslaughter verdict, "he would have been reversed." Blakely v. Washington, <u>supra</u>, 124 S.Ct. at p. 2537.)

27

In other words, the California scheme is just like the Washington scheme construed in <u>Blakely</u>. The trial court here imposed consecutive terms on burglaries and attempted burglary because it found "the crimes and their objectives were predominantly independent of each other and were committed at different times and in separate places." (RT 613-614.) Based on these factual findings which the jury did not reach and which the state had only to prove by a preponderance of the evidence, the court departed from the presumptive concurrent term, imposing consecutive terms on these three counts. <u>Blakely</u> establishes that this violated the Sixth Amendment.[5]

B.      Because The Factors Relied Upon By The Trial Court To Impose
         Consecutive Sentences Were Invalid, The Sentence Must Be Vacated.

Mr. Khuu recognizes that sentencing errors can be harmless. Here, the trial court's decision to depart from the presumptive concurrent term based on factual findings it alone had reached by a preponderance of the evidence plainly violated the Sixth Amendment. In such a situation, the burden falls upon the state to prove that the error was harmless

_____

[5]      The California Supreme Court recently rejected Mr. Khuu's claim, holding that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (<u>People v. Black</u> (2005) 35 Cal.4th 1238, 1244.) Mr. Khuu is nevertheless raising the issue here to preserve his rights to further review. (See <u>Smith v. Murray</u> (1986) 477 U.S. 527 [holding that even issues settled under state law must be re-raised to preserve the issue for federal habeas corpus review].)

four of eight factors were improper]; <u>People v. Smith</u> (1980) 101 Cal.App.3d 964, 968

[remand required where one of four factors was improper]; <u>People v. Garfield</u> (1979) 92

Cal.App.3d 475, 479 [remand required where one of six factors was improper].)

CERTIFICATE OF COMPLIANCE

I certify that the accompanying brief was produced on a computer. The word count of the computer program used to prepare the document shows that there are 6,179 words in the brief.

Dated: _8|29|05_

_Catherine White_
Catherine White

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, declare as follows:

I am a citizen of the United States, over the age of 18 years and not a party to the within action; my business address is 19 Embarcadero Cove, Oakland, California 94606.

On August 29, 2005, I served the attached

APPELANT'S OPENING BRIEF

by placing a true copy thereof in an envelope addressed to the person(s) named below at the address(es) shown, and by sealing and depositing said envelope in the United States Mail at San Francisco, California, with postage thereon fully prepaid.  There is delivery service by United States Mail at each of the places so addressed, or there is regular communication by mail between the place of mailing and each of the places so addressed.

Attorney General
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664

First District Appellate Project
730 Harrison Street, Suite 201
San Francisco, California 94107

Mr. Hoa Khuu
V58390
California State Prison
P.O. Box 4000
Vacaville, California 95696

District Attorney
400 County Center, 3rd Floor
Redwood City, CA 94063

San Mateo County Superior Court
400 County Center
Redwood City, CA 94063

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 29, 2005, at San Francisco, California.

<u>DECLARANT</u>

# EXHIBIT 3

ATTORNEY GENERAL--OFFICE COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

---

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

v.

**HOA TRUNG KHUU,**

Defendant and Appellee.

---

A108442

**FILED**

DEC 0 6 2005

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____

San Mateo County Superior Court No. SC056446
The Honorable John G. Schwartz, Judge

## RESPONDENT'S BRIEF

BILL LOCKYER
Attorney General of the State of California

ROBERT R. ANDERSON
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

STAN HELFMAN
Supervising Deputy Attorney General

CHRISTOPHER J. WEI
Deputy Attorney General
State Bar No. 78958

455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5867
Fax: (415) 703-1234

**Attorneys for Respondent**

8/29/7005 AOR F

**DOCKETED**
**SAN FRANCISCO**

DEC 7 - 2005

By L. MACARAEG
No. 980050A 0077

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE                                    1

STATEMENT OF FACTS                                       1

ARGUMENTS                                                7

    I.    **THE TRIAL COURT PROPERLY DENIED
RETAINED COUNSEL'S REQUEST TO
WITHDRAW AS COUNSEL AND TO
APPOINT THE PUBLIC DEFENDER**          7

    II.   **THE TRIAL COURT PROPERLY
SENTENCED APPELLANT**                      12

CONCLUSION                                               13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Auto Equity Sales, Inc. v. Superior Court*
(1962) 57 Cal.2d 450                                           12

*Blakely v. Washington*
(2004) 542 U.S. 296                                           12

*In re Jackson*
(1985) 170 Cal.App.3d 773                                      8

*Linn v. Superior Court*
(1926) 79 Cal.App. 721                                         9

*People v. Black*
(2005) 35 Cal.4th 1238                                        12

*People v. Blake*
(1980) 105 Cal.App.3d 619                                  10, 11

*People v. Cohen*
(1976) 59 Cal.App.3d 241                                       8

*People v. Collins*
(1966) 242 Cal.App.2d 626                                      9

*People v. Condley*
(1977) 69 Cal.App.3d 999                                      11

*People v. Courts*
(1985) 37 Cal.3d 784                                       10, 11

*People v. Doebke*
(1969) 1 Cal.App.3d 931                                       11

*People v. Johnson*
(1970) 5 Cal.App.3d 851                                       11

# TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *People v. Lara*<br>(2001) 86 Cal.App.4th 139 | 10 |
| *People v. Lau*<br>(1986) 177 Cal.App.3d 473 | 11 |
| *People v. Marsden*<br>(1970) 2 Cal.3d 118 | 10 |
| *People v. McCracken*<br>(1952) 39 Cal.2d 336 | 9 |
| *People v. Mullane*<br>(1960) 182 Cal.App.2d 765 | 8, 9 |
| *People v. Murphy*<br>(1973) 35 Cal.App.3d 905 | 9, 11 |
| *People v. Ortiz*<br>(1990) 51 Cal.3d 975 | 8, 10, 11 |
| *People v. Preyer*<br>(1985) 164 Cal.App.3d 568 | 11 |
| *People v. Prince*<br>(1968) 268 Cal.App.2d 398 | 8, 9 |
| *People v. Rhines*<br>(1982) 131 Cal.App.3d 498 | 11 |
| *People v. Scott*<br>(1960) 186 Cal.App.2d 661 | 9 |
| *People v. Turner*<br>(1992) 7 Cal.App.4th 913 | 11 |
| *Smith v. Smith*<br>(1969) 1 Cal.App.3d 952 | 11 |

**TABLE OF AUTHORITIES** (continued)

**Page**

**Statutes**

Penal Code

|  |  |
|---|---|
| § 460(a) | 1 |
| § 496(a) | 1 |
| §§ 664/460(a) | 1 |
| § 667, subd. (a)(1) | 1 |
| § 1170.12, subd. (c)(1) | 1 |

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,** | |
| Plaintiff and Respondent, | A108442 |
| v. | |
| **HOA TRUNG KHUU,** | |
| Defendant and Appellee. | |

## STATEMENT OF THE CASE

An information filed June 9, 2004, in the San Mateo County Superior Court charged appellant Hoa Kung Khuu with two counts of first degree burglary (Pen. Code, § 460(a)[1] – Counts 1 & 3), one count of attempted first degree burglary (§§ 664/460(a) – Count 2), two counts of receiving stolen property (§ 496(a) – Counts 4 & 5), a prior strike, and a prior serious felony. (Pen. Code, §§ 1170.12, subd. (c)(1), 667, subd. (a)(1).) (CT 5-8.) Following a jury trial, appellant was convicted of all charges. (CT 323-330.)

On November 18, 2004, the court found the prior felony allegations true and sentenced appellant to a total term of 17 years in state prison. (CT 363-364, 367-368.) Appellant filed his notice of appeal on November 19, 2004. (CT 380.)

## STATEMENT OF FACTS

Tommy Hui is a software engineer living at 57 Williams Lane in Foster City. (RT 69.) On March 10, 2004, Mr. Hui decided to work at home.

---

1. Unless otherwise specified, all further statutory references are to the Penal Code.

(RT 69-70.) Around noon that day, Hui was in his entertainment room when he heard someone walk by his house. (RT 71.) Hui took a peek outside to see if he could recognize whomever was going by. (RT 72-73.) He saw a black Range Rover parked outside his driveway in front of his house. (RT 74.) The Range Rover was parked at least seven feet away from the curb. (RT 74.) Hui did not recognize the driver of the car nor did he recognize the Range Rover. (RT 74.) He then heard the doorbell ring about three or four times. (RT 71.) Although the person ringing the doorbell was very persistent, Hui did not feel like answering the door. (RT 71.) Hui heard the person walking away. (RT 75.)

Hui went upstairs to work on his computer. (RT 75.) After about three minutes, he heard noises from the side of his house. (RT 75.) Hui walked down the stairs to investigate and he saw someone outside trying to pry open the screen door with some sort of instrument. (RT 76-77.) Another individual stood behind him. (RT 78.) Hui yelled at the men, whom he had never seen before. (RT 78.) Both men were dark-skinned. One was wearing a dark, heavy coat with blue jeans, while the other was wearing a beanie on his head. (RT 80.) The men ran out to the street through the gate. (RT 81.) Hui ran outside but the men had gone and so had the black Range Rover. (RT 82.) He called the police. (RT 84.)

The police came by and, about an hour and a half later, took Hui to the police station to see if he could identify a suspect. (RT 85-86.) Hui said that he could not see the burglar closely enough to make an identification although his appearance was consistent with the appearance of the suspect at the station. (RT 86.) After leaving the police station, Hui was taken to an area near the Edgewater Plaza where he was shown another suspect. (RT 87.) This person also appeared to be consistent with the burglar and his clothing matched the description of the person trying to enter his house. (RT 87.)

2

Officer William Sandri of the Foster City Police Department was on patrol on March 10, 2004, when he received a dispatch regarding an attempted burglary at the Hui home on 57 Williams Lane. (RT 106.) He received descriptions of the suspects and the Range Rover. (RT 107-108.) Officer Sandri was about four to five minutes away from the scene and he headed in that direction when he noticed a black Range Rover at the stop sign on Edgewater and Port Royal roads. (RT 108.) There were two men inside the car. (RT 114.) Sandri pulled up behind the Range Rover and followed it to initiate a traffic stop. (RT 109.)

Officer Sandri followed the Range Rover to the Edgewater Shopping Center. (RT 111-112.) He activated his red and blue overhead lights. (RT 114.) The Range Rover accelerated rapidly down the parking lot into an alleyway that ended in the lagoon without any way out. (RT 114.) The two men got out of the car and fled southbound along the boardwalk next to the lagoon. (RT 114-115.) Sandri got out of his car and gave chase. He also contacted other police officers for assistance. (RT 115.) Sandri lost sight of the men but bystanders would point out where the men had gone and Sandri continued to run down the boardwalk. (RT 139.) Sandri next saw the men again when the officer exited the south entrance of the Edgewater Plaza. (RT 117, 139.) They were bent over, breathing heavily. (RT 130.) Officer Sandri identified himself as a police officer and ordered the men to get on the ground. (RT 130.) Instead, the men hopped the fence into the backyard of 1001 Monterey Street. (RT 131.) Sandri, now joined by Officer Mark Lee, went into the backyard of 1001 Monterey to find the two suspects. (RT 131.) Other police units arrived to assist in the chase. (RT 140.)

While fleeing from the police, a cell phone fell out of one of the suspect's pocket. (RT 236, 244.) The telephone belonged to appellant's mother. (RT 461.)

Officer Lee spotted one of the suspects running from 1011 Monterey, along the edge of the lagoon. (RT 166.) It was appellant. (RT 173.) He was jumping over the fences and boats along the side of the lagoon. (RT 166.) Officer Lee ordered appellant to stop and gave chase. (RT 167.) He was gaining on appellant when he lost sight of appellant around 1029 Monterey. (RT 167-168.) Officer Lee noticed a parked and covered boat floating on the water next to the property. (RT 168.) Lee approached the boat and shook it. He heard footsteps inside the boat as if someone inside was trying to keep their balance. (RT 168.) Lee ordered the person inside to come up with his hands up. (RT 168.) Bystanders then began to point to the lagoon, where the officer saw appellant next to the boat trying to hide from him. (RT 169.) Although Lee again ordered appellant to come out of the water with his hands up, appellant refused and began swimming away from the officer. (RT 169.) Lee told appellant to stand up because the water was shallow. (RT 169.) Appellant stood up and said to Lee, "Go ahead and fucking shoot me. Go ahead and fucking shoot me." (RT 169.) After the officer repeatedly yelled at appellant to come to shore, appellant eventually got out of the water, went over a fence and laid down on the grass. (RT 170.) As Officer Lee approached, however, appellant got up, climbed over the fence and fled. (RT 171.)

Officer Kammuller and his canine partner participated in the search for appellant and his cohort. As they searched around the houses, Kammuller entered 1022 Monterey. (RT 297-298.) He lifted up the top to a garbage can and found appellant hiding inside. (RT 172, 212, 298.) He was covered in water and was cold. (RT 174.) Appellant was arrested. (RT 173.)

Officer Egan participated in the search for the two suspects. He was going yard by yard looking for the suspects. (RT 210.) He found Ryan Bui hiding underneath bushes inside a yard. (RT 211.) Bui fled but was caught by several other officers. (RT 211, 440-445.)

4

Officer Sandri next saw the two suspects after they had been taken into custody. (RT 132.) He identified appellant as one of the men who was in the Range Rover and identified the other suspect as Ryan Bui. (RT 132.)

Sharon and Yao Chi lived at 1295 Beach Park Boulevard in Foster City. (RT 247-248.) On March 9, 2004, Mrs. Chi took a 12-day trip to Taiwan. (RT 248.) Before leaving, Mrs. Chi took $1,600 in cash out of a steel file cabinet, leaving $5,000 in cash in the cabinet. (RT 249-250.) Mrs. Chi also had a collection of $2.00 bills in a drawer next to her bed as well as jewelry in a lamp stand by the bed. (RT 252-253.) There was also a $9,000 Rolex watch in another bedroom. (RT 253-254.) Mr. Chi left work the next morning after his wife left for Taiwan. (RT 269.) He closed and locked all the windows and doors except the door between the garage and the house. (RT 269-270.) Mr. Chi did not notice anything missing when he returned home later that evening. (RT 270.) However, when he went to open the cabinet a day later, Mr. Chi noticed that the cabinet had been forced open and that all the money inside was missing. (RT 271-272.) There were pry marks and scratches on the cabinet. (RT 285.) The screen to the bathroom window had also been pried open. (RT 286.) Mr. Chi also realized sometime afterwards that his Rolex watch was missing. (RT 273.) When she returned from Taiwan, Mrs. Chi discovered that her jewelry was also missing. (RT 254-255.) Mrs. Chi recognized her jewelry from a photograph of jewelry taken by the police. (RT 255.)

George and Pamela Hung lived on 361 Beach Park Boulevard in Foster City. (RT 300.) On March 10, 2004, Mr. Hung left for work around 8:00 a.m. and made sure that all doors and windows were closed and locked. (RT 301.) Property inside his house included a laptop computer, Mrs. Hung's jewelry, between $1,000 to $2,000 in cash, Taiwanese currency, a $100 gift certificate to Stanford Shopping Center, and a Rolex watch. (RT 302-304, 326.) Mr. Hung kept his business card in his laptop computer briefcase. (RT

5

310.) Mr. Hung returned home later that day after receiving a telephone call from the police. (RT 305.) When arrived home, Mr. Hung discovered that his laptop computer, digital camera, cash and jewelry were missing. (RT 305-307.) The burglary had apparently entered the garage through a side door and then broke into the house from the garage. (RT 308, 310.)

A search of the Range Rover abandoned by appellant at the shopping center uncovered a 17-inch long screwdriver under the floor mat of the front passenger seat. (RT 183-184.) A large amount of money (15 twenty dollar bills, and ten one dollar bills), a cell phone, and a set of keys were taken from the console area. (RT 184, 191.) In the rear of the car was a black computer case and a laptop computer. (RT 185, 348.) A Louis Vuitton wallet was seized from a box in the back seat. (RT 189-190.) The wallet appeared to be brand new. (RT 190.) A white paper bag in the car contained cash, jewelry, watches, and a gift certificate to the Stanford Shopping Center. (RT 344-346.) There was about $4,979 found in the rear of the Range Rover. (RT 350.) Mr. Hung's business card was found in the Range Rover. (RT 381.) Both the Chis and the Hungs identified property found in the Range Rover as property that had been taken from their residences.

**ARGUMENT**

**I.**

**THE TRIAL COURT PROPERLY DENIED RETAINED COUNSEL'S REQUEST TO WITHDRAW AS COUNSEL AND TO APPOINT THE PUBLIC DEFENDER**

Following trial and prior to sentencing, Mr. Frank Bell, who had been retained by appellant as counsel, moved to withdraw as retained counsel. (CT 339.) In his motion, Mr. Bell stated that appellant and his family had paid the initial $15,000 deposit but have not paid any of the other bills. (CT 340.) According to Mr. Bell, appellant has indicated to him that he did not intend to pay the money owed because of the quality of the representation he received from Mr. Bell. (RT 340.) Counsel also stated, "In fact, it is counsel's opinion that the attorney-client relationship is irremediably damaged and that it has been severed and broken down beyond repair." (CT 341.) Counsel requested the court to permit him to withdraw as counsel and for the court to appoint the Private Defender to represent appellant at sentencing. (CT 341.)

