EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
CHRISTOPHER J. WEI, State Bar No. 78958
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5867
 Fax:  (415) 703-1234
 Email:  Christopher.Wei@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **HOA TRUNG KHUU,** | C 07-6351 SI (pr) |
| Petitioner, | |
| **v.** | |
| **JOHN TILTON, CDCR Secretary,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE                                                        1

STATEMENT OF FACTS                                                           2

ARGUMENTS                                                                    6

    I.     THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE
          SENTENCES DID NOT VIOLATE PETITIONER'S FEDERAL
          CONSTITUTIONAL RIGHTS                                       6

          A.   Procedural History                                     6

          B.   Granting Relief On Petitioner's Claim Would Impermissibly Create A New
              Rule On Collateral Review                              6

          C.   The California Courts Did Not Unreasonably Apply Any Clearly
              Established Supreme Court Precedent In Denying Petitioner's Claim    8

    II.    PETITIONER FAILS TO ESTABLISH THAT HIS SIXTH
          AMENDMENT RIGHT TO COUNSEL WAS VIOLATED                    12

    III.   THE USE OF PETITIONER'S PRIOR FEDERAL CONVICTION
          TO ENHANCE HIS SENTENCE DOES NOT VIOLATE
          PETITIONER'S DUE PROCESS RIGHTS                           15

CONCLUSION                                                                  17

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

5
*Apprendi v. New Jersey*
530 U.S. 466 (2000)                                                      9-11

6
*Arredondo v. Ortiz*
365 F.3d 778 (9th Cir. 2004)                                                7

7
*Auto Equity Sales, Inc. v. Superior Court*
8
57 Cal.2d 450 (1962)                                                        6

9
*Beard v. Banks*
542 U.S. 406 (2004)                                                         7

10
*Black v. California*
11
128 S. Ct. 1063 (2008)                                                      9

12
*Blakely v. Washington*
542 U.S. 296 (2004)                                                    6, 9-11

13
*Bowen v. Roe*
14
188 F.3d 1157 (9th Cir. 1999)                                               7

15
*Butler v. Curry*
528 F.3d 624 (9th Cir. 2008)                                                8

16
*Caspari v. Bohlen*
17
510 U.S. 383 (1994)                                                      6, 7

18
*Cunningham v. California*
549 U.S. 270, ___
19
127 S. Ct. 856
166 L. Ed. 2d 856 (2007)                                              6, 8-11

20
*Davis v. Woodford*
21
446 F.3d 957 (9th Cir. 2006)                                               15

22
*Graham v. Collins*
506 U.S. 461 (1993)                                                         7

23
*Hall v. State*
24
823 So.2d 757 (Fla. 2002)                                                  10

25
*Hayes v. Brown*
399 F.3d 972 (9th Cir. 2005)                                                7

26
*Hudson v. Rushen*
27
686 F.2d 826 (9th Cir. 1982)                                               15

28

**TABLE OF AUTHORITIES**  (continued)

1

**Page**

2

3

*In re Jackson*
170 Cal.App.3d 773 (1985)                                              13

*Johnson v. Texas*
509 U.S. 350 (1993)                                                     7

*Lewis v. United States*
902 F.2d 576 (7th Cir. 1990)                                           16

*Lindh v. Murphy*
521 U.S. 320 (1997)                                                     9

*Morris v. Slappy*
461 U.S. 1 (1983)                                                      14

*People v. Black*
35 Cal.4th 1238 (2005)                                              6, 10

*People v. Black*
41 Cal.4th 799 (2007)                                               9, 11

*People v. Mullane*
182 Cal.App.2d 765 (1960)                                             13

*People v. Reeder*
152 Cal. App.3d 900 (1984)                                            10

*People v. Superior Court* (*Romero*)
13 Cal.4th 497 (1996)                                                 12

*People v. Wagener*
752 N.E.2d 430 (Ill. 2001)                                            10

*Personal Restraint of VanDelft*
147 P.3d 573 (Wash. 2006)                                             11

*Plumlee v. Masto*
512 F.3d 1204 (9th Cir. 2008)                                         15

*Price v. Vincent*
538 U.S. 634 (2003)                                                    8

*Saffle v. Parks*
494 U.S. 484 (1990)                                                    8

*Schell v. Witek*
218 F.3d 1017 (9th Cir. 2000)                                         14

*Schriro v. Summerlin*
542 U.S. 348 (2004)                                                    8

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**  (continued)

1

2

**Page**

3    *Smylie v. State*
     823 N.E.2d 679 (Ind. 2005)      11

4

5    *State v. Abdullah*
     878 A.2d 746 (N.J. 2005)      11

6    *State v. Bramlett*
     41 P.3d 796 (Kan. 2002)      10

7

8    *State v. Cubias*
     120 P.3d 929 (Wash. 2005)      10

9    *State v. Foster*
     845 N.E.2d 470 (Ohio 2006)      11

10

11    *State v. Higgins*
     821 A.2d 964 (N.H. 2003)      10

12    *State v. Ice*
     170 P.3d 1049 (Ore. 2007)      11

13

14    *State v. Jacobs*
     644 N.W.2d 695 (Iowa 2001)      11

15    *State v. Kahapea*
     141 P.3d 440 (Haw. 2006)      10

16    *Teague v. Lane*
     489 U.S. 288 (1989)      6-8

17

18    *Torrey v. Estelle*
     842 F.2d 234 (9th Cir. 1988)      16

19

20    *United States v. Angle*
     254 F.3d 514 (4th Cir. 2001)      10

21    *United States v. Booker*
     543 U.S. 220 (2005)      9, 11

22

23    *United States v. Brownlie*
     915 F.2d 527 (9th Cir.1990)      16

24    *United States v. Buckland*
     289 F.3d 558 (9th Cir. 2002)      9

25    *United States v. Campbell*
     279 F.3d 392 (6th Cir. 2002)      10

26

27

28

Mem. of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)

