UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOA TRUNG KHUU,  No. C 07-6351 SI (pr)

    Petitioner,  **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    v.

JOHN TILTON, CDCR Secretary,

    Respondent.
                                         /

## INTRODUCTION

This matter is now before the court for consideration of the merits of Hoa Trung Khuu's pro se petition for writ of habeas corpus. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A.    The Crimes

Khuu's petition pertains to his conviction for two burglaries, one attempted burglary, and receiving stolen property. The particulars of the crimes are not relevant to the claims in the habeas petition, and therefore are only briefly summarized.

Khuu attempted to burglarize Tommy Hui's home in Foster City, California, on March 10, 2004. Hui heard Khuu attempting to break into his home and called the police. The police identified Khuu's vehicle and initiated a traffic stop. Khuu fled on foot and later was found hiding in a garbage can.

During a search of Khuu's vehicle on March 10, 2004, police found various items and currency that eventually were determined to have been taken from the residences of Sharon Chi and George Hung. Sharon Chi went on a trip on March 9, 2004, and left over $3,000 in a cabinet, a collection of $2 bills, jewelry and a Rolex watch at her home. Two days later, her husband discovered pry marks and scratches on the cabinet, and noticed that the money inside the cabinet was missing. He later realized his Rolex watch was missing. Upon her return, Sharon Chi discovered that her jewelry was missing. On March 10, 2004, George Hung noticed that a garage door knob was broken and that money, jewelry and other items were missing from his home.

B.   Case History

Following a jury trial in San Mateo County Superior Court, Khuu was convicted of two counts of first degree burglary, one count of attempted first degree burglary, and two counts of receiving stolen property. See Cal. Penal Code, §§ 460(a), 664, 496(a). He was found to have suffered a prior conviction that counted as both a strike under California's Three Strikes law and a prior serious felony. See Cal. Penal Code, §§ 1170.12(c)(1), 667(a). The court sentenced Khuu to a total term of 17 years, including consecutive terms for the various crimes.

He appealed. His conviction was affirmed by the California Court of Appeal and his petition for review was denied by the California Supreme Court. He also filed an unsuccessful state habeas petition.

In his federal habeas petition, Khuu asserted three claims for relief. Respondent filed his answer. Khuu filed a traverse. The matter is now ready for decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in San Mateo County, in this judicial district. 28 U.S.C. §§ 84, 2241 (d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A

1 federal habeas court making the "unreasonable application" inquiry should ask whether the state
2 court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

A. Apprendi Claim

Khuu contends that imposition of consecutive sentences based on factual findings made by the judge, rather than the jury, violated his Sixth Amendment right to a jury trial. He claims that this was constitutional error under Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and Cunningham v. California, 549 U.S. 270 (2007).

This claim is foreclosed by the recent decision in Oregon v. Ice, 129 S.Ct. 711 (2009), in which the Court held that the Sixth Amendment does not require juries to make findings of fact regarding the imposition of consecutive rather than concurrent sentences, and that states may allow judges to make those findings of fact. Id. at 714. Under Ice, a trial judge may impose consecutive sentences based on findings made by the judge without running afoul of the Apprendi line of cases. Id. at 717. That is just what was done here: the judge imposed consecutive sentences because "the crimes and their objectives were predominantly independent of each other and were committed at different times and in separate places. . . ." RT 613-14. Khuu is not entitled to the writ on his Apprendi claim.

B. Sixth Amendment Right to Counsel

1. Background

Khuu contends that his Sixth Amendment right to counsel was violated when the trial court denied attorney Frank Bell's motion to withdraw as Khuu's attorney. Bell filed his motion to withdraw six weeks after the guilty verdict because Khuu refused to pay his legal fees. In Bell's motion, he stated that Khuu entered into an attorney fee agreement on July 6, 2004, which included a $15,000 retainer as well as future estimated fees for trial and post-trial expenses. CR 339-340. Khuu paid Bell the $15,000 retainer fee but made no other payments to Bell. By October 19, 2004, Khuu had an outstanding balance of $5,728 for services rendered. On that

4

date, lawyer and client discussed the fee situation; Khuu indicated to Bell that he did not intend to pay the outstanding balance because he felt Bell had done nothing for him in court and because his family did not have any more money to pay an attorney. Bell wrote that Khuu exhibited a "demeanor" indicating that he did not intend to cooperate with Bell, and that Bell felt the "attorney-client relationship [was] irremediably damaged and that it [had] been severed and broken down beyond repair." Id. at 340-41. The legal authority for the motion consisted of a statute and state case law on withdrawal of an attorney for non-payment of fees. No Sixth Amendment argument was made in the motion to withdraw. Khuu never filed a motion to substitute counsel and never orally expressed to the court any desire to change counsel.