On October 29, 2004, the court denied counsel's motion to withdraw with the following comment:

> Okay. I've considered it carefully, and I really do not want to experience the delay, in view of what's left to do, that would be attendant upon relieving Mr. Bell. I hate to see lawyers without pay; and having been in practice myself, I understand why that's not a pleasant thing to do, but given the alternatives, and given the fact that the only thing left to do is appearance at the sentencing, a court trial on the Federal crime, which I think will mainly be a paper exercise and perhaps some research by myself with regard to whether it would constitute a strike under California statutes.

(RT 601.)

Counsel for appellant informed the court that he did not intend to file any further pleadings relating to the court trial on the prior federal offense and

that the district attorney had carefully discussed all of the authorities and there was no need for him to do anything further on that issue. (RT 601.) The court then indicated that the only matters that need to be done in the case are the sentencing hearing and the *Romero* motion, both of which could be done orally. Under these circumstances, the trial court decided to deny counsel's motion to withdraw.

Appellant claims that the court's denial of counsel's motion to withdraw violated his constitutional rights to due process and the assistance of counsel. There is no merit to appellant's claim.

While a defendant who seeks in a timely manner to discharge retained counsel is ordinarily permitted to do so (*People v. Ortiz* (1990) 51 Cal.3d 975, 981), in this case appellant did not make a request to discharge his retained counsel. This was a motion made by counsel to withdraw from the case because appellant had not paid his attorney's fees. Appellant never indicated any desire to discharge Mr. Bell. He did not file any motion to discharge counsel. He never made any comments in court indicating dissatisfaction with counsel. This was simply a motion made unilaterally by counsel, and apparently without consultation with appellant, to withdraw as counsel for failure to pay fees. Indeed, counsel carefully noted that "it is *counsel's opinion*" that the attorney-client relationship had been irremediably damaged. (CT 341.) A "[d]efendant's acquiescence in his attorney's request for leave to withdraw does not constitute a request on his part for a substitution of attorneys." (*People v. Mullane* (1960) 182 Cal.App.2d 765, 770; *In re Jackson* (1985) 170 Cal.App.3d 773, 780.)

The granting or denying of an application of an attorney to withdraw lies within the discretion of the trial court. (*People v. Cohen* (1976) 59 Cal.App.3d 241, 249; *People v. Prince* (1968) 268 Cal.App.2d 398, 406.)

Having undertaken the defense of a criminal case, an attorney must continue with his services until he is released by the client or by

8

the court. He may apply to the court for release from further services and for good cause shown may be released, but he may not abandon his representation at will, nor for considerations personal to himself. [Citations.] The question of granting or denying an application of an attorney to withdraw as counsel (Code Civ. Proc. § 284, subd. 2) is one which lies within the sound discretion of the trial court "having in mind whether such withdrawal might work an injustice in the handling of the case."

(*People v. McCracken* (1952) 39 Cal.2d 336, 350; see also, *People v. Collins* (1966) 242 Cal.App.2d 626, 636-637; *People v. Scott* (1960) 186 Cal.App.2d 661, 666-667; *People v. Mullane, supra,* 182 Cal.App.2d at pp. 769-770; *Linn v. Superior Court* (1926) 79 Cal.App. 721, 725-726.)

The trial court in the instant case properly exercised its discretion and concluded that the motion was untimely and that the trial had already concluded and counsel only needed to represent appellant at sentencing. Counsel had ably represented appellant throughout these proceedings and through trial. He was most familiar with appellant and with the facts of the case. Counsel also did not need to file any more written motions and only had to make a short oral argument at the sentencing hearing. The trial court therefore cannot be accused of abuse of discretion. This is far different from a situation where a motion to withdraw counsel is timely made before the case is set for trial and where there is no showing that withdrawal would prejudice the defendant, the prosecution or the smooth course of the administration of justice. (*People v. Murphy* (1973) 35 Cal.App.3d 905, 921; see also *People v. Prince, supra,* 268 Cal.App.2d at p. 406.)

Moreover, appellant does not have standing to question the court's ruling. Appellant did not make the motion for withdrawal of counsel. He does not complain about the adequacy of counsel's representation, and indeed appellant was accorded superior representation. Only counsel was harmed, if at all, by the court's ruling and he is obviously not a party to the appeal. (*People v. Murphy, supra,* 35 Cal.App.3d at p. 921.) This Court should not

9

consider appellant's claim.

Even if we assume that appellant somehow had joined in counsel's motion for withdrawal, the trial court still properly denied the motion.

The right to discharge retained counsel is not absolute and the court may exercise discretion to ensure orderly and expeditious judicial administration if the defendant is "unjustifiably dilatory or . . . arbitrarily desires to substitute counsel at the time of trial." (*People v. Lara* (2001) 86 Cal.App.4th 139, 153, citing *People v. Blake* (1980) 105 Cal.App.3d 619, 623-624.) In *People v. Ortiz, supra*, 51 Cal.3d 975, the court held a nonindigent defendant was not required to satisfy the requirements of *Marsden*[2] if he wished to discharge his retained counsel of choice. *Ortiz* held the defendant's right to discharge retained counsel was not absolute, and the trial court retained discretion to deny such a motion if the discharge (1) would cause "significant prejudice" to the defendant, e.g., by forcing him to trial without adequate representation, or (2) was untimely and would result in a "disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People v. Ortiz, supra*, 51 Cal.3d at p. 982.) Granting a continuance for the purpose of retaining private counsel is within the sound discretion of the trial court. No mechanical test is employed; each case is decided on its own facts. The burden is on the defendant to show that the trial court abused its discretion. (*People v. Blake, supra*, 105 Cal.App.3d at p. 624.)

Here, the trial court reasonably concluded that the motion for withdrawal was untimely. The motion was made not before trial, but after the trial had already concluded and the only remaining thing left to do was the sentencing. (See, *People v. Courts* (1985) 37 Cal.3d 784, 792, fn. 4.) Counsel was already very familiar not only with the facts of the case but with appellant as well. A new attorney would have to familiarize himself with the case. A

_____

2. *People v. Marsden* (1970) 2 Cal.3d 118.

10

substitution at this stage would obviously require a continuance of the sentencing hearing. The request to discharge retained counsel was clearly untimely. Unlike in *Ortiz* where the defendant filed his motion to discharge retained counsel months before trial or *Courts* where the defendant made efforts to retain counsel nearly two months before trial, here the motion was made following trial and just before sentencing. Moreover, defendant had not hired substitute counsel, and the orderly and expeditious administration of justice support the trial court's exercise of discretion. (Cf. *People v. Turner* (1992) 7 Cal.App.4th 913, 919 [motion properly denied on first day of trial]; *People v. Lau* (1986) 177 Cal.App.3d 473, 479 [same]; *People v. Rhines* (1982) 131 Cal.App.3d 498 [second day of trial]; *People v. Blake, supra,* 105 Cal.App.3d 619 [same]; *People v. Murphy, supra,* 35 Cal.App.3d at pp. 915-916 [before and on day of trial]; *People v. Johnson* (1970) 5 Cal.App.3d 851, 858-859 [same]; *People v. Doebke* (1969) 1 Cal.App.3d 931, 939 [three days before trial].)

> A decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.] In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review.

(*People v. Preyer* (1985) 164 Cal.App.3d 568, 573-574.) This rule requires that the reviewing court engage in all intendments and presumptions in support of the decision and consider the evidence in a light most favorable to the prevailing party. (*People v. Condley* (1977) 69 Cal.App.3d 999, 1015.) It also requires the party claiming abuse of discretion to affirmatively establish that point. (*Smith v. Smith* (1969) 1 Cal.App.3d 952, 958.) Appellant fails to establish any abuse of discretion by the trial court in refusing to permit counsel to withdraw from the case.

11

## II.

## THE TRIAL COURT PROPERLY SENTENCED APPELLANT

Relying on *Blakely v. Washington* (2004) 542 U.S. 296, appellant contends that the trial court improperly sentenced appellant to consecutive terms based on facts not found true by the jury. According to appellant, unless there is an additional factual finding by the jury, a court cannot impose a consecutive term. (AOB 26-27.)

Appellant concedes that the California Supreme Court has rejected this identical claim in *People v. Black* (2005) 35 Cal.4th 1238, 1244. The trial court's exercise of discretion to impose an upper term or consecutive term under California law does not implicate a defendant's Sixth Amendment right to a jury trial. (*Ibid.*) The Supreme Court's holding in *Black* is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Appellant's claim must therefore be summarily rejected.

## CONCLUSION

Accordingly, respondent respectfully requests that the judgment be affirmed.

Dated: November 21, 2005

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

ROBERT R. ANDERSON
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

STAN HELFMAN
Supervising Deputy Attorney General

CHRISTOPHER J. WEI
Deputy Attorney General

Attorneys for Respondent

SF2005DA0077
40071067.wpd

13

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **People v. Hoa Trung Khuu**                              No.: **A108442**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>December 6, 2005,</u> I served the attached

**RESPONDENT'S BRIEF**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, California 94102-7004, addressed as follows:

Catherine White                                        First District Appellate Project
19 Embarcadero Cove                               Attn: Executive Director
Oakland, CA 94606                                   730 Harrison Street, Suite 201
(two copies)                                             San Francisco, CA 94107

Honorable James P. Fox                            San Mateo County Superior Court
District Attorney                                       Attn: Peggy Thompson, Court Executive
County of San Mateo                                Officer
400 County Center, 4th Floor                     400 County Center, 4th Floor
Redwood City, CA 94063                          Redwood City, CA 94063-1655

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 6, 2005, at San Francisco, California.

_____                    _____
            B. WONG                                          _B. Wong_
          Declarant                                            Signature

# EXHIBIT 4

COPY

Filed 03/30/06

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

DOCKETED
SAN FRANCISCO
MAR 3 0 2006
By L. CARAMANZANA
No. SF 2005DA0077

FILED
MAR 3 0 2006
Court of Appeal - First App. Dist.
DIANA HERBERT
By_____

| | |
|---|---|
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | A108442 |
| **v.** | |
| **HOA TRUNG KHUU,** | **(San Mateo County** |
| **Defendant and Appellant.** | **Super. Ct. No. SC056446)** |

Defendant Hoa Trung Khuu appeals his conviction by jury trial for two counts of first degree burglary (Pen. Code, § 460, subd. (a))[1] (counts 1 & 3), one count of attempted first degree burglary (§§ 664, 460, subd. (a)) (count 2) and two counts of receiving stolen property (§ 496, subd. (a)) (counts 4 & 5). The court found true allegations of a prior strike and a prior serious felony. (§§ 1170.12, subd. (c)(1), 667, subd. (a).) Defendant contends that the trial court denied his request to discharge his retained attorney, thus violating his state and federal constitutional rights to due process and assistance of counsel.[2] We disagree and affirm.

---

[1]  All undesignated section references are to the Penal Code.

[2]  To preserve his rights to further review, defendant relies on *Blakely v. Washington* (2004) 542 U.S. 296 to argue that the trial court violated his Sixth Amendment right to a jury trial by imposing consecutive terms based on factual findings resolved by the trial court and not by a jury. Defendant recognizes that the California Supreme Court's

1

## FACTUAL BACKGROUND

### *Attempted Burglary of Tommy Hui*

On March 10, 2004, Tommy Hui worked from his Foster City home. At around noon, he heard footsteps, peeked out his front door and saw a black Range Rover parked in front of his house. He then heard his doorbell ring repeatedly and the footsteps of a person walking away from his front door. After going upstairs, he heard the sound of metal scraping near the side of his house. When he went downstairs to investigate, he saw two men outside his home, one of whom was using an instrument to pry open the door. When Hui yelled, the two men ran away. Hui then called the police.

Police Officer William Sandri received a dispatch with descriptions of the suspects and the Range Rover. While on his way to the Hui home, Sandri noticed a black Range Rover and initiated a traffic stop. The Range Rover came to a stop and the two males inside then fled on foot. Sandri caught up with the suspects and saw them bending over, breathing heavily. When he ordered them to the ground, the suspects hopped a nearby fence. Sandri was joined in pursuit by Officer Mark Lee. While fleeing, a cell phone belonging to defendant's mother fell out of one of the suspect's pockets.

Lee suspected that the men went to a nearby lagoon. As he approached, he saw a man, later identified as defendant, hiding behind a boat. Defendant then tried to swim across the lagoon. When Lee ordered him to give up, defendant told the officer to shoot him. Defendant eventually emerged from the water, went over a fence and lay down on the grass. As Lee approached, defendant got up, climbed over the fence and again fled.

San Mateo County Deputy Sheriff Kenneth Kammuller participated in the search and eventually found defendant hiding inside a garbage can. Defendant was taken into custody, as was the second suspect, Ryan Bui, who was found hiding underneath bushes inside a nearby yard.

---

rejection of this claim in *People v. Black* (2005) 35 Cal.4th 1238, 1244 is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We reject defendant's contention on this basis.

2

*Burglary of the Chi and Hung Residences*

Inside the Range Rover, officers found various items and currency belonging to the Chi and Hung families. On March 9, 2004, Sharon Chi went on a trip, leaving behind over $3,000 in a cabinet, a collection of $2 bills, jewelry and a Rolex watch. The next day, her husband Yao Chi left for work. He did not notice anything missing when he returned home later that evening. However, a day later, when he went to the cabinet, he noticed it was slightly open and had pry marks and scratches and that all the money inside was missing. The screen to the bathroom window had been pried open. He realized sometime afterward that his Rolex watch was missing. When she returned from her trip, Mrs. Chi discovered that her jewelry was also missing. She later recognized her jewelry in a police photograph.

Other items inside the Range Rover belonged to the Hung family. On the morning of March 10, 2004, George Hung left for work and made sure that all doors and windows were closed and locked. Later that day, he received a phone call from police stating that they had found his name on property inside the Range Rover. When he arrived home, he saw that the garage door knob was broken and that a laptop computer, camera, money and jewelry were missing. His wife, Pamela, noticed that the curtain in the living room was closed when she had left it open that morning. The Hungs later identified property found inside the Range Rover as property stolen from their residence.

On September 8, 2004, a jury found defendant guilty on all counts. On November 18, 2004, the court sentenced defendant to 17 years in state prison.[3] Defendant filed a timely notice of appeal.

---

[3]   The court sentenced defendant to the midterm of four years as to count 1; one-third the midterm for a consecutive term of eight months as to count 2; and one-third the midterm for a consecutive term of one year four months, as to count 3. The base terms for sentence imposed as to counts 1, 2 and 3 was doubled pursuant to section 1170.12, subdivision (c)(1). The court added a five-year term for a prior serious felony allegation and stayed sentence on all remaining counts.

DISCUSSION

On October 21, 2004, following trial, but prior to sentencing, defense attorney Frank Bell moved to withdraw as defendant's retained counsel. In his motion, Bell stated that defendant and his family had paid him an initial $15,000 deposit but had not paid any other bills. According to Bell, defendant indicated that he did not intend to pay the money owed because "among other [complaints defendant] had about the representation . . . , [defendant believed counsel] 'did nothing for [him] in court.' " Bell stated defendant "did not intend to cooperate with counsel" and in "counsel's opinion . . . the attorney-client relationship [was] irredeemably damaged and . . . [had] been severed and broken down beyond repair." Bell requested permission to withdraw and for the appointment of the private defender to represent defendant at sentencing.

On October 29, 2004, the court denied Bell's motion, stating as follows: "I've considered it carefully, and I really do not want to experience the delay, in view of what's left to do, that would be attendant upon relieving . . . Bell. I hate to see lawyers without pay; . . . but given the alternatives, and given the fact that the only thing left to do is appearance at the sentencing, a court trial on the [prior federal conviction], which I think will be mainly a paper exercise and perhaps some research by myself with regard to whether it would constitute a strike under the California statutes."

Bell informed the court that he did not intend to file any further pleadings relating to the court trial on the prior federal offense because the district attorney had carefully discussed all of the authorities and there was no need for him to do anything further on that issue. The court then indicated that the only remaining matters were the sentencing hearing and a *Romero* motion,[4] both of which could be done orally. Under these circumstances, the court denied Bell's motion to withdraw.

---

4    Under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, the sentencing court has discretion to strike prior conviction allegations although the case was charged under the "Three Strike" statute. (Pen. Code, § 667, subds. (b)-(i).)

Defendant argues the court's denial of counsel's motion violated his constitutional rights to due process and the assistance of counsel. We disagree.

The rights to effective assistance of counsel and due process (U.S. Const., 6th & 14th Amends.) encompass a criminal defendant's right to retain counsel of his or her choice and the right to discharge his or her retained attorney, with or without cause, so long as the discharge will not result in significant prejudice to the defendant and will not disrupt the orderly processes of justice. (*People v. Gzikowski* (1982) 32 Cal.3d 580, 586-587; *People v. Ortiz* (1990) 51 Cal.3d 975, 982-983; *People v. Turner* (1992) 7 Cal.App.4th 913, 917.) A defendant who becomes indigent, as was the case here, and wishes to discharge his retained counsel has the same right to do so as a nonindigent defendant. "[A] court must not consider whether a defendant is indigent and will require appointment of counsel in ruling on his timely motion to discharge retained counsel." (*Ortiz*, at p. 987.)