**TABLE OF AUTHORITIES**  (continued)

Page

*United States v. Castro*
972 F.2d 1107 (9th Cir. 1992)                    14

*United States v. Chavez-Huerto*
972 F.2d 1087 (9th Cir. 1992)                    16

*United States v. Chorin*
322 F.3d 274 (3rd Cir. 2003)                     9

*United States v. Feola*
275 F.3d 216 (2d Cir. 2001)                      10

*United States v. Fifield*
432 F.3d 1056 (9th Cir. 2005)                    11

*United States v. Garrett*
179 F.3d 1143 (9th Cir. 1999)                    13

*United States v. Garrett*
680 F.2d 64 (9th Cir.1982)                       16

*United States v. Harrison*
340 F.3d 497 (8th Cir. 2003)                     9

*United States v. Hernandez*
330 F.3d 964 (7th Cir. 2003)                     9

*United States v. Hicks*
389 F.3d 514 (5th Cir. 2004)                     9

*United States v. Lafayette*
337 F.3d 1043 (D.C. Cir. 2003)                   9

*United States v. Lambros*
544 F.2d 962 (8th Cir.1976)                      16

*United States v. Lott*
310 F.3d 1231 (10th Cir. 2002)                   9

*United States v. Pressley*
345 F.3d 1205 (11th Cir. 2003)                   9

*United States v. White*
240 F.3d 127 (2d Cir. 2001)                      10

*United States v. Woods*
870 F.2d 285 (5th Cir.1989)                      16

*Woodford v. Visciotti*
537 U.S. 19 (2002)                               8

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Statutes**

California Penal Code
      § 1170.12(c)(1)                                   1, 15

California Penal Code
      § 460(a)                                         1
      § 664                                             1
      § 667(a)                                       15
      § 667(a)(1)                                    1
      § 669                                          10

Title 18 United States Code
      § 1951                                      15

Title 28 United States Code
      § 2254(d)                                 6, 8
      § 2254(d)(2)                              14
      § 2254(e)(1)                              14

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   CHRISTOPHER J. WEI, State Bar No. 78958
    Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5867
     Fax:  (415) 703-1234
8    Email:  Christopher.Wei@doj.ca.gov

9   Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14  **HOA TRUNG KHUU,**                          C 07-6351 SI (pr)

15                          Petitioner,           **MEMORANDUM OF POINTS
                                                   AND AUTHORITIES**
16          **v.**

17  **JOHN TILTON, CDCR Secretary,**

18                          Respondent.

19

20                  **STATEMENT OF THE CASE**

21          An information filed June 9, 2004, in the San Mateo Cunty Superior Court charged

22  petitioner Hoa Kung Khuu with two counts of first degree burglary (Cal. Penal Code § 460(a)[1]), one

23  count of attempted first degree burglary (§§ 664/460(a)), two counts of receiving stolen property (§

24  496(a)), a prior strike, and a prior serious felony (Cal. Penal Code §§ 1170.12(c)(1), 667(a)(1)).  CT

25  5-8.  Following a jury trial, petitioner was convicted of all charges.  CT 323-330.

26

27  ─────────────────────────

28          1.  Unless otherwise specified, all further statutory references are to the California Penal
    Code.

Mem.  of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)

                                    1

1    On November 18, 2004, the court found the prior felony allegations true and sentenced

2    petitioner to a total term of 17 years in state prison. CT 363-364, 367-368. Petitioner appealed the

3    judgment of conviction and on January 14, 2006, the California Supreme Court denied the petition

4    for review. Petitioner thereafter filed habeas corpus petitions in state court. The California Supreme

5    Court denied his habeas petition on September 25, 2007.

6                                    **STATEMENT OF FACTS**

7    Tommy Hui is a software engineer living at 57 Williams Lane in Foster City. RT 69. On

8    March 10, 2004, Mr. Hui decided to work at home. RT 69-70. Around noon that day, Hui was in

9    his entertainment room when he heard someone walk by his house. RT 71. Hui took a peek outside

10   to see if he could recognize whomever was going by. RT 72-73. He saw a black Range Rover

11   parked outside his driveway in front of his house. RT 74. The Range Rover was parked at least

12   seven feet away from the curb. RT 74. Hui did not recognize the driver of the car nor did he

13   recognize the Range Rover. RT 74. He then heard the doorbell ring about three or four times. RT

14   71. Although the person ringing the doorbell was very persistent, Hui did not feel like answering

15   the door. RT 71. Hui heard the person walking away. RT 75.

16   Hui went upstairs to work on his computer. RT 75. After about three minutes, he heard

17   noises from the side of his house. RT 75. Hui walked down the stairs to investigate and he saw

18   someone outside trying to pry open the screen door with some sort of instrument. RT 76-77.

19   Another individual stood behind him. RT 78. Hui yelled at the men, whom he had never seen

20   before. RT 78. Both men were dark-skinned. One was wearing a dark, heavy coat with blue jeans,

21   while the other was wearing a beanie on his head. RT 80. The men ran out to the street through the

22   gate. RT 81. Hui ran outside but the men had gone and so had the black Range Rover. RT 82. He

23   called the police. RT 84.

24   The police came by and, about an hour and a half later, took Hui to the police station to

25   see if he could identify a suspect. RT 85-86. Hui said that he could not see the burglar closely

26   enough to make an identification although his appearance was consistent with the appearance of

27   the suspect at the station. RT 86. After leaving the police station, Hui was taken to an area near the

28   Edgewater Plaza where he was shown another suspect. RT 87. This person also appeared to be

Mem. of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)

1    consistent with the burglar and his clothing matched the description of the person trying to enter his

2    house.  RT 87.

3        Officer William Sandri of the Foster City Police Department was on patrol on March 10,

4    2004, when he received a dispatch regarding an attempted burglary at the Hui home on 57 Williams

5    Lane. RT 106.  He received descriptions of the suspects and the Range Rover. RT 107-108.  Officer

6    Sandri was about four to five minutes away from the scene and he headed in that direction when he

7    noticed a black Range Rover at the stop sign on Edgewater and Port Royal roads.  RT 108.  There

8    were two men inside the car.  RT 114.  Sandri pulled up behind the Range Rover and followed it to

9    initiate a traffic stop.  RT 109.