The trial court denied Bell's motion to withdraw. The judge commented that he did not like to see lawyers go unpaid but felt the work left on the case was minimal and the delay would be disruptive. RT 601-02. "[G]iven the fact that the only thing left to do is appearance at the sentencing, [and] a court trial on the Federal crime," which the judge understood could be done orally, he denied the motion. RT 601-602.

The court of appeal rejected Khuu's contention that the denial of counsel's motion to withdraw violated Khuu's rights to due process and assistance of counsel. See Cal. Ct. App. Opinion, p. 5. The court explained that both indigent and non-indigent clients have a constitutional right to retain and discharge retained attorneys "with or without cause, so long as the discharge will not result in significant prejudice to the defendant and will not disrupt the orderly processes of justice." Id.

> However, counsel's motion to withdraw does not trigger such constitutional protections. Defendant's rights to due process and assistance of counsel are invoked by *his* motion to discharge. . . . Here, defendant did not make such a request. He neither filed a motion to discharge nor orally indicated his dissatisfaction with counsel to the court. Defendant argues that Bell discussed his intention to seek withdrawal with defendant and defendant conveyed his complaints about counsel through Bell's written motion. Bell's motion indicated that defendant expressed no objection to his request to withdraw and did not want to pay him because counsel had done "nothing for [defendant] in court." On this record it would be utter speculation to conclude that defendant's failure to object to his attorney's withdrawal and his complaints to his attorney constituted an affirmative request to discharge counsel. . . . In the absence of defendant's request to discharge, the trial court had no reason to weigh defendant's constitutional rights to due process and assistance of counsel against competing interests.

Cal. Ct. App. Opinion, pp. 5-6.

### 2. Analysis

The Sixth Amendment right to counsel includes a qualified right of the criminal defendant to have the counsel of his choice if he can pay for it and counsel is willing to serve. See Wheat v. United States, 486 U.S. 153, 159, 164 (1988). "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers." Wheat, 486 U.S. at 159.

A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. See Wheat, 486 U.S. at 159. Nor is he entitled to an attorney who likes and feels comfortable with him. See United States v. Schaff, 948 F.2d 501, 505 (9th Cir. 1991). The Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel; it only guarantees effective representation of counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983); see, e.g., Larson v. Palmateer, 515 F.3d 1057, 1066-67 (9th Cir. 2008) (no relief under AEDPA for defendant who did not argue counsel had either an actual or apparent conflict of interest, and instead complained only about lack of communication with counsel and counsel's strategic decisions (including not making motions defendant requested, contacting witnesses without defendant's consent, and not providing defendant with a defense witness list for his approval) because Supreme Court has not held that the Sixth Amendment is violated when defendant is represented by a lawyer free of conflicts but with whom defendant refuses to cooperate).

Regardless of whether a client has requested a new attorney, his Sixth Amendment right to counsel includes a right to the *effective* assistance of the attorney who is representing him. To establish a violation of the right to effective assistance of counsel, a defendant ordinarily must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 685 (1984). However, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice to obtain relief." Cuyler v.

1  Sullivan, 446 U.S. 335, 349-50 (1980).

2  Khuu argues here, as he did in the California Court of Appeal, that his silent aquiescence in Bell's motion to withdraw was essentially the same as a request for new counsel and should have been granted. He fails to rebut the California Court of Appeal's factual determination that he never actually requested a substitution of counsel. See 28 U.S.C. § 2254(e)(1). Attorney Bell's statement that "it is counsel's opinion that the attorney-client relationship is irremediably damaged and that it has been severed and broken down beyond repair," CT 341, was based on the fee dispute. It was not the functional equivalent of saying that the client wanted a new attorney. In light of his failure to rebut the finding that he did not request substitution of counsel, Khuu's claim of a denial of his right to substitute counsel has no merit. In other words, there was no error in not granting the request that was not made.