However, counsel's motion to withdraw does not trigger such constitutional protections. Defendant's rights to due process and assistance of counsel are invoked by *his* motion to discharge. (*People v. Ortiz, supra*, 51 Cal.3d at p. 983 ["the right to counsel of choice reflects not only a defendant's choice of a particular attorney, but also *his* decision to discharge an attorney whom he hired but no longer wishes to retain" (italics added)]; *People v. Mullane* (1960) 182 Cal.App.2d 765, 770.) Here, defendant did not make such a request. He neither filed a motion to discharge nor orally indicated his dissatisfaction with counsel to the court. Defendant argues that Bell discussed his intention to seek withdrawal with defendant and defendant conveyed his complaints about counsel through Bell's written motion. Bell's motion indicated that defendant expressed no objection to his request to withdraw and did not want to pay him because counsel had done "nothing for [defendant] in court." On this record it would be utter speculation to conclude that defendant's failure to object to his attorney's withdrawal and his complaints to his attorney constituted an affirmative request to discharge counsel.

"[A]cquiescence in his attorney's request for leave to withdraw does not constitute a request on [defendant's] part for a substitution of attorneys." (*People v. Mullane,*

*supra*, 182 Cal.App.2d at p. 770.)  In the absence of defendant's request to discharge, the trial court had no reason to weigh defendant's constitutional rights to due process and assistance of counsel against competing interests.

DISPOSITION

The judgment is affirmed.

6

_____
SIMONS, J.

We concur.


_____
JONES, P.J.


_____
REARDON, J.*


(A108442)


_____

\*   Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7

# EXHIBIT 5

*Wu, C*

# IN THE SUPREME COURT

# OF THE STATE OF CALIFORNIA

THE PEOPLE OF THE STATE
OF CALIFORNIA,

Plaintiff and Respondent,


v.

HOA TRUNG KHUU,

Defendant and Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No.

Court of Appeal
A108442

Superior Court
San Mateo County
No. SC056446

## PETITION FOR REVIEW



DOCKETED
SA
MAY 0 9 2006
By L. CARAMANZANA
No. SF2005DA0077

CATHERINE WHITE
State Bar No. 193690
19 Embarcadero Cove
Oakland, CA 94606
510-534-7026

Attorney for Appellant
and Petitioner
Hoa Trung Khuu

IN THE SUPREME COURT

OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE<br>OF CALIFORNIA, | ) | No. |
| | ) | |
| Plaintiff and Respondent, | ) | Court of Appeal<br>A108442 |
| | ) | |
| | ) | Superior Court |
| | ) | San Mateo County |
| v. | ) | No. SC056446 |
| | ) | |
| HOA TRUNG KHUU, | ) | |
| | ) | |
| Defendant and Appellant. | ) | |
| | ) | |

TO THE HONORABLE RONALD GEORGE, PRESIDING JUSTICE OF THE
SUPREME COURT OF CALIFORNIA, AND TO THE ASSOCIATE JUSTICES:

Appellant Hoa Trung Khuu petitions for review of the unpublished decision of the
Court of Appeal, First Appellate District, filed March 30, 2006, affirming the judgment of
conviction of the San Mateo County Superior Court. A copy of the written decision of
the Court of Appeal is attached to this petition as Exhibit A.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    REVIEW IS APPROPRIATE TO DECIDE WHETHER THE TRIAL
      COURT'S DENIAL OF PETITIONER'S REQUEST TO DISCHARGE
      HIS RETAINED ATTORNEY VIOLATED HIS STATE AND FEDERAL
      CONSTITUTIONAL RIGHTS TO DUE PROCESS AND THE
      ASSISTANCE OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   REVIEW IS APPROPRIATE TO DECIDE WHETHER THE TRIAL
      COURT VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT
      TO A JURY TRIAL BY IMPOSING CONSECUTIVE TERMS BASED
      ON FACTUAL FINDINGS RESOLVED NOT BY A JURY, BUT BY
      THE TRIAL COURT ALONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

Blakely v. Washington (2004) 432 U.S. 296, 124 S.Ct. 2531 ................ 9

Coleman v. Alabama (1970) 399 U.S. 1   ................................................ 5

Gideon v. Wainwright (1963) 372 U.S. 335   ......................................... 5

Smith v. Murray (1986) 477 U.S. 527 .................................................... 9

United States v. Gouveia (1984) 467 U.S. 180   ..................................... 5

## STATE CASES

People v. Black (2005) 35 Cal. 4th 1238   ............................................. 9

People v. Lara (2001) 86 Cal. App. 4th 139 .......................................... 5

People v. Ortiz (1990) 51 Cal. 3d 975   .................................................. 5

## QUESTIONS PRESENTED

This Petition for Review asks the Court to resolve two major questions:

1)   Were petitioner's federal and state constitutional rights violated when the trial court denied his request to discharge his retained attorney; and

2)   Were petitioner's federal and state constitutional rights violated when the trial court imposed consecutive terms based on factual findings resolved not by a jury, but by the trial court alone.

Because each of these are important issues of federal constitutional dimension, review is appropriate.

1

## STATEMENT OF THE CASE

On June 9, 2004, the San Mateo County district attorney filed a five-count information charging appellant Hoa Trung Khuu with (1) two counts residential burglary in violation of section 460, subdivision (a); (2) one count attempted residential burglary in violation of sections 460, subdivision (a), and 664; and (3) two counts of possession of stolen property in violation of section 496, subdivision (a). (CT 5-7.) The information added allegations of a prior strike for purposes of the three strikes law as well as the prior serious felony five-year enhancement provided by section 667(a). (CT 7-8.)

Trial began on September 1, 2004. (CT 200.) Deliberations began on September 7, 2004. (CT 217.) On September 8, 2003, the jury found appellant guilty on all counts. (CT 326-330.)

The trial court found true the prior strike and prison term allegations on November 18, 2004. (CT 363.) The court then sentenced appellant to (1) the midterm of 4 years as to count one, (2) one-third the midterm for a consecutive term of 8 months as to count two, and (3) one-third the midterm for a consecutive term of 1 year, four months, as to count three. (CT 364.) The court then doubled the terms pursuant to section 1170.12, subdivision (c)(1). (CT 364.) Finally, the court added a five-year term for the prior serious felony allegation, and stayed sentence on all remaining counts. (CT 364.) The total term imposed was 17 years in state prison. (CT 364.)

Appellant timely filed a Notice of Appeal. (CT 380.) On March 30, 2006, the appellate court affirmed the conviction and sentence. This petition follows.

## STATEMENT OF FACTS

For the purposes of this Petition for Review only, petitioner will adopt the statement of facts set forth in the appellate court's opinion.

ARGUMENT

I.    REVIEW IS APPROPRIATE TO DECIDE WHETHER THE TRIAL COURT'S
      DENIAL OF PETITIONER'S REQUEST TO DISCHARGE HIS RETAINED
      ATTORNEY VIOLATED HIS STATE AND FEDERAL CONSTITUTIONAL
      RIGHTS TO DUE PROCESS AND THE ASSISTANCE OF COUNSEL.

The Sixth Amendment to the United States Constitution provides that criminal

defendants are entitled to the assistance of counsel at all critical stages of the proceedings

against them. (United States v. Gouveia (1984) 467 U.S. 180, 187; Coleman v. Alabama

(1970) 399 U.S. 1, 9-10; Gideon v. Wainwright (1963) 372 U.S. 335, 344-345.) The

California Constitution is in accord. (Cal.Const., art. I, § 15.) "The right of a criminal

defendant to counsel and to present a defense are among the most sacred and sensitive of

our constitutional rights." (People v. Ortiz (1990) 51 Cal.3d 975, 982, citing Magee v.

Superior Court (1973) 8 Cal.3d 949, 954.)

A criminal defendant also has the Due Process right to appear and defend with

retained counsel of choice. (People v. Ortiz, supra, 51 Cal.3d at pp. 982-983; People v.

Lara (2001) 86 Cal.App.4th 139, 152.) "While we have recognized competing values of

substantial importance to trial courts, including the speedy determination of criminal

charges, the state should keep to a 'necessary minimum its interference with the

individual's desire to defend himself in whatever manner he deems best, using any

legitimate means with his resources." (People v. Ortiz, supra, 51 Cal.3d at p. 982

[citations omitted].) Indeed, "[a] criminal defendant's right to decide how to defend

himself should be respected unless it will result in 'significant prejudice' to the defendant

5

or in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (Id.)

　　While an indigent criminal defendant must prove inadequate representation in order to obtain new appointed counsel, a defendant employing retained counsel may discharge such counsel at any time with or without cause. (People v. Ortiz, supra, 51 Cal.3d at p. 983; People v. Lara, supra, 86 Cal.App.4th at p. 152.) The right to discharge retained counsel is based on "'necessity in view of both of the delicate and confidential nature of the relations between [attorney and client], and of the evil engendered by friction or distrust.'" (People v. Ortiz, supra, 51 Cal.3d at p. 983, quoting Todd v. Superior Court (1919) 181 Cal. 406, 413.) "In order to ensure effective assistance of counsel, a nonindigent defendant is accorded the right to discharge his retained attorney: 'the attorney client relationship . . . involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney.'" (People v. Ortiz, supra, 51 Cal.3d at p. 983, quoting Smith v. Superior Court (1968) 68 Cal.2d 547, 561.) In short, "the right to counsel of choice reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but not longer wishes to retain." (People v. Ortiz, supra, 51 Cal.3d at p. 983. Accord People v. Lara, supra, 86 Cal.App.4th at p. 152.)

　　Here, Mr. Khuu and his attorney had a dispute over counsel's representation at trial and outstanding legal fees. (CT 340.) Because of the breakdown in the relationship, and because Mr. Khuu could not longer pay for retained counsel, Mr. Khuu requested that his

6

current counsel be permitted to withdraw and new counsel be appointed. (CT 341.)
Because Mr. Khuu had a state and federal constitutional right to discharge his own
retained attorney, the trial court's refusal to grant the motion was error. (See People v.
Ortiz, supra, 51 Cal.3d at p. 983.) Review is appropriate to remedy this federal
constitutional error.

II.    REVIEW IS APPROPRIATE TO DECIDE WHETHER THE TRIAL COURT
       VIOLATED PETITIONER'S'S SIXTH AMENDMENT RIGHT TO A JURY
       TRIAL BY IMPOSING CONSECUTIVE TERMS BASED ON FACTUAL
       FINDINGS RESOLVED NOT BY A JURY, BUT BY THE TRIAL COURT
       ALONE.

Petitioner was convicted of two counts of residential burglary in violation of

section 460, subdivision (a), one count attempted residential burglary in violation of

sections 460, subdivision(a), and 664, and two counts of possession of stolen property in

violation of section 496, subdivision (a).  (CT 326-328.)  At sentencing, the trial court

considered whether to sentence the terms on these counts concurrently or consecutively.

In this situation, the Legislature has determined that the imposition of concurrent

sentences in the presumptive sentence, absent additional factual findings supporting a

consecutive term.  (See Penal Code § 669 ["Upon failure of the court to determine how

the terms of imprisonment on the second or subsequent judgment shall run, the term of

imprisonment on the second or subsequent judgment shall run concurrently."]; Penal

Code § 1170, subd. (c) [requiring trial court to state reasons for sentencing choice on the

record]; California Rules of Court, Rule 4.425, subd. (a), (b) [setting out factual findings

affecting decision to impose consecutive rather than concurrent terms].)

Here, the trial court imposed consecutive terms on the burglaries and attempted

burglary because it found "the crimes and their objectives were predominantly

independent of each other and were committed at different times and in separate places."

(RT 613-614.)  Based on these factual findings which the jury did not reach and which

the state had only to prove by a preponderance of the evidence, the court departed from the presumptive concurrent term, imposing consecutive terms on these three counts.

As discussed below, the trial court erroneously relied on facts which were not proved to a jury beyond a reasonable doubt in violation of Blakely v. Washington (2004) 432 U.S. 296, 124 S.Ct. 2531. Accordingly, the court's imposition of consecutive terms was federal constitutional error.

Petitioner's position is simple: Blakely applies to findings of fact necessary for imposition of consecutive terms under sections 669 and 1170 and California Rule of Court 4.425. Appellant recognizes that this Court has recently held that there is no federal constitutional right to a jury trial on the factors used to impose consecutive sentences. (People v. Black (2005) 35 Cal.4th 1238, 1264.) Petitioner therefore makes this argument to preserve the issue for federal court review. (See Smith v. Murray (1986) 477 U.S. 527 [holding that even issues settled under state law must be re-raised to preserve the issue for federal habeas corpus review].)

Because this Court is undoubtedly familiar with the core of appellant's argument, appellant will forego any extended explanation as to why Black was decided incorrectly. Appellant will only briefly summarize the rationale for Blakely's application to consecutive term sentencing.

In Blakely, the Court held that where state law establishes a presumptive sentence for a particular offense and authorizes a greater term only if certain additional facts are

9

found (beyond those inherent in the plea or jury verdict), the Sixth and Fourteenth Amendments entitle the defendant to a jury determination of those additional facts by proof beyond a reasonable doubt. (Blakely v. Washington, supra, 124 S.Ct. at p. 2537.) "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Blakely v. Washington, supra, 124 S.Ct. at p. 2536.)

Under section 1170, a trial court must impose concurrent terms absent its own finding on the record of circumstances in aggravation or mitigation. Thus, the court has complete discretion to impose consecutive terms based on facts which have not been proven to a jury beyond a reasonable doubt. Section 1170 suffers from the same constitutional infirmity condemned in Blakely.

In the present case, the trial court violated Blakely -- and petitioner's federal constitutional rights to due process and a jury trial -- by imposing consecutive terms based on facts never found true by a jury. The sentence imposed was unconstitutional.

CONCLUSION

For all these reasons, review is appropriate.

DATED: _____4|28|06_____

Respectfully submitted,

CATHERINE WHITE

_____
By Catherine White
Attorney for Appellant

11

## CERTIFICATE OF COMPLIANCE

I certify that the accompanying brief was produced on a computer.  The word count of the computer program used to prepare the document shows that there are 1,841 words in the brief.

Dated:  4|28|06

Catherine White

COPY

Filed 03/30/06

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE



FILED

MAR 3 0 2006

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____

|  |  |
|---|---|
| THE PEOPLE, | |
| **Plaintiff and Respondent,** | A108442 |
| v. | |
| HOA TRUNG KHUU, | (San Mateo County |
| **Defendant and Appellant.** | Super. Ct. No. SC056446) |

Defendant Hoa Trung Khuu appeals his conviction by jury trial for two counts of first degree burglary (Pen. Code, § 460, subd. (a))[1] (counts 1 & 3), one count of attempted first degree burglary (§§ 664, 460, subd. (a)) (count 2) and two counts of receiving stolen property (§ 496, subd. (a)) (counts 4 & 5). The court found true allegations of a prior strike and a prior serious felony. (§§ 1170.12, subd. (c)(1), 667, subd. (a).) Defendant contends that the trial court denied his request to discharge his retained attorney, thus violating his state and federal constitutional rights to due process and assistance of counsel.[2] We disagree and affirm.

---

[1] All undesignated section references are to the Penal Code.

[2] To preserve his rights to further review, defendant relies on *Blakely v. Washington* (2004) 542 U.S. 296 to argue that the trial court violated his Sixth Amendment right to a jury trial by imposing consecutive terms based on factual findings resolved by the trial court and not by a jury. Defendant recognizes that the California Supreme Court's

FACTUAL BACKGROUND

*Attempted Burglary of Tommy Hui*

On March 10, 2004, Tommy Hui worked from his Foster City home. At around noon, he heard footsteps, peeked out his front door and saw a black Range Rover parked in front of his house. He then heard his doorbell ring repeatedly and the footsteps of a person walking away from his front door. After going upstairs, he heard the sound of metal scraping near the side of his house. When he went downstairs to investigate, he saw two men outside his home, one of whom was using an instrument to pry open the door. When Hui yelled, the two men ran away. Hui then called the police.

Police Officer William Sandri received a dispatch with descriptions of the suspects and the Range Rover. While on his way to the Hui home, Sandri noticed a black Range Rover and initiated a traffic stop. The Range Rover came to a stop and the two males inside then fled on foot. Sandri caught up with the suspects and saw them bending over, breathing heavily. When he ordered them to the ground, the suspects hopped a nearby fence. Sandri was joined in pursuit by Officer Mark Lee. While fleeing, a cell phone belonging to defendant's mother fell out of one of the suspect's pockets.

Lee suspected that the men went to a nearby lagoon. As he approached, he saw a man, later identified as defendant, hiding behind a boat. Defendant then tried to swim across the lagoon. When Lee ordered him to give up, defendant told the officer to shoot him. Defendant eventually emerged from the water, went over a fence and lay down on the grass. As Lee approached, defendant got up, climbed over the fence and again fled.