10        Officer Sandri followed the Range Rover to the Edgewater Shopping Center. RT 111-112.

11    He activated his red and blue overhead lights.  RT 114.  The Range Rover accelerated rapidly down

12    the parking lot into an alleyway that ended in the lagoon without any way out.  RT 114.  The two

13    men got out of the car and fled southbound along the boardwalk next to the lagoon.  RT 114-115.

14    Sandri got out of his car and gave chase.  He also contacted other police officers for assistance.  RT

15    115.  Sandri lost sight of the men but bystanders would point out where the men had gone and

16    Sandri continued to run down the boardwalk.  RT 139.  Sandri next saw the men again when the

17    officer exited the south entrance of the Edgewater Plaza.  RT 117, 139.  They were bent over,

18    breathing heavily. RT 130.  Officer Sandri identified himself as a police officer and ordered the men

19    to get on the ground.  RT 130.  Instead, the men hopped the fence into the backyard of 1001

20    Monterey Street.  RT 131.  Sandri, now joined by Officer Mark Lee, went into the backyard of 1001

21    Monterey to find the two suspects.  RT 131.  Other police units arrived to assist in the chase.  RT

22    140.

23        While fleeing from the police, a cell phone fell out of one of the suspect's pocket. RT 236,

24    244.  The telephone belonged to petitioner's mother.  RT 461.

25        Officer Lee spotted one of the suspects running from 1011 Monterey, along the edge of

26    the lagoon.  RT 166.  It was petitioner.  RT 173.  He was jumping over the fences and boats along

27    the side of the lagoon.  RT 166.  Officer Lee ordered petitioner to stop and gave chase.  RT 167.  He

28    was gaining on petitioner when he lost sight of petitioner around 1029 Monterey.  RT 167-168.

1   Officer Lee noticed a parked and covered boat floating on the water next to the property.  RT 168.

2   Lee approached the boat and shook it.  He heard footsteps inside the boat as if someone inside was

3   trying to keep their balance.  RT 168.  Lee ordered the person inside to come up with his hands up.

4   RT 168.  Bystanders then began to point to the lagoon, where the officer saw petitioner next to the

5   boat trying to hide from him.  RT 169.  Although Lee again ordered petitioner to come out of the

6   water with his hands up, petitioner refused and began swimming away from the officer.  RT 169.

7   Lee told petitioner to stand up because the water was shallow.  RT 169.  Petitioner stood up and said

8   to Lee, "Go ahead and fucking shoot me.  Go ahead and fucking shoot me."  RT 169.  After the

9   officer repeatedly yelled at petitioner to come to shore, petitioner eventually got out of the water,

10  went over a fence and laid down on the grass.  RT 170.  As Officer Lee approached, however,

11  petitioner got up, climbed over the fence and fled.  RT 171.

12          Officer Kammuller and his canine partner participated in the search for petitioner and his

13  cohort.  As they searched around the houses, Kammuller entered 1022 Monterey.  RT 297-298.  He

14  lifted up the top to a garbage can and found petitioner hiding inside.  RT 172, 212, 298.  He was

15  covered in water and was cold.  RT 174.  Petitioner was arrested.  RT 173.

16          Officer Egan participated in the search for the two suspects.  He was going yard by yard

17  looking for the suspects.  RT 210.  He found Ryan Bui hiding underneath bushes inside a yard.  RT

18  211.  Bui fled but was caught by several other officers.  RT 211, 440-445.

19          Officer Sandri next saw the two suspects after they had been taken into custody.  RT 132.

20  He identified petitioner as one of the men who was in the Range Rover and identified the other

21  suspect as Ryan Bui.  RT 132.

22          Sharon and Yao Chi lived at 1295 Beach Park Boulevard in Foster City.  RT 247-248.

23  On March 9, 2004, Mrs. Chi took a 12-day trip to Taiwan.  RT 248.  Before leaving, Mrs. Chi took

24  $1,600 in cash out of a steel file cabinet, leaving $5,000 in cash in the cabinet.  RT 249-250.  Mrs.

25  Chi also had a collection of $2.00 bills in a drawer next to her bed as well as jewelry in a lamp stand

26  by the bed.  RT 252-253.  There was also a $9,000 Rolex watch  in another bedroom.  RT 253-254.

27  Mr. Chi left work the next morning after his wife left for Taiwan.  RT 269.  He closed and locked

28  all the windows and doors except the door between the garage and the house. RT 269-270.  Mr. Chi

1    did not notice anything missing when he returned home later that evening. RT 270. However, when

2    he went to open the cabinet a day later, Mr. Chi noticed that the cabinet had been forced open and

3    that all the money inside was missing. RT 271-272. There were pry marks and scratches on the

4    cabinet. RT 285. The screen to the bathroom window had also been pried open. RT 286. Mr. Chi

5    also realized sometime afterwards that his Rolex watch was missing. RT 273. When she returned

6    from Taiwan, Mrs. Chi discovered that her jewelry was also missing. RT 254-255. Mrs. Chi

7    recognized her jewelry from a photograph of jewelry taken by the police. RT 255.

8         George and Pamela Hung lived on 361 Beach Park Boulevard in Foster City. RT 300.

9    On March 10, 2004, Mr. Hung left for work around 8:00 a.m. and made sure that all doors and

10    windows were closed and locked. RT 301. Property inside his house included a laptop computer,

11    Mrs. Hung's jewelry, between $1,000 to $2,000 in cash, Taiwanese currency, a $100 gift certificate

12    to Stanford Shopping Center, and a Rolex watch. RT 302-304, 326. Mr. Hung kept his business

13    card in his laptop computer briefcase. RT 310. Mr. Hung returned home later that day after

14    receiving a telephone call from the police. RT 305. When arrived home, Mr. Hung discovered that

15    his laptop computer, digital camera, cash and jewelry were missing. RT 305-307. The burglary had

16    apparently entered the garage through a side door and then broke into the house from the garage.