As noted earlier, even if a client does not request a change of counsel, he has a right to have the effective assistance of the counsel who is representing him. That was provided here. The dispute between Khuu and attorney Bell did not rise to the level of an actual conflict, as identified by Cuyler, 446 U.S. at 349-50, and therefore Khuu would have to meet the Strickland test of showing both deficient performance and resulting prejudice to obtain relief. This was a fee dispute, and there was no other disagreement identified to the court. Although Bell reported that Khuu accused him of having done nothing for him, this appears to have been nothing more than frustration with the guilty verdict. The trial record shows that attorney Bell was an active advocate for his client. Bell cross-examined 5 of the 6 witnesses at the preliminary hearing, participated in the pre-trial motion practice, and took an active role in the jury instruction preparations. See CT 9-120, 273-321. During trial, attorney Bell did not call any defense witnesses, but did cross-examine many of the prosecution witnesses and made a lengthy closing argument, see RT 514-547, aimed at pointing out the flaws in the prosecution's case. Even after his motion to withdraw was denied, attorney Bell filed a motion to strike the prior conviction. At sentencing, Bell urged the court to consider mitigating factors in sentencing Khuu. The record shows Bell's vigorous efforts on Khuu's behalf before and after the motion to withdraw were denied. Against this record, Khuu identifies nothing that counsel failed to do for him and

7

nothing that counsel did that could be construed as deficient performance. He has not pointed to any act or omission by counsel that would amount to ineffective assistance of counsel. Khuu's Sixth Amendment right to counsel was not violated.

### C. Use of Prior Conviction for Enhancement Purposes

Khuu contends that his right to due process was violated when the state used his prior federal robbery conviction for sentence enhancement purposes. Khuu asserts that his prior conviction could not be used to enhance his current sentence because the conviction was pursuant to a plea agreement that did not mention any future use of that conviction for sentencing enhancement purposes.

Due process concerns of fundamental fairness require that a prosecutor keep the promises upon which a defendant relies in entering into a plea agreement. See Santobello v. New York, 404 U.S. 257, 262 (1971); Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir. 1985). Claims of a breached plea agreement are analyzed according to contract law standards of interpretation, such that a court looks to what was reasonably understood by the parties to be the terms of the agreement and whether or not those terms were fulfilled. See United States v. Kramer, 781 F.2d 1380, 1387 (9th Cir.), cert. denied, 479 U.S. 819 (1986). California contracts, including plea bargains, are "'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws.'" People v. Gipson, 117 Cal. App. 4th 1065, 1070 (Cal. Ct. App. 2004) (citation omitted).

The San Mateo County Superior Court rejected the breach-of-plea-agreement claim for two reasons. First, the plea agreement in the 1994 federal robbery case "specifically indicated that the state was not bound to its terms" so it did not forbid California from using the conviction to enhance a later sentence. In Re. Hoa Trung Khuu, San Mateo Superior Court Nos. SC-56446 A & HC-1825, Order of Denial, p. 2. Second, "nothing in the plain language of the plea agreement states that the robbery conviction could not be used as a prior conviction to enhance a sentence in any subsequent case." Id.

The San Mateo County Superior Court's rejection of the claim was not contrary to, or an

unreasonable application of Santobello. The written plea agreement was silent on whether the conviction could be used against Khuu in future criminal proceedings. See CT 148-162. Khuu concedes that the possibility of future use of the conviction was not part of the plea agreement. Khuu presents no evidence of any written or oral term that prohibited the use of that conviction for enhancement purposes. Because of the absence of any agreement that the conviction could not be used, there was no breach of the contract and there is no contract term to enforce. The fact that the trial court that accepted his guilty plea in the earlier proceedings did not warn him of the possibility of future sentence enhancement based on that conviction also did not violate his constitutional rights. See United States v. Brownlie, 915 F.2d 527, 528 (9th Cir. 1990) (defendant need not be informed of the possibility of a future sentence enhancement). There is no merit to Khuu's claim that the use of the prior conviction violated any federal constitutional right he possessed.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: February 11, 2009

SUSAN ILLSTON
United States District Judge