San Mateo County Deputy Sheriff Kenneth Kammuller participated in the search and eventually found defendant hiding inside a garbage can. Defendant was taken into custody, as was the second suspect, Ryan Bui, who was found hiding underneath bushes inside a nearby yard.

---

rejection of this claim in *People v. Black* (2005) 35 Cal.4th 1238, 1244 is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We reject defendant's contention on this basis.

2

*Burglary of the Chi and Hung Residences*

Inside the Range Rover, officers found various items and currency belonging to the Chi and Hung families. On March 9, 2004, Sharon Chi went on a trip, leaving behind over $3,000 in a cabinet, a collection of $2 bills, jewelry and a Rolex watch. The next day, her husband Yao Chi left for work. He did not notice anything missing when he returned home later that evening. However, a day later, when he went to the cabinet, he noticed it was slightly open and had pry marks and scratches and that all the money inside was missing. The screen to the bathroom window had been pried open. He realized sometime afterward that his Rolex watch was missing. When she returned from her trip, Mrs. Chi discovered that her jewelry was also missing. She later recognized her jewelry in a police photograph.

Other items inside the Range Rover belonged to the Hung family. On the morning of March 10, 2004, George Hung left for work and made sure that all doors and windows were closed and locked. Later that day, he received a phone call from police stating that they had found his name on property inside the Range Rover. When he arrived home, he saw that the garage door knob was broken and that a laptop computer, camera, money and jewelry were missing. His wife, Pamela, noticed that the curtain in the living room was closed when she had left it open that morning. The Hungs later identified property found inside the Range Rover as property stolen from their residence.

On September 8, 2004, a jury found defendant guilty on all counts. On November 18, 2004, the court sentenced defendant to 17 years in state prison.[3] Defendant filed a timely notice of appeal.

---

[3] The court sentenced defendant to the midterm of four years as to count 1; one-third the midterm for a consecutive term of eight months as to count 2; and one-third the midterm for a consecutive term of one year four months, as to count 3. The base terms for sentence imposed as to counts 1, 2 and 3 was doubled pursuant to section 1170.12, subdivision (c)(1). The court added a five-year term for a prior serious felony allegation and stayed sentence on all remaining counts.

DISCUSSION

On October 21, 2004, following trial, but prior to sentencing, defense attorney Frank Bell moved to withdraw as defendant's retained counsel. In his motion, Bell stated that defendant and his family had paid him an initial $15,000 deposit but had not paid any other bills. According to Bell, defendant indicated that he did not intend to pay the money owed because "among other [complaints defendant] had about the representation . . . , [defendant believed counsel] 'did nothing for [him] in court.' " Bell stated defendant "did not intend to cooperate with counsel" and in "counsel's opinion . . . the attorney-client relationship [was] irredeemably damaged and . . . [had] been severed and broken down beyond repair." Bell requested permission to withdraw and for the appointment of the private defender to represent defendant at sentencing.

On October 29, 2004, the court denied Bell's motion, stating as follows: "I've considered it carefully, and I really do not want to experience the delay, in view of what's left to do, that would be attendant upon relieving . . . Bell. I hate to see lawyers without pay; . . . but given the alternatives, and given the fact that the only thing left to do is appearance at the sentencing, a court trial on the [prior federal conviction], which I think will be mainly a paper exercise and perhaps some research by myself with regard to whether it would constitute a strike under the California statutes."

Bell informed the court that he did not intend to file any further pleadings relating to the court trial on the prior federal offense because the district attorney had carefully discussed all of the authorities and there was no need for him to do anything further on that issue. The court then indicated that the only remaining matters were the sentencing hearing and a *Romero* motion,[4] both of which could be done orally. Under these circumstances, the court denied Bell's motion to withdraw.

---

4    Under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, the sentencing court has discretion to strike prior conviction allegations although the case was charged under the "Three Strike" statute. (Pen. Code, § 667, subds. (b)-(i).)

Defendant argues the court's denial of counsel's motion violated his constitutional rights to due process and the assistance of counsel. We disagree.

The rights to effective assistance of counsel and due process (U.S. Const., 6th & 14th Amends.) encompass a criminal defendant's right to retain counsel of his or her choice and the right to discharge his or her retained attorney, with or without cause, so long as the discharge will not result in significant prejudice to the defendant and will not disrupt the orderly processes of justice. (*People v. Gzikowski* (1982) 32 Cal.3d 580, 586-587; *People v. Ortiz* (1990) 51 Cal.3d 975, 982-983; *People v. Turner* (1992) 7 Cal.App.4th 913, 917.) A defendant who becomes indigent, as was the case here, and wishes to discharge his retained counsel has the same right to do so as a nonindigent defendant. "[A] court must not consider whether a defendant is indigent and will require appointment of counsel in ruling on his timely motion to discharge retained counsel." (*Ortiz*, at p. 987.)

However, counsel's motion to withdraw does not trigger such constitutional protections. Defendant's rights to due process and assistance of counsel are invoked by *his* motion to discharge. (*People v. Ortiz, supra,* 51 Cal.3d at p. 983 ["the right to counsel of choice reflects not only a defendant's choice of a particular attorney, but also *his* decision to discharge an attorney whom he hired but no longer wishes to retain" (italics added)]; *People v. Mullane* (1960) 182 Cal.App.2d 765, 770.) Here, defendant did not make such a request. He neither filed a motion to discharge nor orally indicated his dissatisfaction with counsel to the court. Defendant argues that Bell discussed his intention to seek withdrawal with defendant and defendant conveyed his complaints about counsel through Bell's written motion. Bell's motion indicated that defendant expressed no objection to his request to withdraw and did not want to pay him because counsel had done "nothing for [defendant] in court." On this record it would be utter speculation to conclude that defendant's failure to object to his attorney's withdrawal and his complaints to his attorney constituted an affirmative request to discharge counsel.

"[A]cquiescence in his attorney's request for leave to withdraw does not constitute a request on [defendant's] part for a substitution of attorneys." (*People v. Mullane,*

5

*supra*, 182 Cal.App.2d at p. 770.) In the absence of defendant's request to discharge, the trial court had no reason to weigh defendant's constitutional rights to due process and assistance of counsel against competing interests.

DISPOSITION

The judgment is affirmed.

_____
SIMONS, J.

We concur.


_____
JONES, P.J.


_____
REARDON, J.*


(A108442)


_____

*    Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, declare as follows:

I am a citizen of the United States, over the age of 18 years and not a party to the within action; my business address is 19 Embarcadero Cove, Oakland, California 94606.

On April 28, 2006, I served the attached

PETITION FOR REVIEW

by placing a true copy thereof in an envelope addressed to the person(s) named below at the address(es) shown, and by sealing and depositing said envelope in the United States Mail at Oakland, California, with postage thereon fully prepaid. There is delivery service by United States Mail at each of the places so addressed, or there is regular communication by mail between the place of mailing and each of the places so addressed.

Attorney General
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664

First District Appellate Project
730 Harrison Street, Suite 201
San Francisco, California 94107

Mr. Hoa Khuu
V58390
Folsom State Prison
P.O. Box 950
Folsom, CA 95763

District Attorney
400 County Center, 3rd Floor
Redwood City, CA 94063

San Mateo County Superior Court
400 County Center
Redwood City, CA 94063

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2006, at Oakland, California.

_____
DECLARANT

# EXHIBIT 6

*Wu, C*

Court of Appeal, First Appellate District, Div. 5 - No. A108442
**S143098**

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

THE PEOLE, Plaintiff and Respondent,

v.

HOA TRUNG KHUU, Defendant and Appellant.

Petition for review denied without prejudice to any relief to which defendant might be entitled after the United States Supreme Court determines in *Cunningham v. California*, No. 05-6551, the effect of *Blakely v. Washington* (2004) 542 U.S. 296 and *United States v. Booker* (2005) 543 U.S. 220, on California law.

SUPREME COURT
**FILED**

JUN 1 4 2006

Frederick K. Ohlrich Clerk

DEPUTY



DOCKETED
SAN FRANCISCO

JUN 1 6 2006

By L. CARAMANZANA
No. ST-2005-0A0077

**GEORGE**

Chief Justice

# EXHIBIT 7

MC-275

Name  Hoa Khuu

Address  CSP-Solano, 12-240

P.O. Box 4000

Vacaville, CA 95696-4000

CDC or ID Number  V-58390

**SUPREME COURT**
**FILED**

JAN 1 6 2007

Frederick K. Ohlrich Clerk

*Colleen E. Mappu*
Deputy

👍 **ORIGINAL**

**RECEIVED**

JAN 1 6 2007

CLERK SUPREME COURT

THE SUPREME COURT

STATE OF CALIFORNIA
*(Court)*

In re:

HOA KHUU,
Petitioner

vs.

D.K. SISTO, et al.,
Respondent s.

PETITION FOR WRIT OF HABEAS CORPUS

No. **S149466**

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

WEST GROUP
Official Publisher

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

**This petition concerns:**

- [xx] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Other *(specify):* _____

- [ ] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: HOA TRUNG KHUU

2. Where are you incarcerated? CSP-SOLANO, VACAVILLE, CA 95696-4000

3. Why are you in custody?   [X] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Residential burglary, two counts; attempted residential burglary;

      and two counts of receiving stolen property; also, one prior strike

   b. Penal or other code sections: §460 (a) P.C.; 460(a) / 664 P.C.; § 667(a) enhancement; and & 496, 2 cts.

   c. Name and location of sentencing or committing court: San Mateo Superior Court, 400 County

      Center, Redwood City, CA 94063

   d. Case number: SC056446

   e. Date convicted or committed: September 8, 2004.

   f. Date sentenced: November 18, 2004.

   g. Length of sentence: 17 years - 80%(as second strike).

   h. When do you expect to be released? Minimum release date: 08-25-2017.

   i. Were you represented by counsel in the trial court?   [xx] Yes.   [ ] No.  If yes, state the attorney's name and address:

      Frank Bell, private attorney.

4. What was the LAST plea you entered? *(check one)*

   [xx] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [xx] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF
   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PETITIONER WAS DENIED STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, AND

EQUAL PROTECTION OF THE LAW WHEN THE STATE OF CALIFORNIA DID NOT FOLLOW THE PRIOR

PLEA AGREEMENT'S STIPULATION IN RETURN FOR A GUILTY PLEA IN HIS FEDERAL CONVICTION

WHICH MADE CLEAR THAT THE AGREEMENT HAD NO FUTURE USE FOR USE AS A PRIOR, WHICH

NOW THE COURT HAS USED IT TO DOUBLE THE SENTENCE AND ADD A FIVE-YEAR ENHANCEMENT

a. Supporting facts:
   Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

PETITIONER'S 'PRIOR' OFFENSE USED TO ENHANCE HIS CURRENT SENTENCE TO A SEVENTEEN

YEAR SENTENCE FROM WHAT WOULD HAVE BEEN A SUBSTANTIAL TERM OF ABOUT EIGHT YEARS

MAKES THIS A SERIOUS ISSUE TO A YOUNG MAN OF TWENTY-NINE YEARS OLD AT THE TIME OF

SENTENCING. IT IS OF LEGAL IMPORTANCE DUE TO THE FACT THAT THIS CASE, ONE

OF FEDERAL JURISDICTION AND A PLEA AGREEMENT MADE NO FURTHER USE IN THE ACTUAL

SENTENCING PARTIALLY DUE TO HIS RELATIVELY MINOR ROLE IN THE ATTEMPTED CRIME,

AND HIS POTENTIAL INVOLVEMENT WAS MINOR IN NATURE. BUT THE ACT WAS NEVER TO TAKE

PLACE AS IT WAS A "STING" OPERATION. AS FOR THE PETITIONER'S ASSISTANCE IN THE

CRIME AND HIS LATER REDUCTION IN SENTENCE FOR HIS ASSISTANCE IN COURT, HE WAS

GIVEN A PLEA AGREEMENT, INCLUDED HERE AS AN EXHIBIT, IT BECOMES CLEAR THAT THE

PROSECUTION AND COURT AGREED TO A CONTRACT THAT DOES NOT MENTION ANY FUTURE USE

AT ANY LEVEL. THE COURT IS AWARE THAT THE NINTH CIRCUIT HAS MADE CLEAR THAT IT

WILL ENFORCE THE WRONGFUL USE OF 'PRIORS' AS SHOWN IN THE CASE BELOW, (CONTINUED)

b. Supporting cases, rules, or other authority (optional):
   *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(PLEASE SEE MEMORANDUM FOR CASES AND AUTHORITIES IN THIS MATTER)

8. Did you appeal from the conviction, sentence, or commitment?  [xx] Yes.  [ ] No.   If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

COURT OF APPEALS, FIRST APPELLATE DISTRICT, DIV. FIVE

b. Result:  N/A

c. Date of decision:  --

d. Case number or citation of opinion, if known:   A108442

e. Issues raised: (1)    IAC OF TRIAL COUNSEL DUE TO COURT'S DENIAL OF REQUEST

(2)  TO REMOVE COUNSEL AND REPLACE WITH PRIVATE DEFENDER-2 CLAIMS.

(3)  COURT ERRED IN IMPOSING CONSECUTIVE TERMS BASED ON FACTS NOT FOUND
TRUE BY THE JURY.

f. Were you represented by counsel on appeal?  [XX] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

CATHERINE WHITE, 19 EMBARCADERO COVE, OAKLAND, CA 94606

9. Did you seek review in the California Supreme Court?  [ ] Yes.  [ ] No.   If yes, give the following information:

a. Result:  N/A

b. Date of decision:

c. Case number or citation of opinion, if known:

d. Issues raised: (1)

(2)

(3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

Further caselaw has been decided since the original filing of appeal
in initial filing, and Petitioner is now advising the Court of this
as it is directly on point with his case.

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

None available.

b. Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.

*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]              **PETITION FOR WRIT OF HABEAS CORPUS**         [WEST GROUP Official Publisher]    Page 4

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [X] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court: SAN MATEO SUPERIOR COURT

   (2) Nature of proceeding (for example, "habeas corpus petition"): HABEAS CORPUS PETITION

   (3) Issues raised: (a) BREACH OF PLEA BARGAIN-CONTRACT

      (b) _____

   (4) Result (Attach order or explain why unavailable): DENIED

   (5) Date of decision: NOVEMBER, 2006

  b. (1) Name of court: N/A

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

   THERE HAS BEEN NO DELAY AS CASES BASED ON THE THEORY OF CONTRACT

   LAW BEING THE CORRECT AUTHORITY OVER PLEA BARGAINS ARE RECENT CASES.

16. Are you presently represented by counsel?  [ ] Yes.  [X] No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [X] No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

   THIS IS BEING SENT TO HIGHEST STATE COURT BEFORE GOING TO THE

FEDERAL COURTS AS IS REQUIRED.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  JANUARY 6, 2007.  ▶ _____ (SIGNATURE OF PETITIONER)

## PETITION FOR WRIT OF HABEAS CORPUS

1.    Petitioner, Hoa Khuu, in pro per., files this
Petition for Writ of Habeas Corpus based on recent caselaw
in regard to the prior conviction which was used to double
his sentence and add five years to the total.  This recent
ruling has been found to be binding on those individuals who
have been sentenced under the Three Strikes Law, Penal Code
sections 667 and 1170.12.

2.    Petitioner was given a second-strike enhanced sentence by
the use of a prior federal conviction for which the actual date
of the arrest was in July 7th, 1994, and was personally given
a reduced term of four years and five months, which was followed
by a three-year supervised release that included a drug treatment
program, as it was found that he had a problem with drugs and
that this had led to his involvement in the 'sting' operation
that he was involved in to a lesser degree than the others  who
were also convicted in the operation. He pled to the crimes and
accepted the Court's plea offer.  This was dependant upon his
testimony given to be truthful and correct.  It was so considered
and he received the above-stated plea agreement.

3.    Now, after serving his sentence, the same conviction has
been used to double his sentence in the state case in San Mateo
County Superior Court, number SC056446, and doubling the term
to one of seventeen years and 80% of this term must be served.
The prior conviction has now been used to double his term when the
federsl court made no mention of this 'contractual agreement'
could ever be used again to cause a longer sentence with the
only exception being for a violation of the supervised release
that followed his incarceration.  This was the only way that he
was informed of any additional time the agreement could affect
him.  Now he has been given a term more than twice than the
current sentence would have been without the conviction dating
from the 1994 crime.

6

4.    For this reason, and the recent cases that have indicated
plea bargains are governed by contract law and not criminal law
, of which the Ninth Circuit in recent cases have reversed
some state sentences, causing them to be resentenced without the
priors, Petitioner now comes to the Supreme Court first before
proceeding to the federal jurisdiction requesting that the state
send this case back for resentencing in the trial court.
5.    Based on the above-stated reason, Petitioner does request
that the sentencing court in San Mateo Superior Court be ordered
by this California Supreme Court to hold a new sentencing, and
along with the required resentencing that is forthcoming due to
Blakely v. Washington, (2004) 159 L. Ed. 2d 403, as this Court
agreed that the defendant, in direct appeal, had that coming
from the federal court and they could not object.  Petitioner
feels that it would be in the interest of justice to do both
at the same time and ordered so by this Court.