17    RT 308, 310.

18         A search of the Range Rover abandoned by petitioner at the shopping center uncovered

19    a 17-inch long screwdriver under the floor mat of the front passenger seat. RT 183-184. A large

20    amount of money (15 twenty dollar bills, and ten one dollar bills), a cell phone, and a set of keys

21    were taken from the console area. RT 184, 191. In the rear of the car was a black computer case

22    and a laptop computer. RT 185, 348. A Louis Vuitton wallet was seized from a box in the back

23    seat. RT 189-190. The wallet appeared to be brand new. RT 190. A white paper bag in the car

24    contained cash, jewelry, watches, and a gift certificate to the Stanford Shopping Center. RT 344-

25    346. There was about $4,979 found in the rear of the Range Rover. RT 350. Mr. Hung's business

26    card was found in the Range Rover. RT 381. Both the Chis and the Hungs identified property found

27    in the Range Rover as property that had been taken from their residences.

28    //

Mem. of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)

5

1  //

2  //

3  **ARGUMENT**

4

5  **I.**

6  **THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES**
7  **DID NOT VIOLATE PETITIONER'S FEDERAL CONSTITUTIONAL**
   **RIGHTS**

8       Petitioner claims that, under *Blakely v. Washington*, 542 U.S. 296 (2004), and

9  *Cunningham v. California*, 549 U.S. 270, ___, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), the trial

10 court erred by imposing consecutive sentences based on facts that were neither found by the jury nor

11 admitted by Petitioner.  (Pet. at 8.)  But granting relief on Petitioner's claim would result in a

12 retroactive application of a new rule, in violation of *Teague v. Lane*, 489 U.S. 288, 310 (1989).

13 Moreover, the California courts' rejection of Petitioner's claim was not contrary to or an

14 unreasonable application of Supreme Court precedent.  28 U.S.C. § 2254(d).

15     **A.    Procedural History**

16       The trial court imposed consecutive sentences for all counts.  RT 613-615.  It concluded

17 that "the crimes and their objectives were predominantly independent of each other and were

18 committed at different times and in separate  places, and therefore, the court will sentence

19 consecutively."  RT 613-614.  Petitioner raised this issue in his direct appeal and the Court of

20 Appeal stated, "Defendant recognizes that the California Supreme Court's rejection of this claim in

21 *People v. Black*, 35 Cal.4th 1238, 1244 (2005) is binding on this court.  *Auto Equity Sales, Inc. v.*

22 *Superior Court*, 57 Cal.2d 450, 455 (1962).  We reject defendant's contention on this basis."  Exh.

23 4 at 2 n.2.  The California Supreme Court denied petitioner's Petition for Review.

24     **B.    Granting Relief On Petitioner's Claim Would Impermissibly Create A New**
           **Rule On Collateral Review**
25

26       In *Teague v. Lane*, 489 U.S. 288, the Supreme Court held that a new rule of constitutional

27 law cannot be applied retroactively on federal collateral review to upset a state conviction or

28 sentence unless the new rule forbids criminal punishment of primary, individual conduct or is a

"watershed" rule of criminal procedure. *Caspari v. Bohlen*, 510 U.S. 383, 396 (1994). The Supreme Court has repeatedly emphasized that federal habeas courts must first decide whether *Teague* is implicated before considering the merits of a claim if the state argues that the petitioner seeks the benefit of a new rule. *Beard v. Banks*, 542 U.S. 406, 412 (2004); *see generally Arredondo v. Ortiz*, 365 F.3d 778, 781-82 (9th Cir. 2004) (identifying proper manner of raising *Teague* argument on appeal).

*Teague* involves a three-step analysis. *Hayes v. Brown*, 399 F.3d 972, 982 (9th Cir. 2005). First, the court must determine the conviction's finality date. *Id.* Second, the rule is considered new unless, after the court "survey[s] the legal landscape as it then existed," it determines that "existing precedent compelled a finding that the rule at issue was required by the Constitution." *Id.* (citations and internal quotation marks omitted). Thus, a rule is not constitutionally compelled if the survey shows that "reasonable jurists" could differ about the outcome. *Caspari v. Bohlen,* 510 U.S. at 395. Third, if the rule is new, the court "must consider whether it falls within either of the two exceptions to nonretroactivity." *Beard*, 542 U.S. at 411.

A conviction is final under *Teague* "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. at 390. In this case, Petitioner's petition for review was denied by the California Supreme Court on June 14, 2006. (Exh. 8.) Accordingly, his conviction became final ninety days later when the time for a petition for writ of certiorari expired, on September 12, 2006. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999); Sup. Ct. R. 13.

Here, a survey of the relevant case law reveals that "reasonable jurists . . . 'would [not] have deemed themselves compelled to accept [Petitioner's] claim' " that his consecutive sentencing violated his right to jury trial when his conviction became final on June 14, 2006. *Johnson v. Texas*, 509 U.S. 350, 366 (1993) (*quoting Graham v. Collins*, 506 U.S. 461, 477 (1993)). As explained in the next section, none of the Supreme Court's decisions before (or for that matter after) this date give any indication that the right to jury trial at sentencing concerns anything other than the statutory maximum for a crime, as opposed to some combined statutory maximum based on the aggregation

1    of sentences on multiple crimes.  The applicability of the Supreme Court's cases to consecutive

2    sentences in California is especially doubtful given that there is no presumption of a concurrent term

3    under California law.  Also, as set forth in the next section, other state and federal courts have

4    uniformly rejected the applicability of the Supreme Court's jury trial precedent to consecutive

5    sentencing systems like California's, where no factual finding is required to impose consecutive

6    sentences.  Thus, granting relief on Petitioner's consecutive sentencing claim would create a new

7    rule.[2/]

8           Lastly, this new rule does not fall into one of *Teague*'s exceptions, under which a new rule

9    may be given retroactive effect on collateral review.  The first exception is inapplicable because the

10   rule announcing a right to jury trial for consecutive sentencing decisions does not place conduct

11   beyond the reach of criminal law or "decriminalize" any class of conduct.  *See Saffle v. Parks*, 494

12   U.S. 484, 495 (1990).  Such a rule also is not a "watershed exception" because, as the Supreme

13   Court put it, "we cannot confidently say that judicial factfinding *seriously* diminishes accuracy."

14   *Schriro v. Summerlin*, 542 U.S. 348, 356 (2004).