    WHEREFORE, PREMISES CONSIDERED, PETITIONER SUBMITS THIS ISSUE
TO THE STATE COURTS BEFORE ENTERING THE FEDERAL COURTS.
DATE: JANUARY 12, 2007.

_____
HOA KHUU - PETITIONER

7

ARGUMENT

1

2    THE UNITED STATES SUPREME COURT ESTABLISHED STANDARDS

3    FOR NEGOTIATED PLEAS IN BOYKIN V. ALABAMA(1969) 395 U.S. 238,

4    89 S. CT. 1703;   23 L. ED. 2D 274.

5        In Boykin, supra, the court held that a guilty plea would

6    not be accepted unless there was affirmative evidence that the

7    plea was not only voluntary, but further concluded that the

8    trial court must use the "[u]tmost solicitude in canvassing

9    the matter with the accused to make sure he has a full under-

10   standing of what the plea connotes and of its consequences."

11   Boykin, supra, at pp. 243-244.

12       In light of such standards, the federal courts have time

13   and again vacated, or forced compliance with pleas when

14   defendants have been able to show that they have been unfairly

15   subjected to excessive punishment of that bargained for through

16   plea negotiation.   Where a promise is "unfulfilled",

17   specifically denies that the plea must stand. Brady v. United

18   States, (1970) 397 U.S. 742; 90 S. Ct. 1463; 25 L. Ed 2d 747,

19   760.

20       This Petitioner now brings just such a claim to this

21   Court, with the recently decided cases in California where just

22   such errors in plea agreements have been found in use with the

23   California Three Strikes Law. Brown v. Poole,337 F. 3d 1155,

24   1160 (9th Cir. 2005); Riggs v. Fairman,399 F. 3d. 1179, 1183,

25   (9th Cir. 2005), to name two of the more recent of several

26   that exist.  Petitioner entered into a plea bargain, and said

27   plea bargain was not adhered to. See U.S. v. Kamer, 781 F. 2d1380.

28   Petitioner understood specifically the conditions regarding his

1  plea, based his decision on these conditions, but now is

2  subjectedto onerous punishment in excess of what he expected by

3  virtue of his plea.  Compare with People v. Floyd lee P.(1988)

4  198 Cal. App. 3d 608.

5      In a series of cases, perhaps led by the United States

6  Supreme Court decision in Santabello v. New York(1971) 404 U.S.

7  257; 92 S. Ct. 495; 30 L. Ed. 2d 427, negotiated pleas and the

8  issue of compliance of same, have been determined to be

9  MANDATORY. (Emphasis added,)

10      Here the Court went on to state:

11          "....when a plea rests in any significant
            degree on a promise or agreement of the
12          prosecutor, so that it can be said to be
            a part of the inducement or consideration,
13          such promise must be fulfilled...."
            (Emphasis added.), Santabello at p. 262.
14

15      Paramountly, in the spirit of Santabello, supra, federal

16  courts have required compliance with negotiated pleas, even to

17  the point of striking statutory mandate(s) of parole.  In

18  United States ex rel Baker v. Finkbeiner (1977) 551 F. 2d 180,

19  where a defendant had entered into a negotiated plea of guilty

20  for a specific sentence and was neither informed prior to, or

21  during the bargaining period, nor at the sentencing proceeding,

22  that parole was statutorily required as a penalty to be included

23  as a part of the sentence, the court stated:

24          "[W]e do not find the imposition of a
            two year parole term to be an
25          insignificant punishment.¶We therefore
            hold that Baker's guilty plea was
26          unfairly induced in violation of the
            Due Process Clause". Baker, supra, at
27          p.184;Also see 14th Amend., U.S. Constitution.

28  / / /

8

1    In <u>Santobello v. New York</u>, (1971) 404 U.S. 257, the Supreme

2  Court held that a defendant has a constitutional right to

3  relief when the state breaches a promise made to him in return

4  for a guilty plea.

5    Petitioner will begin with the question of remedies, using

6  it as a vehicle for exploring the meaning of Santobello,

7  and conclude with the suggestion that in a legal system where

8  most convictions are based on guilty pleas and most guilty

9  pleas are based on bargained for promise, the most important

10  right of the criminally accused may be found not in the law

11  of trial procedure, but in the law of contracts.

12

13                "The state may not sell the cow

14                   and hope to continue to sup

15                upon her milk." <u>Wynn v. State</u>,

16                (1974) 22 Md. 165, 173, 322 A.2d

17                564, 568.

18

19    Petitioner will begin with the seminal decision in

20  Santobello in which the Supreme Court held that a defendant

21  is constitutionally entitled to some form of relief for a

22  broken plea agreement.

23    Although numerous lower courts had addressed the question

24  of relief for broken plea agreements, Santobello was a case

25  of first impression for the Supreme Court.  In the context

26  of the Court's previous decision in <u>Brady v. United States</u>,

27  (1970) 397 U.S. 742, that plea bargaining is constitutionally

28

acceptable, Santobello presented the Court with three novel questions. First, does a defendant have a constitutional right to relief when the state breaches a promise given in return for a guilty plea? Second, if the defendant has such a right, what is its source in the constitution? Third, given the source of the right, what if anything does it specifically require in the form of a remedy?

The Court's answer to the first question was unequivocal. All seven members agreed that Santobello had a constitutional right to "some remedy" for the broken plea agreement. (The Chief Justice wrote an opinion for the seven-member Court reversing the conviction, in which Justice Douglas, White, and Blackmun joined. Justice Douglas wrote a separate concurring opinion. Justice Marshall wrote an opinion in which Justice Brennan and Stewart joined, concurring in the decision to reverse, but dissenting from the decision to leave the choice of remedy to the "discretion" of the state court on remand.) This holding was made more emphatic by the facts of the case. The second prosecutor's failure to fulfill the original promise was conceded to be entirely inadvertent. Nonetheless, the Court held the second prosecutor responsible for his predecessor's promise, stating, "[t]he staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." Santobello, supra, 404 U.S. at 262. Further, the Supreme Court determined that "the interests of justice and appropriate recognition of the duties of the prosecutor in relation to

1   was based on a construction of the Constitution. Needless
2   to say, Santobello must have been constitutionally based;
3   otherwise, the Supreme Court would have lacked jurisdiction
4   to reverse the judgment of the state court below.)
5   Correspondingly, he left the choice of remedy to the
6   "discretion" of the state courts on remand, suggesting that
7   either specific performance or vacatur might be "required"
8   by the "circumstances of this case." Justice Burger's entire
9   discussion of the issue reads as follows:

10          "The ultimate relief to which petitioner is entitled
11          we leave to the discretion of the state court, which
12          is in a better position to decide whether the
13          circumstance of this case require only that there
14          be specific performance of the agreement on the
15          plea ..., or whether, in the view of the state court,
16          the circumstances require granting the relief sought
17          by petitioner, i.e., the opportunity to withdraw
18          his plea of guilty." 404 U.S. at 263.

19

20      Justice Burger, gave no hint, however, as to which
21  circumstance might require which remedies, or why. (On remand
22  the New York Supreme Court, Appellate Division, gave Santobello
23  specific performance of his plea agreement despite his apparent
24  demand for vacatur. **People v. Santobello**, (1972) 39 App.Div.2d
25  654, 331 N.Y.S.2d 776.)

26

27      Justice Douglas, joining the opinion of the Court,

28

11

advocated a "constitutional rule," evidently based on due process, for relief from broken plea agreements. (Justice Douglas, emphasized that Santobello was "a state case over which we have no 'supervisory jurisdiction'"; and, therefore, that the decision to reverse the conviction because of the prosecutor's breach of the plea agreement must be understood as a constitutional issue. 404 U.S. at 267.) He emphasized that the choice of a remedy for a broken plea agreement is itself a constitutional issue, and that in any individual case, the Constitution requires not only some remedy, but a particular remedy. As to which remedy is required in an individual case, Justice Douglas stated that the defendant's preference should be given "considerable, if not controlling, weight."

Justice Douglas's discussion of the issue reads as follows:

> "Where the "plea bargain" is not kept by the prosecutor, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges. One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's

1           breach of a plea bargain are those of the defendant,

2           not the state." 404 U.S. at 267.

3

4      Justice Marshall, joined by Justices Brennan and Stewart,

5 left the source of the defendant's right to relief unclear,

6 but took the remedy one step further than either the Court

7 or Justice Douglas. While agreeing that some remedy is

8 constitutionally required for a broken plea bargain, Justice

9 Marshall dissented from the decision to remand to the state

10 court without any constraints on its choice of remedies.

11 He argued that a defendant who asks that a guilty plea be

12 vacated has an absolute right to that remedy; accordingly,

13 since Santobello was seeking to set aside his guilty plea,

14 Justice Marshall would have ordered the lower court to grant

15 his request. Justice Marshall went on to say that a defendant

16 who prefers specific performance might also be entitled to

17 that form of relief, but he found it unnecessary to decide

18 the question on the facts of the case. Instead, he was content

19 to observe that a four-member majority of the Court (Justice

20 Douglas plus the three dissenters) agreed that when a defendant

21 requests the remedy of vacatur, the request "should generally

22 be granted."

23      "When a prosecutor breaks the [plea] bargain, he

24      undercuts the basis for the waiver of constitutional

25      rights implicit in the plea. This, it seems to

26      me, provides the defendant ample justification for

27      rescinding the plea ... Of course, where the

28

13

1    prosecutor has broken the plea agreement, it may

2    be appropriate to permit the defendant to enforce

3    the plea bargain. But that is not the remedy sought

4    here. Rather, it seems to me that a breach of the

5    plea bargain provides ample reason to permit the

6    plea to be vacated." 404 U.S. 268.

7

8    Thus, Santobello stands for the proposition that state

9    and federal courts alike have a constitutional obligation

10   to give some relief to defendants aggrieved by broken plea

11   agreements.

12

13   Petitioner contends to determine what particular remedy

14   is required by Santobello, this court must first discern the

15   nature of the constitutional interest that is violated by

16   the state's breach of a prior plea agreement. (The nature

17   of any particular constitutional remedy must, of course, depend

18   on the nature of the underlying constitutional interest that

19   the remedy is designed to serve: "[I]t is important to remember

20   that judicial powers may be exercised only on the basis of

21   a constitutional violation ... As with any equity case, the

22   nature of the constitutional violation determines the scope

23   of the remedy." <u>Swann v. Charlotte-Mecklenburg Bd. of Educ.</u>,

24   (1971) 402 U.S. 1, 16. Consequently, in order to determine

25   the "scope of the remedy" for breach of a plea agreement,

26   one must first identify the "nature of the [constitutional]

27   violation", that occurs when the agreement is breached.)

28

14

1    Even when voluntariness is used in this narrower sense
2    to refer to the conduct that affects the state of a defendant's
3    mind, the constitutional standard still remains somewhat
4    ambiguous. However, to be sure, some things are clearly
5    prohibited. One thing would be, the state may not extract
6    a waiver from a defendant by putting him under such pressure
7    as to totally preclude the exercise of his will. A waiver
8    is involuntary if it is the product of an act that, though
9    conscious, is nonetheless unwilled. See **Parker v. North**
10   **Carolina**, (1970) 397 U.S. 790, 801 (Brennan, J., concurring
11   in **Brady v. United States**, supra and dissenting in **Parker**
12   **v. North Carolina**) (a waiver is involuntary if "the physical
13   or psychological tactics employed exerted so great an influence
14   upon the accused that it could accurately be said that this
15   will was literally over borne"). In other words, the state
16   cannot contend that a defendant waived his rights if it
17   prevented him from ever making a willed choice to assert them.

18   The state is also prohibited from securing waivers by
19   means of pressures (or threats of pressures) that are illegal
20   in themselves. That is, the state cannot induce defendants
21   to waive their constitutional rights by using devices and
22   tactics that would exceed the scope of governmental power
23   under any circumstance. For example, the state cannot obtain
24   a valid waiver by threatening defendants or their loved ones
25   with physical abuse. (**Fontaine v. United States**, (1973) 411
26   U.S. 213, 214-215; **Broxson v. Wainwright**, (5th cir., 1973)
27   477 F.2d 397, 398-399), or by threats of illegal trial tactics

28

15

1  or an illegal sentence. (See **Waley v. Johnston**, supra, 316

2  U.S. at 102-104). Obviously, the purpose of this prohibition

3  is to prevent the state from using concededly illegal means

4  to pressure defendants to waive their constitutional rights.

5      Typically, however, the question of involuntariness arises

6  not from the state's applying pressures that are overwhelming

7  or illegal in themselves, but from the state's using its

8  otherwise lawful authority over the charging and sentencing

9  process to discourage defendants from asserting their rights

10  or (being the same thing) to encourage them to waive their

11  rights. It is here -- where the state structures the terms

12  of defendant's choices by making it more or less costly for

13  them to assert their rights -- that the court is ambivalent.

14  With respect to the waiver of single constitutional rights,

15  the Court has held that the state may not structure the terms

16  of the defendant's choice so as to "penalize" a defendant

17  for asserting those rights. **United States v. Jackson**, (1968)

18  390 U.S. 570, 581-583.

19

20      In addition to requiring that waivers of constitutional

21  right be voluntary, the Constitution also requires that waivers

22  be made "intelligently." (See **Brady v. United States**, supra,

23  397 U.S. at 748, "guilty pleas must be "knowing, intelligent

24  acts done with sufficient awareness of the relevant

25  circumstances and likely consequence""; **McMann v. Richardson**,

26  (1970) 397 U.S. 759, 770 "defendant's plea of guilty must

27  be based on reasonably competent advice to be "intelligent"").

28

16

1    As with voluntariness, the "intelligence" requirement
2    applies to guilty pleas because of the important constitutional
3    rights a defendant waives by pleading guilty. (See **Boykin**
4    **v. Alabama**, supra, 395 U.S. at 242-243, "guilty plea is a
5    waiver of several important constitutional rights and therefore
6    is to be judged by the ordinary waiver standard.") When
7    searching for the constitutional basis for the holding in
8    Santobello, one must examine the interests protected by the
9    intelligence requirement. If these interests are violated
10   by a prosecutor's (or state's) breach of a plea agreement,
11   then the High Court must be correct in suggesting that pleas
12   resulting from such broken agreements are not intelligent.
13   (The Court has implied that a prosecutor's breach of a plea
14   agreement renders the underlying guilty plea unintelligent.
15   **Blackledge v. Allison**, (1977) 431 U.S. 63, 75 n. 8, "[Allison's
16   petition] raised the serious constitutional question whether
17   his guilty plea was **knowing** and voluntarily made") (emphasis
18   added).

19   A guilty plea will be deemed not intelligently made if
20   the defendant is not fully informed of the nature of the
21   charges to which he is pleading. (See **Henderson v. Morgan**,
22   (1976) 426 U.S. 637, 638, "a guilty plea to second-degree
23   murder is invalid unless the defendant is advised that "intent
24   to cause the death of his victim" is "an element of the
25   offense"").

26   In addition to notice of charges, the courts have
27   consistently held that a defendant must be advised he has
28

1   certain constitutional rights incident to standing trial,
2   and by pleading guilty, he waives those rights. (See <u>Boykin</u>
3   <u>v. Alabama</u>, supra, 395 U.S. at 243, "waiver of constitutional
4   rights by defendant in pleading guilty must appear in the
5   record"; <u>In re Tahl</u>, (1969) 1 Cal.3d 122, 132, "the record
6   must contain on its face direct evidence that the accused
7   was aware, ..., of his right to confrontation, to a jury trial,
8   and against self-incrimination, ...").

9        In deciding whether to enter a guilty plea, a defendant
10  makes at least two assessments. First, he assesses the
11  criminality of his own past conduct in light of the offenses
12  with which he is charged; and second, he assesses the
13  likelihood that he will be found guilty of those offenses
14  if he elects to stand trial. A defendant cannot accurately
15  assess the criminality of his previous conduct unless he knows
16  what kinds of conduct are proscribed by law. But notice of
17  the offenses charged is not enough, because a plea of guilty
18  also depends in part on the defendant's assessment of what
19  will occur if he stands trial.

20       This analysis cannot account for the full scope of the
21  intelligence requirement and, hence, does not account for
22  all of the interests protected by the requirement. For in
23  addition to notice of charges and procedural rights, <u>a</u>
24  <u>defendant is also entitled to be informed accurately of certain</u>
25  <u>consequences of pleading guilty, such as the range of possible</u>
26  <u>sentences, and future enhancements</u>. If the defendant is not
27  so informed, any guilty plea will be considered invalid. (See
28

18

1    _Machibroda_ **v.** _United_ _States_, (1962) 368 U.S. 487, 493, the
2    Court stated that "[o]ut of just consideration for persons
3    accused of crime, courts are careful that a plea of guilty
4    shall not be accepted unless made voluntarily after proper
5    advice and with full understanding of the consequences."
6    Quoting _Kercheval_ **v.** _United_ _States_, (1927) 274 U.S. 220, 223.
7    While Machibroda and Kercheval were both federal cases, the
8    High Court subsequently has assumed that the standard it set
9    forth for guilty pleas is constitutional and therefore
10    applicable to the states. See, e.g., _North_ _Carolina_ **v.** _Alford_,
11    (1970) 400 U.S. 25, 31; _Brady_ **v.** _United_ _States_, supra, 397
12    U.S. at 748. In Brady, the Court stated that "[w]aivers of
13    constitutional rights not only must be voluntary but must
14    be knowing, intelligent acts done with sufficient awareness
15    of the relevant circumstances **and** **likely** **consequences**."
16    (Emphasis added).