15          Because the rule granting relief would be "new" within the meaning of *Teague* and does

16   not fall into one of *Teague*'s exceptions, federal habeas relief is barred on this claim.

17        **C.   The California Courts Did Not Unreasonably Apply Any Clearly Established
               Supreme Court Precedent In Denying Petitioner's Claim**

18

19          When a state court denies a claim on the merits, federal habeas corpus relief is barred

20   unless the state-court adjudication was either (1) "contrary to, or involved an unreasonable

21   application of, clearly established Federal law, as determined by the Supreme Court of the United

22   States," or was (2) "based on an unreasonable determination of the facts in light of the evidence

23   presented in the State court proceeding."  28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-

24

---

25          2.  The recent case of *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008), would not impact this
26   conclusion.  In *Butler*, the Ninth Circuit determined that the rule in *Cunningham*, 127 S. Ct. 856, that
     California's *upper term* procedure violated the right to jury trial, was not new under *Teague*.  *Butler*,
27   528 F.3d at 633-39.  As explained below, however, a rule finding California's *consecutive*
     *sentencing* procedure violated the right to jury trial, was not compelled by *Cunningham* itself or any
28   other case.

Mem.  of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)

8

39 (2003). This is a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, (2002) (*per curiam*) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)), internal citation omitted.

The Supreme Court held in *Cunningham* that California's upper term sentencing procedure violated the defendant's right to a jury trial. *Cunningham*, 127 S. Ct. at 870. Neither *Cunningham* nor any other Supreme Court case, however, has even hinted that the decision whether to run sentences for multiple crimes concurrently or consecutively can implicate this same right. As the California Supreme Court recently explained, the right to jury trial does not impact a trial court's decision to sentence consecutively because the right attaches to a particular crime, not to the aggregation of crimes. *People v. Black*, 41 Cal.4th 799, 821-22 (2007), *cert. denied sub nom*, *Black v. California*, 128 S. Ct. 1063 (2008).

The high court precedent supports the California Supreme Court's reasoning. The Court's cases in this area – *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296, *United States v. Booker*, 543 U.S. 220 (2005), and *Cunningham* – did not involve the imposition of consecutive sentences. These cases were concerned with the finding of a fact "that increases the penalty for *a* crime beyond the prescribed statutory maximum." *Cunningham*, 127 S. Ct. at 864 (italics added); *Blakely*, 542 U.S. at 301 (italics added); *Apprendi*, 530 U.S. at 490 (italics added). In fact, the Court in *Apprendi* stated that the only relevant inquiry was the sentence for a single particular crime, not the cumulative effect of the defendant's multiple sentences. *Apprendi*, 530 U.S. at 474. Thus, as long as the sentence for each count is within the statutory maximum for that conviction, *Apprendi*, *Blakely*, *Booker*, and *Cunningham* do not forbid consecutively sentencing on multiple counts.

The Ninth Circuit and all the other federal circuits considering the issue have rejected jury trial challenges to consecutive sentencing in federal criminal cases on this same basis. *United States v. Hicks*, 389 F.3d 514, 532 (5th Cir. 2004); *United States v. Pressley*, 345 F.3d 1205, 1213 (11th Cir. 2003); *United States v. Harrison*, 340 F.3d 497, 500 (8th Cir. 2003); *United States v. Lafayette*, 337 F.3d 1043, 1049-50 (D.C. Cir. 2003); *United States v. Hernandez*, 330 F.3d 964, 982 (7th Cir.

2003); *United States v. Chorin*, 322 F.3d 274, 278-79 (3rd Cir. 2003); *United States v. Lott*, 310 F.3d 1231, 1242-43 (10th Cir. 2002); *United States v. Buckland*, 289 F.3d 558, 570-71 (9th Cir. 2002) (en banc); *United States v. Campbell*, 279 F.3d 392, 401-02 (6th Cir. 2002); *United States v. Feola*, 275 F.3d 216, 220 & n.1 (2d Cir. 2001).[3/]  At least six state supreme courts have also found that the United States Supreme Court's line of cases does not impact their consecutive sentencing laws. *State v. Kahapea*, 141 P.3d 440, 452 (Haw. 2006); *State v. Cubias*, 120 P.3d 929, 932-33 (Wash. 2005); *State v. Higgins*, 821 A.2d 964, 975-76 (N.H. 2003); *State v. Bramlett*, 41 P.3d 796, 797-98 (Kan. 2002); *Hall v. State*, 823 So.2d 757, 764 (Fla. 2002); *People v. Wagener*, 752 N.E.2d 430, 440-43 (Ill. 2001).

The California Supreme Court's second, alternative basis for rejecting this claim was also reasonable.  The court explained that because there is no presumption of concurrent sentencing or requirement of factfinding to impose a consecutive sentence, a defendant has no legal right to concurrent sentencing; as a result, *Blakely* and *Cunningham* were not violated.  *People v. Black*, 41 Cal. 4th at 822.  A review of state and Supreme Court law supports this conclusion.

First, there is no presumption favoring concurrent terms in California.  The last sentence of California Penal Code section 669 states, "Upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."  This language does not create a presumption favoring concurrent terms.  Instead, it is a gap-filler for those rare instances where a court fails to properly indicate whether a sentence is to be consecutive or concurrent.  *See Black*, 41 Cal. 4th at 822.  Thus, in California, "[w]hile there is a statutory presumption in favor of the middle term as the sentence for the offense [citation], there is no comparable statutory presumption in favor of concurrent rather than consecutive sentences for multiple offenses except where consecutive

---

3.  The Fourth Circuit, although not squarely addressing the issue, has implicitly approved this reasoning by analogizing to the Second Circuit's resolution in *United States v. White*, 240 F.3d 127, 135 (2d Cir. 2001).  *United States v. Angle*, 254 F.3d 514, 518-19 (4th Cir. 2001) (reasoning that under *Apprendi*, the sentence on another count does not affect whether the sentence on this count is error, but it can affect whether the error is harmless).  The First Circuit has not published a decision on this issue.