17        In order to explain why guilty pleas violate the
18    intelligence requirement if a defendant is uninformed or
19    misinformed with respect to important consequences of his
20    plea, you must go beyond society's interest in being free
21    from inaccuracies. The most plausible basis for this
22    undisputed doctrine is that the defendant has a constitutional
23    interest in making an informed choice between alternatives
24    presented to him by the state when his decision will have
25    a profound effect on his life. To treat a defendant with
26    dignity required by the Constitution, the state must make
27    a reasonable effort to advise him of the consequences of the

19

1  various  alternatives.  As  Professor  Joseph  Goldstein  has
2  acutely observed:

3          These rules [that guilty pleas be "intelligent"]
4          are rooted in a basic commitment of the legal system
5          to respect human dignity by protecting the right
6          of every adult to determine what he shall do and
7          what may be done to him.  They have been designed
8          to assure citizens ... remain free to make their
9          respective critical choices without coercion or
10         deception by the authorities. ...[Their purpose
11         is to reinforce] respect for the individual's
12         competence and right to determine for himself what
13         he needs to know ... in order to choose what he
14         thinks is best for himself. Goldstein, For Harold
15         Lasswell:  Some Reflections on Human Dignity,
16         Entrapment, Informed Consent, and the Plea Bargain,
17         84 Yale L.J. 683, 685-686, (1975).

18

19      It is the defendant's interest in being given the
20  information he needs in order to choose what is "best for
21  himself" that explains the requirement that he be advised
22  of the consequences of pleading guilty.
23      The lower courts have made it clear that the state is
24  not obliged to advise a defendant of all possible consequences
25  of pleading guilty.  No court has ever suggested, for example,
26  that to plead guilty intelligently a defendant must be told
27  of all the personal consequences to him of conviction. (See,
28

20

1  United States v. Cariola, (3d cir., 1963) 323 F.2d 180, 186,

2  "defendant need not be advised of collateral consequences

3  of disenfranchiment in another state.) On the contrary, courts

4  have consistently held that some consequences resulting

5  directly from state-imposed sanctions need not be disclosed

6  to the defendant prior to the decision. (See, e.g., Nunez

7  Cordero v. United States, (1st cir., 1976) 533 F.2d 723,

8  "possibility of deportation is a collateral or "indirect"

9  consequence of conviction and therefore need not be revealed

10 to defendant prior to pleading.") It may be tempting to assume

11 that the scope of required disclosure turns upon the importance

12 of the consequence to the defendant: the more important the

13 consequence to the defendant, the more likely that it will

14 be treated as a "direct" consequence to be disclosed. (See

15 J. Bond, Plea Bargaining and Guilty Pleas (1975) at p. 148.)

16 Yet guilty pleas are routinely upheld in cases where the

17 defendant was not advised of consequences of extreme importance

18 to him -- often more important than the criminal sentence

19 itself -- such as deportation. (See, e.g., Nunez Cordero v.

20 United States, supra, 533 F.2d 723.)

21

22     Having now identified the rationale for the distinction

23 between "direct" and "indirect" consequences, this court is

24 in a position to define the scope of the state's duty. That

25 the state has a constitutional obligation to treat defendants

26 with dignity with respect to the crucial decisions concerning

27 life and liberty that it lays before them; that is, to make

28

21

a reasonable effort to give defendants the information they need to decide what is in their "best interests." This, in turn, helps explain the scope of the state's obligation to ensure that its information concerning the consequences of conviction **be accurate**. Obviously, as long as the state is obliged to assist defendants in making crucial choices about life and liberty, it cannot be allowed to mislead defendants into making disadvantageous choices **by giving them information that is false**. Thus, even with respect to indirect consequences, once the state gives a defendant information on which to rely, **it has an obligation to see that the information is correct**. (See **Shelton v. United States**, (5th cir.,) 242 F.2d 101, 114. (Tuttle J., dissenting), rev'd on rehearing en banc, 246 F.2d 571 (5th cir., 1957), rev'd per curiam on Solicitor General's confession of error, 356 U.S. 26 (1958), "a guilty plea is invalid if the defendant was "misled on purpose" by promises that are "not performed at all" or "**not within the power of the promisor**" or "**simply disregarded once their purpose was accomplished**." The requirement that the states representations be accurate is a function of the requirement that the state treat the defendant with dignity with respect to his significant choices: it would be irrational that the defendant be advised of the consequences of conviction, and yet permit the advice to be inaccurate. Since the requirement of accuracy is a function of the requirement that the defendant be treated with dignity (rather than a function of "foreseeability"), it applies with

1    equal force to what ever representations the state makes to
2    the defendant, regardless of whether they relate to "direct"
3    consequences or "indirect" consequences.")

4    The standard that governs the accuracy of the information
5    the state gives the defendant is stricter than the standard
6    that defines the amount of information the state must initially
7    disclose. In advising a defendant of the consequences of
8    conviction, the state must make a "reasonable" effort to gather
9    and disclose the information it believes he will find useful
10   in deciding whether to plead guilty. On the other hand, once
11   the state gives the defendant information on which to rely
12   -- whether it volunteers the information or is required to
13   give it -- it must comply with "the most meticulous standards"
14   of accuracy. (<u>Correale v. United States</u>, (1st cir., 1973)
15   479 F.2d 944, 947.) This difference in standards is no
16   accident; rather, it is a reflection of the fact that as far
17   as the defendant is concerned, false information is far worse
18   than no information at all. When a defendant receives no
19   information from the state concerning the consequences of
20   conviction, he must gather the information himself. But when
21   he receives false information, he is lulled into ceasing his
22   own inquiries, thus, perhaps overlooking material information
23   on his own. In short, the difference in standards reflects
24   the difference between being "uniformed" and being
25   "misinformed." Since the prejudice of being "misinformed"
26   is greater than that of being uninformed, the standard of
27   disclosure is stricter. (This difference in standards is also
28

1   reflected in the tort law of deceit. Compare Restatement of
2   Torts § 525 (1938) (liability for fraudulent misrepresentation)
3   with id., § 551 (liability for nondisclosure).)

4       The requirement that a defendant's plea be intelligent
5   involves three types of disclosure. First, the defendant
6   must be made aware of the elements of the offense in order
7   to ensure that he will not admit guilt through mistake.
8   Second, he must be apprised of the constitutional alternatives
9   to pleading guilty, again to protect the accuracy of the
10  guilt-determining process. Third, the court must inform the
11  defendant of all reasonably foreseeable consequences of
12  conviction in order to respect the defendant's right to choose.
13  Further, once the state provides a defendant with material
14  information about the consequences of conviction -- whether
15  information the state is obliged to give him (concerning
16  "direct" consequences), or information that it chooses to
17  volunteer (concerning "indirect" consequences) -- the state
18  must make a meticulous effort to see that information is
19  accurate.

20      It is readily apparent that the first two forms of
21  disclosure -- notice of charges and notice of procedural
22  alternatives -- are not involved in a broken plea bargain.
23  Whether the prosecutor (or state) follows through on a promise
24  to the defendant does not in any way affect the defendant's
25  ability to determine whether his behavior violated statutory
26  norms or whether his guilt would be more accurately determined
27  by the constitutional alternative of plenary trial. It should

28

24

1  be apparent by now, however, that the third type of disclosure
2  required for a plea to be intelligent is implicated by the
3  prosecutor's (state's) breach.  Since the state is obliged
4  to make a meticulous effort to see that the information it
5  gives a defendant concerning the consequences of his plea
6  is accurate, the state breaches its duty by causing him to
7  plead guilty by means of false promises.  A promise, after
8  all, is a representation of future conduct.  In the context
9  of plea bargaining, it is a factual representation by the
10  state that it will behave in a certain fashion in the future
11  --that certain consequences will follow from a defendant's
12  decision to plead guilty.  Therefore, if the state cannot
13  make false representations to a defendant about the
14  consequences of pleading guilty, it cannot make false promises
15  to a defendant as consideration for a plea of guilty.
16  Moreover, since the government must meticulously protect the
17  accuracy of any representation made to the defendant regarding
18  the consequences of his guilty plea, it makes no difference
19  whether the government's false promise pertains to "direct"
20  or "indirect" consequences.  In either event, the resulting
21  plea is unintelligent.

22      It could be argued here, that while the intelligence
23  requirement prohibits a prosecutor (or state) from making
24  promises he knows to be false, it does not prevent him from
25  making a promise in good faith based upon circumstances as
26  he understands them to be.

27      The answer to this argument is that it rests on a faulty

28

1  premise.  The  validity  of  the  state's  conduct  is  measured
2  not  by  whether  it  is  taken  in  "good"  faith  or  "bad"  faith,
3  but  whether  it  is  properly  designed  to  assist  the  defendant
4  in  wisely  making  a  crucial  choice  the  state  has  laid  before
5  him.  When  a  prosecutor  (or  state)  makes  a  promise  to  a
6  defendant,  <u>he  makes  a  statement  of  fact  about  the  future</u>  -
7  -  a  statement  of  what  he  and  other  state  officials  will  do
8  for  (or  to)  the  defendant  if  the  defendant  pleads  guilty.
9  Since  the  prosecutor  (or  state)  knows  that  the  defendant  will
10  rely  on  these  representations  in  deciding  to  plead  guilty,
11  he  has  a  strict  duty  to  see  that  the  representations  are
12  accurate.  Accordingly,  if  a  prosecutor  (or  state)  makes  a
13  promise  based  on  a  mistaken  perception  of  the  circumstances,
14  and  the  defendant  pleads  guilty,  the  prosecutor  (or  state)
15  cannot  avoid  their  obligation  simply  by  showing  that  the
16  promise  was  made  in  "good  faith."  Rather,  as  part  of  the
17  obligation  to  assist  the  defendant  in  making  a  meaningful
18  decision,  the  state  has  a  constitutional  obligation  to  avoid
19  mistakes,  and  to  anticipate  future  contingencies  before  making
20  such  solemn  representations.  ("Prosecutorial
21  misrepresentations,  though  made  in  good  faith,  ...  are  not
22  acceptable.  Ignorance  of  the  law  is  no  excuse  for  the
23  government  ..."  <u>Correale  v.  United  States</u>,  supra,  479  F.2d
24  at  947.)  Therefore,  it  is  not  enough  to  refrain  from
25  misleading  a  defendant  about  the  consequences  of  conviction;
26  instead,  the  state  has  an  affirmative  obligation  to  ascertain
27  and  disclose  to  the  defendant  with  a  reasonable  degree  of
28

1  certainty  the  actual  nature  of  his  alternatives,  **including**

2  **the consequences of a guilty plea**.

3

4  Petitioner  believes  he  has  now  answered  one  of  the  basic

5  questions  posed  at  the  outset.  The  requirement  that  guilty

6  pleas  be  "intelligent"  that  provides  a  constitutional  basis

7  for  the  enforcement  of  plea  agreements.  However,  the  crucial

8  question of remedy remains.

9  Ordinarily,  upon  a  showing  that  a  guilty  plea  is  not

10  "voluntary"  or  "intelligent,"  the  courts  order  that  the

11  conviction  be  reversed  and  the  plea  vacated.  (See,  e.g.,

12  **Martinez v. Mancusi**,  (1972)  409  U.S.  959,  966,  "where  broken

13  promise  renders  the  guilty  plea  invalid,  plea  should  be

14  vacated.";  **People  v.  Barajas**,  (1972)  26  Cal.App.3d  932,

15  "appropriate  remedy  for  breach  of  plea  bargain  is  withdrawal

16  of  the  plea";  **Commonwealth  v.  Wilkins**,  (1971)  442  Pa.  524,

17  277  A.2d  341,  "where  plea  bargain  is  not  kept,  the  trial  court

18  cannot  refuse  the  defendant's  motion  to  change  his  plea  to

19  not  guilty.")  This  remedy  of  vacatur,  which  is  equivalent

20  to  rescission,  presumably  returns  the  defendant  to  the  status

21  quo  ante.  The  defendant  then  can  reassess  the  alternatives

22  that  remain  open  and  make  an  informed  choice  about  which  is

23  in his "best interests."

24  In  **United  States  ex  rel.  Baker  v.  Finkbeiner**,  (1977)  551

25  F.2d  180,  where  a  defendant  had  entered  into  a  negotiated

26  plea  of  guilty  for  a  specific  sentence  and  was  neither  informed

27  prior  to,  or  during  the  bargaining  period,  nor  at  the

28

27

1   sentencing proceeding, that parole was statutorily required
2   as a penalty to be included as a part of the sentence, the
3   court stated:

4           "[W]e do not find the imposition of a two year
5            parole term to be an insignificant punishment.
6            We therefore hold that Baker's guilty plea
7            was unfairly induced in violation of the Due
8            Process Clause." **Baker**, supra, at p. 184. See,
9            also, 14th Amendment, U.S. Constitution.

10

11      With regard to the question of remedy, and necessity to
12  set right this impropriety, the **Baker**, supra, court also went
13  on to state:

14          "[U]nder the circumstances of this case, it
15           would be unjust to simply vacate the guilty
16           plea, which theoretically would allow the state
17           to reindict Baker. Since he has already
18           performed his side of the bargain, fundament
19           fairness demands that the state be compelled
20           to adhere to the agreement as well." (Emphasis
21           added). citing from Santobello, supra, 404
22           U.S. at 265.

23

24      Likewise, in **United States ex rel. Ferris v. Finkbeiner**,
25  (1977) 551 F.2d 185, where the trial court "uninformed and
26  "misinformed" defendant, the court therein stated at page 187:
27          "[S]ince Ferris has substantially begun

28

1  performing his side of the bargain, it would
2  not be fair to vacate the plea and require
3  him to go through the procedure anew.
4  Fundamental fairness can be had by limiting
5  his term of custody to that portion of the
6  sentence which comports with the bargain made."
7  (Emphasis added)

8

9  California courts have long recognized and established
10  standards for the use of negotiated pleas. California Penal
11  Code, § 1192.5 et seq:

12  "[W]here such a plea is accepted by the
13  prosecuting attorney in open court, and is
14  approved by the court, the defendant cannot
15  be sentenced on such a plea to a punishment
16  more severe than that specified in the plea,
17  and the court may not proceed as to such plea
18  other than that as specified in the plea."

19

20

21  Absent serious misrepresentations by the defendant in
22  obtaining a plea bargain, such as fraud in negotiating the
23  plea, California authority establishes entitlement to the
24  terms bargained for, or if said plea is violated, to withdraw
25  the plea or in having its conditions enforced. People v.
26  Flores, (1971) 6 Cal.3d 305; People v. Johnson, (1974) 10
27  Cal.3d 868; In re Lawler, (1979) 23 Cal.3d 190; People v.

28

## PRAYER FOR RELIEF

PETITIONER, HOA KHUU, does respectfully request that this Court review the foregoing petition, memorandum and exhibits which support the factual basis of this petition, and order the required counsel for representation, and then set a date for an evidentiary hearing.

In the alternative, the Court can order that the trial court resentence him without the use of the prior conviction and then sentence him according to the legally required sentence for the crime convicted of, and enhancements as befitting him, but without a second strike sentecing.

Petitioner is without remedy in the state court save by the granting of this habeas petition.

Petitioner prays that this Court will grant any furhter relief that is deemed proper, and expunge all references to the initial sentence from the record.

Dated: January 7, 2007.                    Respectfully submitted,


                                           _____
                                           HOA KHUU - PETITIONER

<u>VERIFICATION</u>

1

2  I, <u>HOA KHUU, V-58390</u>     , DO HEREBY STATE THAT THE FOREGOING

3  HABEAS CORPUS PETITION, MEMORANDUM, AND ATTACHED EXHIBITS

4  IS TRUE AND CORRECT TO THE BEST OF MY PERSONAL KNOWLEDGE AND BELIEF.  THIS

5  VERIFICATION IS GIVEN UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED

6  STATES AND THE STATE OF CALIFORNIA, PURSUANT TO CODE § 28 U.S.C. § 1746.

7

8  ANY COPIES OF DOCUMENTS ATTACHED HERETO AS EXHIBITS OR OTHER REASONS ARE

9  TRUE COPIES OF THE ORIGINALS.

10

12  ALL OF THE ABOVE STATEMENTS ARE TRUE AND CORRECT AND I AM WILLING TO

13  TSTIFY TO ANY SUCH STATEMENT IN A  COURT OF LAW.

14

15  PLEASE ACCEPT THIS AS A <u>CERTIFICATE OF COMPLIANCE</u> IF IT IS REQUIRED,

16  OR AS A <u>VERIFICATION</u>  OF THE TRUTH AND VALIDITY, BOTH COLLECTIVELY OR

17  <u>INDIVIDUALLY</u>.  Anything presented as either an exhibit or appendice

18  to or Opinion by another court is also validated under this

19  verification, and under penalty of law.