1  sentencing is statutorily required." *People v. Reeder*, 152 Cal. App.3d 900, 923 (1984), *cited with*

2  *approval in Black*, 41 Cal. 4th at 822. Since a defendant has no legal right to concurrent sentencing,

3  the federal right to jury trial cannot be implicated by California's system for consecutive sentencing.

4  *See Blakely v. Washington*, 542 U.S. at 309.

5       Second, there is no requirement that the court make any findings of fact before imposing

6  consecutive sentences. *People v. Black*, 41 Cal. 4th at 822. As the California Supreme Court

7  explained in *Black*:

8       In deciding whether to impose consecutive terms, the trial court may consider aggravating
        and mitigating factors, but there is no requirement that, in order to justify the imposition
9       of consecutive terms, the court find that an aggravating circumstance exists. (See § 669;
        Cal. Rules of Court rule 4.425(a), (b).) Factual findings are not required. In imposing an
10      upper term, the court must set forth on the record "facts and reasons" (§ 1170, subd. (b)),
        including the "ultimate facts that the court deemed to be circumstances in aggravation"
11      (Cal. Rules of Court, rule 4.420(e).) But it need only cite "reasons" for other sentencing
        choices (§ 1170, subd. (c)), and the reasons given for imposing a consecutive sentence
12      need only refer to the "primary factor or factors" that support the decision to impose such
        a sentence. (Cal. Rules of Court, rule 4.406(a), (b); § 1170, subd. (c); see *People v. Tran*
13      (1996) 47 Cal.App.4th 759, 774.)

14  *Id.* at 822. Because these consecutive sentencing decisions do not demand a finding of any fact, they

15  are akin to the sentencing decisions involving broad discretion that the Supreme Court approved in

16  *Cunningham*, *Booker*, *Blakely*, and *Apprendi*. See *Cunningham*, 127 S. Ct. at 871; *Booker*, 543 U.S.

17  at 264-65; *Blakely*, 542 U.S. at 308-09; *Apprendi*, 540 U.S. at 481-82.

18       The Ninth Circuit and three state supreme courts have also rejected Sixth Amendment

19  challenges to their jurisdictions' discretionary consecutive sentencing decisions, on the basis that

20  no judicial factfinding was required, in addition to rejecting these challenges on the basis discussed

21  above – that *Apprendi* is satisfied as long as the statutory maximum for each crime is not exceeded.

22  *United States v. Fifield*, 432 F.3d 1056, 1066-67 (9th Cir. 2005); *State v. Abdullah*, 878 A.2d 746,

23  756-57 (N.J. 2005); *Smylie v. State*, 823 N.E.2d 679, 686 (Ind. 2005); *State v. Jacobs*, 644 N.W.2d

24  695, 698-99 (Iowa 2001); *and see State v. Ice*, 170 P.3d 1049, 1058-59 (Ore. 2007) (Oregon's statute

25  violates *Blakely* because a trial court may not impose a consecutive sentence unless it finds at least

26  one of two statutorily enumerated facts), *cert. granted*, 128 S. Ct. 1657 (2008); *Personal Restraint*

27  *of VanDelft*, 147 P.3d 573, 578-79 (Wash. 2006) (a non-serious, non-violent, consecutive sentence

28  violates *Blakely* because it is an "exceptional sentence" requiring an aggravating factor to support

1    it and because Washington law has a presumption of concurrent sentencing); *State v. Foster*, 845

2    N.E.2d 470, 490-91 (Ohio 2006) (finding *Blakely* error because of Ohio's rule that sentences be run

3    concurrently absent judicial factfinding).

4         Given the soundness of the California Supreme Court's reasoning, as well as the large

5    number of other jurisdictions agreeing with it, the state courts' rejection of Petitioner's jury trial

6    claim was reasonable.  Accordingly, this Court should deny habeas relief.

7                                        **II.**

8    **PETITIONER FAILS TO ESTABLISH THAT HIS SIXTH**
     **AMENDMENT RIGHT TO COUNSEL WAS VIOLATED**

9

10        Following trial and prior to sentencing, Mr. Frank Bell, who had been retained by

11   Petitioner as counsel, moved to withdraw as retained counsel.  CT 339.  In his motion, Mr. Bell

12   stated that Petitioner and  his family had paid the initial $15,000 deposit but had not paid any of the

13   other bills.  CT 340.  According to Mr. Bell, Petitioner had indicated to him that he did not intend

14   to pay the money owed because of the quality of the representation he received from Mr. Bell.  RT

15   340.  Counsel also stated, "In fact, it is counsel's opinion that the attorney-client relationship is

16   irremediably damaged and that it has been severed and broken down beyond repair."  CT 341.

17   Counsel requested the court to permit him to withdraw as counsel and for the court to appoint the

18   Private Defender to represent Petitioner at sentencing.  CT 341.

19        On October 29, 2004, the court denied counsel's motion to withdraw with the following

20   comment:

21        Okay.  I've considered it carefully, and I really do not want to experience the delay,
          in view of what's left to do, that would be attendant upon relieving Mr. Bell.  I hate to see
22        lawyers without pay; and having been in practice myself, I understand why that's not a
          pleasant thing to do, but given the alternatives, and given the fact that the only thing left
23        to do is appearance at the sentencing, a court trial on the Federal crime, which I think will
          mainly be a paper exercise and perhaps some research by myself with regard to whether
24        it would constitute a strike under California statutes.

25   RT 601.

26        Counsel for Petitioner informed the court that he did not intend to file any further

27   pleadings relating to the court trial on the prior federal offense and that the district attorney had

28   carefully discussed all of the authorities and there was no need for him to do anything further on that

Mem. of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)

12

1   issue. RT 601. The court then indicated that the only matters that needed to be done in the case

2   were the sentencing hearing and the *Romero* (*People v. Superior Court* (*Romero*) 13 Cal.4th 497

3   (1996)) motion, both of which could be done orally. Under these circumstances, the trial court

4   decided to deny counsel's motion to withdraw.