20

21  Dated: <u>JANUARY 6</u>    , 200 7,     Respectfully Submitted to the Court,

22

23

24  _____        _____
    Notice: <u>Houston v. Lack</u> (1988) [            Declarant  (signature)

25  487 U.S. 266, this document is [

26  deemed as "FILED" upon the    ]        <u>HOA KHUU</u>
                                              Printed name
27  date appearing on Officer's   [

28  receipt as Legal Mail & Dated ]

ORIGINAL

CALIFORNIA SUPREME COURT

EXHIBITS IS SUPPORT OF PETITION

(A THROUGH C)

In re HOA KHUU,                          Case No._____
  On Habeas Corpus.

FROM A CONVITION IN SAN MATEO
SUPERIOR COURT
NO. SC-056446

Petitioner:
Hoa Khuu, V-58390
CSP-Solano, 12-2450
P.O. Box 4000
Vacaville, CA 95696-4000

# EXHIBIT A

# FILED

1  MICHAEL J. YAMAGUCHI
United States Attorney

2

3  CHARLES B. BURCH
Chief, Criminal Division

4  GEOFFREY A. ANDERSON
Chief, Organized Crime Strike Force

5

6  BARBARA BRENNAN SILANO
Assistant United States Attorney
Organized Crime Strike Force

7

8      450 Golden Gate Avenue, 11th Floor
San Francisco, California  94102
Telephone:  (415) 556-0764

9

10  Attorneys for Plaintiff

11

12

13  UNITED STATES OF AMERICA,
                    Plaintiff,

14

             v.

15

16  HOA TRUNG KHUU

17                  Defendant.

18

19      The United States Attorney for the Northern District of

20  California (hereafter "the government"), and the defendant, (Hua

21  Trung Khuu), with the advice of counsel, hereby enter into the

22  following agreement pursuant to Rule 11(e)(1)(B) of the Federal

23  Rules of Criminal Procedure:

24      1.  (a)  The defendant will plead guilty to Count One of

25  the Indictment charging him with conspiring to obstruct commerce in

26  violation of 18 U.S.C. § 1951. In addition, the defendant will

SEALED BY COURT ORDER

JUN 6 - 1995

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
    RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _____
Date  8 27 84      Deputy Clerk

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Criminal Number:  CR 94-0350 MHP

PLEA AGREEMENT

COPY

EXHIBIT

plead guilty to Count Two charging him with conspiracy to knowingly
carry and use a firearm during the commission of a violent felony
in violation of Title 18 U.S.C. 371. The defendant is pleading
guilty because he is guilty, and agrees that the following facts
are true:

The defendant agreed and conspired with Tung Pham, George
Gatan, Billy Vang, Howson Nguyen and others to obstruct commerce by
robbery of a shipment of computer chips from Intel Corporation. To
that end, the defendant attended a meeting to develop the details
of the planned robbery summarized below:

On July 6, 1994, defendant was contacted by Howson
Nguyen and agreed to assist in a planned robbery of Intel
Computer chips from a shipment destined for Ireland.
Included as part of the plan was that Khuu would steal a
car for use in the robbery.

On July 7, 1994, Khuu stole a Honda vehicle License
2ZXL063 with the use of a screwdriver for use in the
robbery.

On 7/7/94 at approximately 9:00 A.M., Agents Wong and Siu
met, at the Lucky Penny Restaurant on Geary and Masonic,
San Francisco, with HOWSEN NGUYEN and TUNG PHAM. Present
with HOWSEN NGUYEN and TUNG PHAM were two Asian males
which the agents had never seen. The two Asian males
were identified as HOA KHUU and a juvenile male, Long
BUI. Agent Wong asked if KHUU and BUI "knew what was
going on" and "were they okay" and both NGUYEN and PHAM
said that they were okay and knew what was going on. The
agents discussed the robbery with NGUYEN and PHAM and
Agent Siu showed a hand drawn diagram showing the
supposed location of the planned robbery. HOWSEN NGUYEN
and TUNG PHAM discussed the robbery with the agents and,
it is believed, speaking in Vietnamese, among themselves.
HOWSEN NGUYEN instructed the agents to block the path of the
targeted truck (carrying the computer chips) with the
undercover van. TUNG PHAM concurred with HOWSEN NGUYEN's
instructions, stating that this arrangement had worked in
the past. The agents asked if tape (for restraining the
driver) had been brought and HOA KHUU stated that he had
the tape. During the meeting, in KHUU'S presence,
defendant Howson Nguyen discussed holding a gun to the
driver's head as part of the plan. Agent Siu asked how
many guns had been brought and PHAM stated that they had
brought two. PHAM then discussed what should be done

**PLEA AGREEMENT**

2

with the driver of the van and asked, do you want me to
take him.  The agents asked if anyone else had come along
beyond the four individuals who were present in the
restaurant.  HOWSEN NGUYEN stated that they had brought
one more person along for the job and he was outside.
The fifth person in the car was later identified as David
NGUYEN.  It was determined that two cars had been used  to
transport the five individuals to the Lucky Penny.

As the agents and the four individuals in the
restaurant were preparing to leave, Agents Siu and Wong
gave the signal to execute the arrests.  NGUYEN, PHAM,
HOA, and BUI were immediately arrested.  At the same
time, David NGUYEN was arrested in a white Jeep Cherokee,
license 3DYS966 which was parked in the lot outside the
restaurant.  Agents had earlier surveilled the arrival  of
the Jeep Cherokee and observed NGUYEN and PHAM exiting
the vehicle and David NGUYEN remaining in the car.
Agents also surveilled HOA and BUI exiting a white Honda
Accord, license 2ZXL063.  It was subsequently determined
that the Honda Accord was stolen.  David NGUYEN was lying
in the back seat of the Jeep Cherokee.  Agents discovered
two firearms (Astra, A-70, .40 caliber, Serial Number
X9755, with a fully loaded magazine and a Jennings, Bryco
59, 9mm, serial number 601014, also loaded) in the back
storage area of the Cherokee.

The firearms had been brought by Tung Pham and Howsen
Nguyen for use in the planned robbery.

In addition to the two firearms, agents recovered
the following items from the Jeep Cherokee: (a) tape;  (b)
6 pairs of surgical gloves; (3) a rope; and (4) a
Harrington and Son, GAT model dart gun.

2.  The defendant understands that Count One of the

Indictment carries the following penalty:  a maximum penalty of

twenty (20) years imprisonment, a $250,000 fine, a $50 special

assessment, a period of supervised release following any sentence

of imprisonment, and restitution.  The defendant further

understands that Count Two of the Indictment carries the following

penalty: a mandatory consecutive five year sentence.  The defendant

understands that he will not be eligible for parole during any term

of imprisonment imposed.  The defendant further understands that

PLEA AGREEMENT

3

1   the sentence to be imposed is within the sole discretion of the

2   Court.

3          3.  The defendant acknowledges that he has had all of his

4   rights explained to him and expressly recognizes that he has the

5   following rights:

6          a.   The right to plead not guilty and persist in
               that plea.
7
8          b.   The right to a speedy and public jury trial.

9          c.   The right to assistance of counsel at that
               trial and in any subsequent appeal.
10

11         d.   The right to remain silent at trial.

12         e.   The right to testify at trial.

13         f.   The right to confront and cross-examine
               government witnesses.

14         g.   The right to present evidence and witnesses in
               his own behalf.

15         h.   The right to compulsory process of the court.

16         i.   The right to be presumed innocent.

17         j.   The right to a unanimous guilty verdict.

18         k.   The right to appeal a guilty verdict.

19  The defendant further understands that he waives each and every one

20  of the above rights by pleading guilty pursuant to this Plea

21  Agreement, and it is his knowing and voluntary intention to do so.

22  Defendant further acknowledges that if a guilty plea is accepted in

23  this case there will not be a trial of any kind.

24          The defendant also agrees to waive his right to appeal

25  any sentence within the sentencing guideline range which the

26  parties have agreed to in paragraph 10.

**PLEA AGREEMENT**

4

AUG-27-2004 11:46 FROM                     TO  916503634873                P.06 52

152

4.  The defendant acknowledges that the sentence to be
imposed for this offense is governed by the Sentencing Guidelines
(the "Guidelines") as promulgated by the Sentencing Commission
under the Sentencing Reform Act of 1984.

The defendant acknowledges that he has thoroughly
discussed with his lawyer the effect of the Guidelines with respect
to the entry of his guilty plea.

5.  This agreement is not binding upon the court or the
probation office.  Both the court and the probation office will
make their own determinations pursuant to the Guidelines as to the
appropriate sentence.  The defendant further acknowledges that the
Court's determination will be based upon, among other things, an
independent recommendation by the United States Probation Officer,
who will prepare a presentence report in this case.  The defendant
understands that the court will make the final decision as to how
the Sentencing Guidelines apply and what sentence will be imposed.
The government retains the right to provide to the court and the
probation office all information and evidence in its possession
regarding either the facts concerning this case or the defendant,
and the applicable law.

6.  The parties agree that if the defendant meets the
criteria set out in U.S.S.G. §§ 3E1.1(a) and (b), relating to
acceptance of responsibility and does not otherwise violate this
plea agreement, the government will not oppose a two point
reduction in the base offense level.

7.  The defendant acknowledges that defense counsel has

**PLEA AGREEMENT**

5

AUG-27-2004  11:46  FROM                    TO  916503E34B73          P.07/32

153

advised him of the nature of the charges, any possible defenses to
the charges, and the nature and range of possible sentences.    The
defendant is satisfied that his defense counsel has provided
competent representation.

     8.   The defendant specifically agrees that:

          (a)  A special assessment of $(100 ms) will be imposed
as part of the sentence.  The defendant will pay the special
assessment before or at the time of the sentence.

          (b)  The defendant agrees that he shall truthfully
disclose all information with respect to the activities of himself
and others concerning all matters about which the United States, or
any State inquires of him, and, further, shall testify truthfully
and completely when properly subpoenaed before the grand jury
and/or at any trial or proceeding with respect to any matters about
which the United States or any State may request his testimony.

          (c)  It is further understood and agreed that the
United States will not use any such testimony and information to be
provided by the defendant, or information derived therefrom either
directly or indirectly, except for perjury and false swearing.  It
is understood that the Government's forbearance from prosecution is
conditioned upon testimony and information being complete and
truthful.

          (d)  It is further understood and agreed that the
defendant shall at all times give complete, truthful and accurate
information and testimony.  Should it be proved by the Government,
by a preponderance of evidence, that he either has intentionally

PLEA AGREEMENT                            6

1   given false, incomplete or misleading testimony or information, he

2   shall thereafter be subject to prosecution for any federal criminal

3   violation of which the United States has knowledge.  Any such

4   prosecutions may be premised upon any information, statement or

5   testimony provided by him and such information, and leads derived

6   therefrom, may be used against him.

7           (e)  In consideration of the full, complete truthful

8   cooperation with federal and state law enforcement officials, the

9   United States will fully and accurately disclose the extent of the

10  defendant's cooperation to the Court, Probation Office and to

11  whatever appropriate agency the defendant designates.

12          (f)  the defendant will not move for a downward

13  departure.

14      9.  In exchange for this agreement, the United States

15  Attorney for the Northern District of California agrees as follows:

16          (a)  It will not file any additional criminal

17  charges for offenses known to the government arising out of the

18  investigation conducted by the government, leading up to the filing

19  of this Indictment and this Plea Agreement.  Such promise of non-

20  prosecution does not foreclose any prosecution for an act of

21  murder, attempted murder, or act of physical violence against the

22  person of another, or conspiracy to commit any such act of

23  violence.

24          (b)  It will move to dismiss the remaining counts in

25  the Indictment at the time of sentencing.

26          (c)  If it is determined by the Office of the United

PLEA AGREEMENT

7

1    States Attorney for the Northern District of California that the

2    defendant has provided substantial assistance in the investigation

3    or prosecution of another individual or individuals, the United

4    States will file a motion pursuant to 5K1.1 of the guidelines for a

5    reduction in the defendant's sentence.

6              (d)  No promises are made with respect to the

7    calculation of defendant's criminal history category.

8              (e)  The defendant reserves the right to make an

9    allocution at the time of sentencing without any limitation as to

10   either what sentence the Government may recommend, or as to what

11   the defendant may state except as mentioned above.

12             (f)  The United States reserves the right to

13   allocute in its full discretion at the time of sentencing without

14   limitations as to what sentence the United States may recommend

15   except as stated in the agreement herein. Further, the United

16   States retains the right to correct any misstatements of fact or

17   misstatements of law submitted by the defense or found in the

18   presentence report notwithstanding any other provision of this

19   agreement.

20             (c)  It will not move for an upward departure in

21   this case.

22        10.   The parties agree that the following Sentencing

23   Guideline computations apply to this case.

24             (a)  The base offense level is a level 20 for 18

25   U.S.C. 1951 pursuant to 2B3.1 of the Guidelines.

26             (b)  That with respect to the specific offense

**PLEA AGREEMENT**

8

characteristics, there are the following agreements between the parties:

    1) that by virtue of his plea to Count Two, base offense level for the Hobbs Act should **not** increase by 5 levels, pursuant to 2K2.4 and Commentary; Application Note. 2.

    (c)  As to the other possible specific offense characteristics for 2B3.2, each party is free to argue to the Court and to probation as to which characteristics may or may not increase the base offense level in this case.

    (d)  Further, with respect to any possible adjustment for role in the offense pursuant to 3B1.1 or 3B1.2, the government agrees to recommend that the defendant's offense level should be reduced by two (2) levels as he was a minor participant.

    11.  The defendant acknowledges and agrees that this plea agreement may be filed under seal and become a part of the record in this case.

    12.  The defendant is entering his guilty plea freely and voluntarily, and not as the result of force, threats, assurances, or promises other than the promises contained in this agreement.

    13.  In signing this agreement, the defendant is not under the influence of any drug, medication, liquor, intoxicant or depressant, and is fully capable of understanding the terms and condition of this plea agreement.

    14.  All promises here made by each party are made dependent on full performance of the promises made by the other

PLEA AGREEMENT

9

party.  Any promise regarding the government's sentencing recommendation applies only to the sentencing upon this Indictment and does not apply, for example, to any future proceedings relating to an alleged violation of probation, a violation of parole, or a violation of supervised release.  This agreement binds only the United States Attorney's Office for the Northern District of California and does not bind any other local, state or federal prosecuting authority.

15.  If the defendant commits any crimes, violates any of the conditions of his release, or violates any term of this agreement between signing this agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the probation officer or the court which is intentionally misleading or intentionally incomplete or untruthful, the United States will be free to recommend at sentencing on the charges to which the defendant has pleaded guilty, a sentence higher than that contemplated by this agreement.  If the government pursues this course, the defendant will not be free to withdraw his guilty plea entered pursuant to this plea agreement.  Furthermore, in such an instance, the government will be free to charge, reinstate or otherwise pursue any and all charges which could have been brought but for this plea agreement.

16.  The defendant agrees that, if any applicable provision of the Sentencing Guidelines changes after entry of this plea agreement, any request by the defendant to be sentenced pursuant to the changed guideline will release the government from its

**PLEA AGREEMENT**

10

1   obligation to follow the sentence recommendation specified above.

2   In such a circumstance, the government will be free to recommend

3   any sentence it deems appropriate, including an upward departure,

4   and will be free to argue that any other adjustments apply.

5   The defendant will not be free to withdraw his/her guilty plea.

6          17.   The defendant also agrees to waive his

7   constitutional rights under the Double Jeopardy clause as to any

8   (prior or subsequent) forfeiture proceedings (civil, criminal or

9   administrative) arising out of the same offense(s) charged in the

10  indictment in this case.

11         18. If the defendant's guilty plea is rejected,

12  withdrawn, vacated, or reversed by any court in a later proceeding,

13  the government will be free to prosecute that defendant for all

14  charges as to which it has knowledge, including giving false

15  declarations before a grand jury. Further, any charges which have

16  been dismissed because of this plea agreement will be automatically

17  reinstated.  In such event, the defendant waives any objections,

18  motions, or defenses based upon the Speedy Trial Act or the Sixth

19  Amendment to the Constitution as to the delay occasioned by the

20  later proceedings.

21         19.   The defendant understands the government's

22  obligation to provide all information in its file regarding each

23  defendant to the United States Probation Office and the Court.

24  ///

25  ///

26  ///

PLEA AGREEMENT

11

1    ///

2         20.   This agreement constitutes all the terms of the plea

3    bargain between the government and the defendant, and the

4    government has made no other representations to the defendant or

5    his attorney.

6    DATED:

7

8

9                          Respectfully submitted,

10                         MICHAEL J. YAMAGUCHI
                          United States Attorney
11

12

13                         BARBARA BRENNAN SILANO
                          Assistant U. S. Attorney
14

15

16

17

18

19

20

21

22

23

24

25

26

**PLEA AGREEMENT**                            12

## WAIVER OF DEFENDANT'S RIGHTS

I have consulted with my attorney and fully understand all my rights with respect to the offenses charged in the pending Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I understand this agreement and I voluntarily agree to it.