5       Petitioner claims that the court's denial of counsel's motion to withdraw violated his

6   constitutional rights to due process and the assistance of counsel. There is no merit to Petitioner's

7   claim.

8       While a defendant who seeks in a timely manner to discharge retained counsel is

9   ordinarily permitted to do so, *United States v. Garrett*, 179 F.3d 1143, 1147-1148 (9th Cir. 1999),

10  in this case Petitioner did not make a request to discharge his retained counsel. This was a motion

11  made by counsel to withdraw from the case because Petitioner had not paid his attorney's fees.

12  Petitioner never indicated any desire to discharge Mr. Bell. He did not file any motion to discharge

13  counsel. He never made any comments in court indicating dissatisfaction with counsel. This was

14  simply a motion made unilaterally by counsel, and apparently without consultation with Petitioner,

15  to withdraw as counsel for failure to pay fees. Indeed, counsel carefully noted that "it is *counsel*'s

16  *opinion*" that the attorney-client relationship had been irremediably damaged. CT 341. A

17  "[d]efendant's acquiescence in his attorney's request for leave to withdraw does not constitute a

18  request on his part for a substitution of attorneys." *People v. Mullane*, 182 Cal.App.2d 765, 770

19  (1960); *In re Jackson*, 170 Cal.App.3d 773, 780 (1985).)

20      The state court of appeal held that the record did not support a finding that Petitioner

21  sought to discharge counsel.

22      However, counsel's motion to withdraw does not trigger such constitutional
    protections. Defendant's rights to due process and assistance of counsel are invoked by
23  *his* motion to discharge. *People v. Ortiz*, 51 Cal.3d [975], 983 [(1990)] ("the right to
    counsel of choice reflects not only a defendant's choice of a particular attorney, but also
24  *his* decision to discharge an attorney whom he hired but no longer wishes to retain"
    (italics added)]; *People v. Mulane* (1960) 182 Cal.App.2d 765, 770.) Here, defendant did
25  not make such a request. He neither filed a motion to discharge nor orally indicated his
    dissatisfaction with counsel to the court. Defendant argues that Bell discussed his
26  intention to seek withdrawal with defendant and defendant conveyed his complaints about
    counsel through Bell's written motion. Bell's motion indicated that defendant expressed
27  no objection to his request to withdraw and did not want to pay him because counsel had
    done "nothing for [defendant] in court." On this record it would be utter speculation to
28  conclude that defendant's failure to object to his attorney's withdrawal and his complaints

1   to his attorney constituted an affirmative request to discharge counsel.

2        "[A]cquiescence in his attorney's request for leave to withdraw does not constitute
    a request on [defendant's] part for a substitution of attorneys." (*People v. Mullane, supra,*
3   182 Cal.App.2d at p. 770.)  In the absence of defendant's request to discharge, the trial
    court had no reason to weigh defendant's rights to due process and assistance of counsel
4   against competing interests.

5   Exh. 4 at 5-6.

6        The state court of appeal's factual determination that Petitioner did not request to

7   discharge counsel is presumed correct under 28 U.S. C. § 2254(e)(1).  further, that determination

8   was not objectively unreasonable under 28 U.S.C. § 2254(d)(2); *see Morris v. Slappy*, 461 U.S. 1,

9   11-12 (1983).

10       Even assuming arguendo that counsel's withdrawal request triggered any constitutional

11  protections for petitioner, substitution is required only if the alleged conflict between the defendant

12  and his attorney prevented effective assistance of counsel.  *Schell v. Witek*, 218 F.3d 1017, 1026 (9th

13  Cir. 2000) (en banc).  Here, petitioner does not even allege that he received ineffective assistance

14  from Mr. Bell.  Counsel had ably represented Petitioner during the trial.  All that remained was

15  sentencing and the trial court was justifiably concerned about having to delay further by bringing

16  in a new attorney for sentencing.  The court balanced the desire for a new attorney against the

17  resulting inconvenience and delay and concluded that judicial efficiency would be compromised if

18  sentencing were delayed until Petitioner found new counsel and new counsel was prepared to file

19  and argue motions on sentencing matters.

20       The trial court also conducted an inquiry into the reasons for dissatisfaction with counsel.

21  As discussed earlier, this was a situation where counsel was dissatisfied with not being paid rather

22  than any dissatisfaction on the part of Petitioner.  Counsel made a detailed declaration on the reasons

23  for wishing to be discharged.  The court's inquiry was more than adequate.

24       Finally, the conflict between counsel and Petitioner essentially related to counsel's failure

25  to be paid for his services.  While Petitioner's family and friends paid Mr. Bell over $15,000, they

26  refused to pay the outstanding balance of $5,728.  CT 339-341.  It appears from Bell's declaration

27  that petitioner was angry that he had been convicted of the crimes and had no further use for Mr.

28  Bell.  CT 340-341.  This alleged conflict was not so great as to result in a "complete breakdown in

Mem.  of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)
14

communication and a consequent inability to present a defense." *United States v. Castro,* 972 F.2d 1107, 1109 (9th Cir. 1992) (claimed conflict was not so severe as to prevent all communication and ability to conduct a defense). A conflict is not sufficient to mandate substitution if the breakdown in communication is caused by the defendant's obstreperous and unreasonable refusal to cooperate with counsel. *Hudson v. Rushen*, 686 F.2d 826, 831 (9th Cir. 1982); *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc).

The trial court gave adequate reasons for denying counsel's request for substitution of counsel and it did not violate any of petitioner's constitutional rights.