I have read each of the provisions of the entire plea agreement with the assistance of counsel. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty, I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a

**PLEA AGREEMENT**

13

voluntary act on my part, rather than at the direction of or
because of the recommendation of any other person, and I agree to
be bound according to its provisions.    I fully understand that, if
I am granted probation by the Court, the terms and conditions of
such probation are subject to modification at any time during the
probation period.    I further understand that, if I violate any of
the conditions of my probation, my probation may be terminated, and
I may be required to serve a term of imprisonment or my sentence
may otherwise be altered in accordance with Title 18, United States
Code, Section 3565.

I agree that this written plea agreement contains all the
terms and conditions of my plea and that promises made by anyone
(including my attorney) that are not contained within this written
plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented
me in a competent manner.

I am not now on or under the influence of any drug,
medication, liquor, or intoxicant or depressant, and I am fully
capable of understanding the terms and conditions of this plea
agreement.

DATED: June 5 , 1995    X _____
                                Defendant
                           HOA KHUU

**PLEA AGREEMENT**                    14

1 62

### DEFENSE ATTORNEY APPROVAL

I am _MANTON SELBY_ attorney. I have fully explained to him his rights with respect to the offenses charged in the pending Indictment. Further, I have reviewed the provisions of those Guidelines which may apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Rule 11 of the Federal Rules of Criminal Procedure, the constitutional and other rights of any accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea. No assurances, promises, or representations have been given to me or to the defendant by the government or by any of its representative which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Rule 11 of the Federal Rules of Criminal Procedure.

DATED: _6/5/95_                   _MrntSelby_
                                  _____
                                  Attorney for Defendant

I, Hong Ha, The Vietnamese Interpreter has translated this document to Mr. Khuu, the defendant **PLEA AGREEMENT** in this case, to the best of my knowledge and my ability.   _Ha_

15

# EXHIBIT B

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _____
Date _____ Deputy Clerk

1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,    )    NO. CR-94-0350 MHP
                                  )
11            Plaintiff,          )    JUDGMENT
                                  )
12        -vs.-                   )
                                  )    Defendant's Attorney:
13   TRUNG HOA KHUU,              )    Martin Selby
                                  )
14            Defendant.          )    Assistant U.S. Attorney:
                                  )    Barbara Silano
15   _____

16

**COPY**

SEALED BY ORDER
OF COURT

SEALED
BY COURT ORDER

EXHIBIT



FILED
Nov 12  7 54 AM '96
RICHARD W. WIEKING
U.S. DISTRICT COURT
NO. DIST. OF CA

164

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR-94-0350 MHP |
| Plaintiff, | JUDGMENT |
| —vs.— | Defendant's Attorney: |
| TRUNG HOA KHUU, | Martin Selby |
| Defendant. | Assistant U.S. Attorney: |
| | Barbara Silano |

The defendant (has entered a plea of guilty) (has been found guilty by verdict/finding) of count(s) 1+2 of the (Superseding Indictment) (Information) Defendant has acknowledged that she/he has fully read and is familiar with the Presentence Investigation Report. Defendant was afforded his right of allocution. The attorneys for the defendant and the government state there is no legal cause why the defendant should not be sentenced.

This court has reviewed the Presentence Investigation Report and Recommendation, reviewed the applicable Guidelines, considered the written (if any) and oral

AUG-27-2004  11:48  FROM                        TO  9165036348?3        P.19/32

arguments of counsel and the allocution statement of

defendant.

Accordingly, the defendant is adjudged guilty of such

count(s), which involve the following offenses:

| Title<br>& Section | Nature<br>of Offense | Date Offense<br>Concluded | Count<br>Number(s) |
|---|---|---|---|
| 18 U.S.C.,<br>§§ 2 and 1951 | Aiding and<br>Abetting<br>Conspiracy to<br>Obstruct | 7/7/94 | 1 |
| 18 U.S.C.,<br>§ 317 | Conspiracy to<br>Use a Firearm<br>to Commit a<br>Felony | 7/7/94 | 2 |

The defendant is sentenced as provided in pages 2

through 12 of this Judgment.    The sentence is imposed

pursuant to the Sentencing Reform Act of 1984.

(The defendant has been found not guilty on count(s)

and is discharged as to such count(s).)

All remaining counts, if any, are dismissed on the

motion of the United States.

IT IS ORDERED that the appearance bond filed herein, if

any, shall be exonerated.

IT IS ORDERED that the appearance bond filed herein is

hereby exonerated upon confirmation of the surrender of the

defendant.

Defendant's Soc. Sec. Number:  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

Defendant's Date of Birth:  12/4/74

Defendant's Mailing Address:  U.S. Marshal's Service

2

AUG 27 2004 11:58

Defendant's Residence Address:  Same as above

Date of Imposition of Sentence:  10/15/96

## APPLICABLE GUIDELINE RANGE

The court finds that the applicable guideline range is ~~(correctly stated)~~ (modified as explained below from the range set forth) in the Presentence Investigation Report and is:

Cts. 1 & 2:    ~~100-125~~  77-96  months of imprisonment,

Cts. 1 & 2:    2-3        years of supervised release,

Cts. 1 & 2:    ~~$13,500-125,000~~  10,000 - 100,000  fine

other.

_See below_

## STATEMENT OF REASONS

The parties have had an opportunity to review and object to the factual findings and guideline application in the presentence report. The court has considered the objections, if any, and adopts the findings and guideline application except as follows:

3

1

2    *The court finds that the nature of defendant's*

3    *prior offenses and the fact he was a*

4    *juvenile at the time of those convictions*

5    *overrepresents his criminal conduct*

6    *and the criminal history category*

7    *is reduced to a level II. The court*

8    *denies defendant's motion to modify the*

9    *role in the offense and acceptance of*

10   *responsibility for the reasons stated on*

11   *the record in the court's tenth order.*  The sentence is within the guideline range, that range

12   exceeds 24 months, and the sentence is imposed for the

13   following reason(s):

14   *Sentence imposed at the low end of the*

15   *range in view of defendant's age*

16

17

18       The sentence departs (~~upward~~) (downward) from the

19   guideline range for the following reason(s):

20   *Pursuant to the government's motion*

21   *under U8S § 5K1.1 for defendant's*

22   *cooperation, the sentence is reduced*

23   *by 24 months.*

24

25

26

27                              4

28

1

2                    **IMPRISONMENT**

3            The defendant is hereby committed to the custody of the

4      United States Bureau of Prisons to be imprisoned for a term

5      of _53 months. The court recommends Defendant_

6      _receive credit for time served._

7            The court makes the following recommendation to the

8      Bureau of Prisons: _On appropriate level facility a close_

9      _to defendant's place of residence as possible. The_

10     _court also recommends that Bureau of Prisons investigate_

11     _whether defendant is eligible based for the remainder of_

12     ~~The defendant shall surrender for service of sentence at~~

13     the institution designated by the ~~Bureau of Prisons~~ before

14     2:00 p.m. on _____ (as notified by the United

15     ~~States Marshal.)~~

16            (The defendant is remanded to the custody of the United

17     States Marshal.)

18            (~~The defendant shall surrender to the United States~~

19     ~~Marshal for this district at _____ m. on _____.~~

20     + _of his sentence (approximately 24 months) for_

21     _the short incarceration program under 85 F1.7,_

22                    **SUPERVISED RELEASE**

23            Upon release from imprisonment, the defendant shall be

24     on a supervised release term of _3_ years subject to the

25     terms and conditions set forth on pages 7-10 of this Judgment

26     and any additional conditions specified below.

27            The defendant shall report in person the probation

28     office in the district to which the defendant is released

5

For the Northern ... of California

1
2    within 72 hours of release from the custody of the Bureau of
3    Prisons.
4        The defendant shall pay any fines that remain unpaid at
5    the commencement of the term of supervised release.
6
7        The defendant shall comply with the following additional
8    conditions: _Shall not associate with persons_
9    _involved in criminal activity, including "gangs" or his_
10   _co-defendants)._
11
12                          ~PROBATION~
13       The defendant is hereby placed on probation for a term
14   of _____ subject to the terms and conditions set
15   forth on pages 7-10 of this Judgment and any additional
16   conditions specified below.
17       The defendant shall comply with the following additional
18   conditions: _____
19
20
21
22
23
24
25
26
27                              6
28

170

## STANDARD CONDITIONS OF ~~PROBATION/~~SUPERVISION

While defendant is on ~~probation or~~ supervised release pursuant to this Judgment, the defendant shall not commit another federal, state or local crime.  In addition:

1)    The defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five (5) days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family obligations;

5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;

6)    the defendant shall notify the probation officer within 72 hours of any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

7

AUG-27-2004 11:48 FROM                    TO  916503634873        P.25/32

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity, persons who possess, distribute or traffic in narcotics or other controlled substances, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours (72) of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

8

AUG-27-2004  11:49  FROM                    TO  916503634873          P.26/32

172

14)  *if the Probation Officer determines defendant is doing drugs (he shall not require)* defendant ~~shall~~ participate in a drug ~~treatment~~ program approved by the probation officer and on such terms and conditions as are required by the officer, including residential treatment if deemed necessary by the probation officer.

15)  defendant shall submit to drug or alcohol detection tests as required by the probation officer;

16)  in addition to or instead of the requirement in paragraph 15), defendant shall submit to at least one drug test within fifteen (15) days of release on probation or supervised release and at least 2 drug tests thereafter as set and reuqired by the probation officer in accordance with 18 U.S.C. § 3563(a)(4) or § 3583(d);

17)  defendant shall submit her/his person, residence, vehicle *but not limited to* or other property to a search for drugs or other *such as computer chips and weapons* contraband, upon reasonable request by the probation officer;

18)  defendant shall participate in such mental health treatment program(s) as the probation officer may require;

19)  defendant shall not possess, own, or use any firearm or deadly or dangerous weapon and shall submit her/his person, residence, vehicle or other property to a search for same upon reasonable request by the probation officer;

20)  defendant shall submit to the probation officer any and all financial information, including but not limited to

9

books, records, tax returns, bank account records, credit and
loan account records, and financial statements, required by
the officer at such times and on such conditions as are set
by the officer.

These conditions are in addition to any other conditions
imposed by this Judgment.

### FINE

The defendant shall pay a fine of $ _____*none*_____. The
fine includes any costs of incarceration and/or supervision.
The amount is the total of the fines imposed on
individual counts, as follows:  _____

_____

_____

This fine plus any interest required shall be paid:

In full immediately.

In full not later than _____.

In equal monthly installments over a period of _____
months.   The first payment is due on the date of this
judgment.  Subsequent payments are due monthly thereafter.

In installments according to the following schedule of
payments:

1.    During the period of incarceration, as determined
by the Bureau of Prisons, under the Inmate Financial
Responsibility Program.

10

2.    During the period of supervised release, any balance that remains unpaid, at the direction of the Probation Office.

3.    Defendant's obligation to pay this fine will continue even after supervised release is completed.

The court has determined that the defendant does not have the ability to pay interest.  It is ordered that:

1.    The interest requirement is waived.

2.    The interest requirement is modified as follows:

_____

_____

_____

If the fine is not paid, the court may sentence the defendant to any sentence which might have been imposed originally. See 18 U.S.C. § 3614.

The fine shall be paid in the following manner:

_____

_____

_____

OR

The court finds that the imposition of a fine is not consistent with the purposes of the sentencing guidelines and

will not serve any purposes of the guidelines.  Therefore, a fine is not imposed.

11

175

1

2                                OR

3        The court finds that the defendant does not have the

4    ability to pay a fine, costs of incarceration or supervision,

5    and, therefore, no fine or costs are imposed.

6

7                            RESTITUTION

8        The defendant shall pay restitution to the following

9    persons in the following amounts:

10   Name of Payee                    Amount of Restitution

11   None

12

13

14

15       Payments of restitution are to be made  to (the United

16   States Attorney for transfer to the payees(s)) (through the

17   United States Probation Officer on such terms and conditions

18   as the Probation officer directs).

19                             OR

20       Restitution shall be paid as follows:

21

22

23

24       This Judgment shall operate as an order and judgment of

25   restitution enforceable under 18 U.S.C. § 3663(h).

26       IT IS ORDERED that the defendant shall pay a special

27                            12

28

176

assessment of $ _50.⁰⁰_ , for each count _1 & 2_ for a total of $ _100.⁰⁰_ , which shall be ~~due~~ *paid through the Inmate Financial Responsibility Account*

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.

Signature of Judicial Officer _____

Name & Title of Judicial           Marilyn Hall Patel
Officer                            United States District Judge

Date:   NOV 1 2 1996

13

# EXHIBIT C

(ENDORSED)
**FILED**
SAN MATEO COUNTY

NOV 2 7 2006

Clerk of the Superior Court
By ___ GRACE LACEY
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

In re:                                    Case No. SC-56446 A
                                                   HC-1825

HOA TRUNG KHUU

On Habeas Corpus.                **ORDER OF DENIAL**



The Court has received and reviewed the petition for writ of habeas corpus of Petitioner, Hoa Trung Khuu, filed October 16, 2006.   The petition is hereby denied.

## FACTS AND ALLEGATIONS

In 2004, Petitioner was convicted by a jury of two counts of first degree burglary (PC § 460(a)), one count of attempted first degree burglary (PC § 664/460(a)), and two counts of receiving stolen property (PC § 496(a)) in the above mentioned case.   The court found true allegations of a prior strike (PC § 1170.12(c)(1)) and a prior serious felony (PC § 667(a)), each of which was based on an allegation that Petitioner suffered a federal robbery conviction (18 USC § 1951) in 1994.

Petitioner complains that the federal robbery conviction could not be used to enhance his sentence because the plea

1

EXHIBIT

1  agreement resulting in that conviction[1] did not mention any

2  future use of the prior, and it had been stipulated that, in

3  return for the guilty plea in that case, the conviction could

4  not be used as a prior in the future.  He requests that the

5  court release him or permit him to withdraw his plea.

6

7                **THE USE OF THE PRIOR WAS PROPER**

8

9      Petitioner cites <u>Santobello v. New York</u> (1971) 404 U.S.

10  257 and its progeny for the proposition that he is entitled to

11  the enforcement of the terms of his 1994 plea agreement.

12  However, these cases do not require that the judgment in the

13  instant case be disturbed.  The contract specifically indicated

14  that the state was not bound to its terms (See Plea Agreement

15  at 10:5-8); however, in any case, nothing in the plain language

16  of the plea agreement states that the robbery conviction could

17  not be used as a prior conviction to enhance a sentence in any

18  subsequent case.  Indeed, the agreement applied only to the

19  indictment at issue in that case (<u>Id</u>. at 1-5).  The plea

20  agreement is not ambiguous on this point.  In sum, because the

21  1994 plea agreement did not forbid the state of California from

22  using the conviction to enhance a subsequent sentence, the use

23  of the federal robbery conviction to enhance Petitioner's

24  sentence in the instant case was not unlawful.

25  ///

26  ///

27

28
_____

     [1] A copy of the plea agreement at issue is attached to the petition.

                                2

1
2

# CONCLUSION

3       When a petition for writ of habeas corpus fails to reveal
4   sufficient facts which, if true, would establish a prima facie
5   case for relief, summary denial is appropriate.  (In re Clark
6   (1993) 5 Cal.4th 750, 769.)  For the foregoing reasons, the
7   petition for writ of habeas corpus is denied.

8
9

10  DATED:  _____NOV 2 1 2006_____       _____
                                         Craig L. Parsons
11                                       Presiding Judge, Criminal
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION AND PROOF OF SERVICE BY MAIL

I, DONALD WALKER, K-07242   , DECLARE, under penalty of perjury, that I am over the age of 18 years, ( XX ) and not a party, or (   ) am a party to this action, and reside in Solano County, at P.O. Box 4000, (Cell # 12-150    ) Vacaville, California, 95696-4000.

That on JANUARY     , 11 -, 200 7 , I deposited in the United States Mail at California State Prison- Solano, Vacaville, California, A true copy of the attached hereof:

PETITION FOR WRIT OF HABEAS CORPUS, MEMORANDUM, AND EXHIBITS;

_____

_____

_____

The documents were placed in a sealed envelope with sufficient postage and addressed to :

CALIFORNIA SUPREME COURT
C/O COURT CLERK
350 MC ALLISTER STREET
SAN FRANCISCO, CA 94102
/           /           /

OFFICE OF ATTORNEY GENERAL
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
/      /           /

I verify that these words are true and will testify to these words under the penalty of perjury that the foregoing is true and correct. This declaration was executed on this JANUARY    , 11 , 200 7 , at CSP-Solano, Vacaville, California, 95696-4000.

_____
DECLARANT

# EXHIBIT 8

# CALIFORNIA APPELLATE COURTS

## Case Information



Supreme
Court

Welcome

Search

E-mail

Calendar

Help

Opinions

C|C
home

## Supreme Court

Court data last updated: 07/24/2008 01:53 PM

**Case Summary    Docket    Briefs**
**Disposition    Parties and Attorneys    Lower Court**

## Docket (Register of Actions)

**KHUU (HOA) ON H.C.**
**Case Number S149466**

| Date | Description | Notes |
|------|-------------|-------|
| 01/16/2007 | Petition for writ of habeas corpus filed | Hoa Khuu, Petitioner Pro Per |
| 09/25/2007 | Petition for writ of habeas corpus denied | |

**Click here** to request automatic e-mail notifications about this case.

© 2007 Judicial Council of California