### III.

**THE USE OF PETITIONER'S PRIOR FEDERAL CONVICTION TO ENHANCE HIS SENTENCE DOES NOT VIOLATE PETITIONER'S DUE PROCESS RIGHTS**

Petitioner's sentence was enhanced due to a prior conviction pursuant to California Penal Code sections 1170.12(c)(1) and 667(a). RT 614-615. The enhancements were based on Petitioner's federal robbery conviction (18 U.S.C. § 1951) in 1994. Petitioner asserts that the federal robbery conviction cannot be used to enhance his sentence because the plea agreement in that conviction did not mention any future use of the prior, and it had been stipulated that, in return for the guilty plea in that case, the conviction could not be used as a prior in the future.

First, the plea agreement between Petitioner and the United States Attorney has no binding effect on other jurisdictions. Indeed, the plea agreement specifically provides that "This agreement binds only the United States Attorney's Office for the Northern District of California and does not bind any other local, state or federal prosecuting authority." Exh. 7 at 10.[4/] Second, as the superior court found, there was nothing in the plea agreement itself which prohibited the use of the federal conviction to enhance a sentence in any subsequent criminal prosecution. Pet. Exh. A, Superior Court Denial of the Petition. The state trial court noted that "the agreement applied only to the indictment at issue in that case." *Id.* That conclusion was not unreasonable. Petitioner fails to

---

4. Petitioner had included a copy of the plea agreement as Exhibit A in his habeas petition in the California Supreme Court (*In re Hoa Khuu*, S149466), which is Exhibit 7 here.

Mem. of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)

1    establish that the plea agreement prohibited the use of the conviction to enhance any subsequent

2    sentence.  *Cf. Davis v. Woodford*, 446 F.3d 957, 963 (9th Cir. 2006) (only one of multiple prior

3    convictions could be used to enhance sentence because of the "unusual case" where the prosecutor

4    had promised on the record at the time of the plea that in the future the convictions would count as

5    "one prior for all purposes").

6           To the extent that Petitioner is claiming that the federal court failed to specifically advise

7    him that his conviction could later be used to enhance a sentence in a subsequent conviction, he fails

8    to establish any constitutional right to be so advised.  As the Ninth Circuit stated in *Torrey v. Estelle*,

9    842 F.2d 234, 235-236 (9th Cir. 1988):

10          Due process guarantees under the fifth amendment require that a defendant's guilty
            plea be voluntary and intelligent.  [Citation.]  A plea of guilty is voluntary "only if it is
11          'entered by one fully aware of the direct consequences' of his plea."  [Citation.]  Before
            a court may accept a defendant's guilty plea, the defendant must be advised of the "range
12          of allowable punishment" that will result from his plea.  [Citation.]

13          This court, in harmony with other circuits, has held that although a defendant is
            entitled to be informed of the direct consequences of the plea, the court need not advise
14          him of "all the possible collateral consequences."  [Citation.]

15          . . . . . . . . . . . . . . . . . . . . .

16          The distinction between a direct and collateral consequence of a plea " 'turns on whether
            the result represents a definite, immediate and largely automatic effect on the range of the
17          defendant's punishment.' "  [Citation.]

18   *Torrey v. Estelle*, 842 F.2d at 235-236, emphasis in original.

19          The federal courts have consistently held that a district judge is not required by the due

20   process clause to warn the defendant that if he is convicted, and sentenced, and after serving his time

21   goes back to committing crimes, the fact of his having been convicted may expose him to a more

22   severe punishment for his future crime than if it were a first offense.  *United States v. Chavez-*

23   *Huerto*, 972 F.2d 1087, 1089 (9th Cir. 1992); *United States v. Garrett*, 680 F.2d 64, 66 (9th

24   Cir.1982); *United States v. Woods*, 870 F.2d 285, 288 (5th Cir.1989) (*per curiam*); *United States v.*

25   *Lambros*, 544 F.2d 962, 966 (8th Cir.1976).  "The warning is needless; everyone knows that second

26   and subsequent offenders tend to be punished more heavily than first offenders.  The warning is also

27   premature. It is about a contingency that may not occur.  It could even be viewed as an invitation

28   to recidivism: 'don't plead guilty, if you're planning to commit future crimes, because your

1    conviction of this offense might be used to increase your punishment for future offenses.' " *Lewis*

2    *v. United States*, 902 F.2d 576, 577 (7th Cir. 1990); *see United States v. Brownlie*, 915 F.2d 527, 528

3    (9th Cir.1990) (in rejecting a claim that a prior conviction could not be used to enhance his sentence

4    because the prior plea was involuntary the court said: "The possibility that the defendant will be

5    convicted of another offense in the future and will receive an enhanced sentence based on an instant

6    conviction is not a direct consequence of a guilty plea").

7         Thus, failure to advise Petitioner that his guilty plea could be used to subsequently

8    enhance his sentence in a later criminal proceeding does not violate the due process clause of the

9    constitution.

10                                   **CONCLUSION**

11        Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

12   be denied.

13        Dated:  August 27, 2008

14                          Respectfully submitted,

15                          EDMUND G. BROWN JR.
                            Attorney General of the State of California

16                          DANE R. GILLETTE
                            Chief Assistant Attorney General

17                          GERALD A. ENGLER
                            Senior Assistant Attorney General

18
                            PEGGY S. RUFFRA
19                          Supervising Deputy Attorney General

20

21                          /s/ Christopher J. Wei

22                          CHRISTOPHER J. WEI
                            Deputy Attorney General

23                          Attorneys for Respondent

24   20129419.wpd
     SF2008401203
25

26

27

28

Mem. of Ps & As. *Khuu v. Tilton* - C 07-6351 SI (pr)
                                   17

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **Khuu v. Tilton**

No.:  **C 07-6351 SI (pr)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 27, 2008, I served the attached **(1)** MEMORANDUM OF POINTS AND AUTHORITIES; **(2)** ANSWER; **(3)** INDEX OF EXHIBITS; and **(4)** EXHIBITS 1 to 9 by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

Hoa Trung Khuu
V58390
Tallahatchie County Correctional Facility
295 U.S. Highway 49 South
Tutwiler, MS  38963

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 27, 2008, at San Francisco, California.

| B. Wong | B. WN |
|---|---|
| Declarant | Signature |

20136287.wpd